**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| CAMBRIA COMPANY LLC,                    )<br>                                                              )<br>                         Plaintiff,            )<br>                                                              )<br>             v.                                          )         Court No. 23-00007<br>                                                              )<br>UNITED STATES,                              )<br>                                                              )<br>                         Defendant.         )<br>                                                              ) | |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Cambria Company LLC ("Cambria"), by and through its undersigned attorneys, hereby files the instant complaint and alleges as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Cambria contests certain aspects of the final results issued by the U.S. Department of Commerce ("Commerce") in its 2019-2021 administrative review of the antidumping duty ("AD") order on quartz surface products from India. The final results of the review were published by Commerce in the Federal Register as *Certain Quartz Surface Products from India: Final Results of Antidumping Duty Administrative Review; 2019-2021*, 88 Fed. Reg. 1,188 (Dep't Commerce Jan. 9, 2023). ("*Final Results*"). The findings and conclusions of the contested determination are set forth in the accompanying *Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review; 2019-2021*, Case No. A-533-889 (Dec. 30, 2022) ("Issues and Decision Memo").

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c). That section confers on the U.S. Court of International Trade jurisdiction to review final AD determinations issued by Commerce under sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii).

## STANDING

3. Cambria is a U.S. producer of quartz surface products. Consequently, Cambria is an "interested party" as defined by 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(C). Additionally, Cambria actively participated in the administrative proceeding which resulted in the contested determination that is the subject of this appeal by filing a request for a review, filing various comments, filing submissions of new factual information and rebuttal factual information, filing a case brief and a rebuttal brief, and by participating in a hearing conducted by Commerce prior to the issuance of the *Final Results*. Accordingly, Cambria has standing pursuant to 19 U.S.C. § 1516a(d) as a party to the proceeding in connection with which this Complaint arises and is entitled to commence this action pursuant to 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

4. Section 516A(a)(2)(A)(i)(I) of the Act requires that, in actions challenging Commerce's determinations described in Section 516A(a)(2)(B)(iii), the summons must be filed within thirty (30) days of the date of publication in the Federal Register of the contested determination, and the complaint must be filed within thirty (30) days thereafter. *See* 19 U.S.C. § 1516a(a)(2)(A). On January 11, 2023, within thirty (30) days of the publication of the final results on January 9, 2023, Cambria filed a summons with this Court. Within thirty (30) days

thereafter, Cambria is filing this Complaint. *See* U.S. Court of International Trade Rules 3(a)(2) and 6(a). Thus, this action is timely brought.

## STANDARD OF REVIEW

5. This Court reviews a final determination issued by Commerce pursuant to 19 U.S.C. § 1675 to determine whether it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

6. On June 30, 2021, Cambria filed a request that Commerce conduct an administrative review of 50 Indian exporters and producers of quartz surface products because Cambria had reason to believe that the dumping margins of these companies have increased as a result of lower import prices and that imports had increased during the period of review ("POR"). Additionally, between June 29 and 30, 2021, Commerce received requests for reviews from other interested parties for an administrative review of the AD order on quartz surface products from India.

7. On August 3, 2021, in accordance with 19 C.F.R. § 351.221(c)(1)(i), Commerce published a notice of initiation for the underlying administrative review. *See Initiation of Antidumping Duty and Countervailing Duty Administrative Review*s, 86 Fed. Reg. 41,821 (Dep't Commerce Aug. 3, 2021).

8. On September 28, 2021, Commerce selected for individual examination as mandatory respondents the following two companies based on their being the largest two exporters of subject merchandise during the POR: (1) Pokarna Engineered Stone Limited ("Pokarna"); and (2) Antique Marbonite Private Limited and its affiliates Shivam Enterprises and

Prism Johnson Limited (collectively, the "Antique Group").[1] Commerce's authority to select the two largest exporters of subject merchandise is based on the assumption built into its statutory authority that the dumping behavior of the largest exporters is representative of the non-selected respondents.

9. On July 8, 2022, Commerce published the preliminary results of the administrative review in the Federal Register. *Certain Quartz Surface Products from India: Preliminary Results of Antidumping Duty Administrative Review and Partial Rescission of Antidumping Duty Administrative Review; 2019–2021*, 87 Fed. Reg. 40,786 (Dep't Commerce July 8, 2022) ("*Preliminary Results*"), and accompanying Preliminary Decision Memorandum ("Preliminary Decision Memo").

10. In the *Preliminary Results*, Commerce calculated a dumping margin of 0.00% for Pokarna. In addition, Commerce assigned a rate of 323.12% to the Antique Group based on total adverse facts available ("AFA") due to the company's failure to cooperate to the best of its ability. Preliminary Decision Memo at 1, 10. This rate was the highest dumping margin alleged in the AD petition concerning quartz surface products from India. *Id.* at 10. Commerce corroborated this rate as having probative value as to the Antique Group's rate by comparing it to the individual dumping margins calculated for Pokarna during the POR for the review. *Id.*

11. There were 53 other Indian companies for which a review was requested but that were not selected for individual review as mandatory respondents. For non-selected respondents in an administrative review, Commerce follows the statutorily prescribed method for calculating an "all others" rate in an investigation, usually by taking the weighted average of all mandatory

---

[1] Commerce determined to treat Antique Marbonite Private Limited and its affiliates Shivam Enterprises and Prism Johnson Limited (*i.e.*, the "Antique Group") as a single entity for the purposes of the AD administrative review.

respondents' rates, excluding any zero or *de minimis* rates and rates based entirely on facts available. 19 U.S.C. § 1673d(c)(1)(B)(i)(II) and (c)(5)(A). However, when all dumping margins established are only either *de minimis* or rates based entirely on facts available, Commerce applies the exception found in 19 U.S.C. § 1673d(c)(5)(B). In such cases, Commerce "may use any reasonable method to establish the estimated all others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated." 19 U.S.C. § 1673d(c)(5)(B).

12. The Statement of Administrative Action Accompanying the Uruguay Round Agreements ("SAA"), recognized by Congress as an authoritative expression concerning the interpretation and application of the Act under 19 U.S.C. § 3512(d), provides guidance on the methodology Commerce should apply under the exception to the general rule. It states that "{t}he *expected method* in such cases will be to weight average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available." SAA, H.R. Rep. No. 103-316, Vol. 1 (1994), at 873, *reprinted in* 1994 U.S.C.C.A.N. 4040, 4201 (emphasis added).

13. In the *Preliminary Results*, Commerce calculated the rate for the 53 non-selected respondents by averaging the rates assigned to Pokarna and the Antique Group. Preliminary Decision Memo at 11-12. Commerce explained that this was the "expected method" outlined by Congress under the SAA when the weighted-average dumping margins established for all individually investigated respondents are zero, *de minimis*, or based entirely on facts available. *Id.* This resulted in an all-others rate of 161.56%. *Id.*

14. Between August 17 and 24, 2022, Commerce received case briefs on behalf of

Cambria and the respondents. Issues and Decision Memo in *Final Results* at 2. The respondents argued that the rate assigned to the non-selected companies was unreasonable and should not be assigned to the non-selected companies in the final results. *Id.* at Comment 5. They argued that Commerce should depart from the "expected method" outlined in the SAA to find another method to calculate the rate for the non-selected respondents. *Id.* One of the methods they proposed was to pull forward the 3.19-percent all-others rate from the original investigation and apply it in the first administrative review as the non-selected rate. *Id.*

15. On August 25, 2022, Cambria submitted a rebuttal brief to Commerce. In its rebuttal brief, Cambria argued that Commerce should continue to apply the "expected method" outlined by Congress in the SAA to calculate the all-others rate for the 53 non-selected respondents in the review – *i.e.*, by using the average of the rates assigned to Pokarna and the Antique Group. *Id.*

16. Cambria demonstrated in its rebuttal brief that the statute and the courts have recognized that, when Commerce follows the expected method of averaging the rates of the largest exporters of subject merchandise, this creates an assumption that the resulting dumping rate reasonably reflects the dumping rates of the non-selected respondents. *Id.*

17. Cambria also demonstrated in its rebuttal brief that any interested party seeking to overcome the assumption that the dumping rate from the expected method reasonably reflects the non-selected respondents' dumping rates bears the burden of showing that the opposite is true. *Id.* Cambria demonstrated that the respondents failed to meet the burden of showing that the non-selected rate calculated by Commerce in the *Preliminary Results* was unreasonable and that, contrary to their claims, the record evidence showed that the non-selected rate in the *Preliminary Results* was reasonable.

18. Finally, Cambria showed that it would be improper for Commerce to pull forward the all-others rate from the original investigation and use it as the non-selected rate in the *Final Results* of the 2019-2021 review because the prior rate did not reasonably reflect the dumping behavior of the Indian producers and exporters during the POR of the review.

19. Commerce held a public hearing on August 30, 2022.

20. Within weeks of the public hearing conducted by Commerce, the respondents unleashed an unprecedented public relations and lobbying campaign to pressure Commerce to change course in the *Final Results*. For example, the respondents arranged for prominent media publications to publish editorials comparing Commerce officials and analysts to college students on spring break. *See, e.g.,* Wall Street Journal, *Trade Bureaucrats Gone Wild* (Sept. 12, 2022), available at https://www.wsj.com (last accessed January 19, 2023). They also arranged for Members of Congress to apply pressure to Commerce through telephone calls and written correspondence. *See, e.g.,* Commerce Memo to File re: Call with Staff from Rep. Dave Joyce's Office (Nov. 1, 2022).

21. To mitigate the influence of the respondent's pressure campaign on Commerce's decision-making process, Cambria worked with its Congressional delegation and others to request that Commerce apply the law as written when calculating the non-selected rate for the *Final Results*. *See, e.g.,* Commerce Memo to File (Dec. 20, 2022) (transmitting a letter from the Minnesota Congressional Delegation to Secretary Raimondo expressing concern that the respondents' "only defense" to Commerce's straightforward application of the law "has been to fault required adherence to filing deadlines and unfairly criticize Commerce employees as overzealous bureaucrats").

22. Commerce reached its decision on December 30, 2022 and published the *Final*

*Results* on January 9, 2023.

## CLAIMS AND BASES FOR RELIEF

## COUNT ONE

23. Plaintiff hereby incorporates by reference paragraphs 1 through 22 of this Complaint.

24. In the *Final Results*, Commerce assigned a rate to the 53 non-selected companies by pulling forward the all-others rate calculated in the underlying investigation. Issues and Decision Memo in *Final Results* at Comment 5. This resulted in an non-selected rate of 3.19 percent.

25. There is an assumption built into the statute that the dumping rate from the expected method reasonably reflects the non-selected respondents' dumping rates. The burden is on the parties that oppose application of the expected method to demonstrate that it results in a dumping margin that does not reasonably reflect the dumping margins of the non-selected respondents. Commerce erred in departing from the expected method, because the respondents failed to meet this burden.

26. In the *Final Results*, Commerce pointed to the rates from the original investigation as evidence that the non-selected rate from the preliminary results did not reflect the dumping rates of the non-selected companies. However, Commerce and the courts have recognized that rates from prior time periods have little probative value for purposes of determining whether the "expected method" is reasonable. Commerce's decision was arbitrary because ignored this past practice and court precedent in the *Final Results*

27. Commerce also pointed to the fact that Pokarna received a zero rate in the first administrative review to find that the expected method resulted in a rate that was not reasonable. However, the fact that Pokarna received a zero rate in the preliminary results was already factored

into the non-selected rate in the preliminary results. On the other hand, Commerce failed to factor into its calculation the rate that was assigned to Antique Group in the *Final Results*.

28. The record evidence showed that the non-selected rate from application of the expected method did reasonably reflect the non-selected respondents' rates. For example, a comparison of the average selling prices for Pokarna, Antique Group, and the 51 other companies supported the reasonableness of the non-selected rate that was calculated using the expected method. Commerce completely failed to address this evidence in the *Final Results*.

29. For all these reasons, and as will be demonstrated further in Cambria's motion for judgment on the agency record, Commerce's calculation of the non-selected rate in the *Final Results* is unsupported by substantial evidence and otherwise not in accordance with law.

## REQUEST FOR JUDGMENT AND RELIEF

30. Wherefore, Cambria respectfully requests that this Court:

   a. hold and declare that the aspects of Commerce's *Final Results* described herein are unsupported by substantial evidence on the record or otherwise not in accordance with law;

   b. remand this case to Commerce for disposition consistent with the decision of this Court; and

   c. provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

 /s/ Luke A. Meisner
Roger B. Schagrin
Luke A. Meisner

**SCHAGRIN ASSOCIATES**
900 7th Street, N.W.
Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to Cambria Company LLC*

Dated: February 10, 2023