## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| CAMBRIA COMPANY LLC, <br><br>     Plaintiff, <br><br> ANTIQUE MARBONITE PRIVATE LIMITED; PRISM JOHNSON LIMITED; and SHIVAM ENTERPRISES, <br><br>     Consolidated-Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br>     Defendant, <br><br> APB TRADING, LLC; ARIZONA TILE LLC; COSMOS GRANITE (SOUTH EAST) LLC; COSMOS GRANITE (SOUTH WEST) LLC; COSMOS GRANITE (WEST) LLC;  CURAVA CORPORATION; DIVYASHAKTI GRANITES LIMITED; DIVYASHAKTI LIMITED;  M S INTERNATIONAL, INC.; MARUDHAR ROCKS INTERNATIONAL PVT LTD.; OVERSEAS MANUFACTURING AND SUPPLY INC.;  PNS CLEARANCE LLC;  QUARTZKRAFT LLP;  and STRATUS SURFACES LLC, <br><br>     Defendant-Intervenors. | Consolidated <br> Court No. 23-00007 |

## <u>ORDER</u>

Upon consideration of the motion of Consolidated Plaintiffs Antique Marbonite Private Limited; Prism Johnson Limited; and Shivam Enterprise, for judgment on the agency record pursuant to Rule 56.2 of the Rules of this Court, and all other papers and proceedings herein; it is hereby

**ORDERED** that Consolidated Plaintiffs' motion is hereby granted; and it is further

**ORDERED** that the final results with respect to *Certain Quartz Surface Products from India: Final Results of Antidumping Duty Administrative Review; 2019-2021*, 88 Fed. Reg. 1190 (Jan. 9, 2023), are remanded to the U.S. Department of Commerce with instructions to take such further action as required by the Court's decision in this matter.

Dated: _____     By: _____
      New York, New York           Mark A. Barnett, Chief Judge

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| CAMBRIA COMPANY LLC,<br><br>     Plaintiff,<br><br>ANTIQUE MARBONITE PRIVATE LIMITED; PRISM JOHNSON LIMITED; and SHIVAM ENTERPRISES,<br><br>     Consolidated-Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>     Defendant,<br><br>APB TRADING, LLC; ARIZONA TILE LLC; COSMOS GRANITE (SOUTH EAST) LLC; COSMOS GRANITE (SOUTH WEST) LLC; COSMOS GRANITE (WEST) LLC; CURAVA CORPORATION; DIVYASHAKTI GRANITES LIMITED; DIVYASHAKTI LIMITED; M S INTERNATIONAL, INC.; MARUDHAR ROCKS INTERNATIONAL PVT LTD.; OVERSEAS MANUFACTURING AND SUPPLY INC.; PNS CLEARANCE LLC; QUARTZKRAFT LLP; and STRATUS SURFACES LLC,<br><br>     Defendant-Intervenors. | Consolidated<br>Court No. 23-00007 |

**PLAINTIFFS' RULE 56.2 MOTION FOR**
**JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of this Court, Consolidated Plaintiffs Antique Marbonite Private Limited; Prism Johnson Limited; and Shivam Enterprise, hereby move for judgment on the agency record with respect to their complaint challenging the final results of the U.S. Department of Commerce ("Commerce") with respect to the administrative review of the antidumping duty order against certain quartz surface products from India. *See Certain Quartz*

**Consol. Court No. 23-00007, Motion for Judgment Upon Agency Record**

*Surface Products from India: Final Results of Antidumping Duty Administrative Review; 2019-2021*, 88 Fed. Reg. 1190 (Jan. 9, 2023), and accompanying Issues and Decision Memorandum. The *Final Results* covered U.S. entries made from December 13, 2019, through May 31, 2021.

For the reasons explained in the accompanying memorandum, Consolidated Plaintiffs Antique Marbonite Private Limited; Prism Johnson Limited; and Shivam Enterprise respectfully move for this Court to hold that the contested portions of the *Final Results* are not supported by substantial evidence and are otherwise not in accordance with law. Consolidated Plaintiffs Antique Marbonite Private Limited; Prism Johnson Limited; and Shivam Enterprise further move for the Court to remand this matter to the Commerce for disposition consistent with the order and opinion of the Court.

Respectfully submitted,

/s/ Aqmar Rahman

Robert G. Gosselink
Jonathan M. Freed
Aqmar Rahman
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C. 20003
(202) 223-3760

Counsel to Consolidated Plaintiffs Antique Marbonite Private Limited, Prism Johnson Limited, and Shivam Enterprise

Dated: June 30, 2023

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| CAMBRIA COMPANY LLC, | |
|     Plaintiff, | |
| ANTIQUE MARBONITE PRIVATE LIMITED; PRISM JOHNSON LIMITED; and SHIVAM ENTERPRISES, | |
|     Consolidated-Plaintiffs, | |
| v. | |
| UNITED STATES, | Consolidated Court No. 23-00007 |
|     Defendant, | |
| APB TRADING, LLC; ARIZONA TILE LLC; COSMOS GRANITE (SOUTH EAST) LLC; COSMOS GRANITE (SOUTH WEST) LLC; COSMOS GRANITE (WEST) LLC;  CURAVA CORPORATION; DIVYASHAKTI GRANITES LIMITED; DIVYASHAKTI LIMITED;  M S INTERNATIONAL, INC.; MARUDHAR ROCKS INTERNATIONAL PVT LTD.; OVERSEAS MANUFACTURING AND SUPPLY INC.;  PNS CLEARANCE LLC;  QUARTZKRAFT LLP;  and STRATUS SURFACES LLC, | |
|     Defendant-Intervenors. | |

## CERTIFICATE OF COMPLIANCE

The undersigned counsel at Trade Pacific PLLC hereby certifies that the Memorandum of Law in Support of Plaintiffs Rule 56.2 Motion for Judgment Upon the Agency Record, dated June 30, 2023, complies with the word-count limitation described in the Standard Chambers Procedures.  The memorandum of law contains 9,586 words according to the word-count function of the word-processing software used to prepare the memorandum.

Respectfully submitted,

/s/ Aqmar Rahman
Robert G. Gosselink
Aqmar Rahman

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760
Counsel to Consolidated Plaintiffs Antique
Marbonite Private Limited; Prism Johnson
Limited; and Shivam Enterprise

Dated:  June 30, 2023

## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

CAMBRIA COMPANY LLC,

     Plaintiff,

ANTIQUE MARBONITE PRIVATE LIMITED; PRISM JOHNSON LIMITED; and SHIVAM ENTERPRISES,

     Consolidated-Plaintiffs,

     v.

UNITED STATES,

     Defendant,

APB TRADING, LLC; ARIZONA TILE LLC; COSMOS GRANITE (SOUTH EAST) LLC; COSMOS GRANITE (SOUTH WEST) LLC; COSMOS GRANITE (WEST) LLC;  CURAVA CORPORATION; DIVYASHAKTI GRANITES LIMITED;  DIVYASHAKTI LIMITED;  M S INTERNATIONAL, INC.;  MARUDHAR ROCKS INTERNATIONAL PVT LTD.;  OVERSEAS MANUFACTURING AND SUPPLY INC.;  PNS CLEARANCE LLC;  QUARTZKRAFT LLP;  and STRATUS SURFACES LLC,

     Defendant-Intervenors.

Consolidated
Court No. 23-00007

---

### MEMORANDUM IN SUPPORT OF THE MOTION OF ANTIQUE MARBONITE PRIVATE LIMITED; PRISM JOHNSON LIMITED; AND SHIVAM ENTERPRISE FOR JUDGMENT ON THE AGENCY RECORD

Robert G. Gosselink
Aqmar Rahman
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Consolidated Plaintiffs Antique Marbonite Private Limited; Prism Johnson Limited; and Shivam Enterprise

Dated:  June 30, 2023

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ......................................................................................................... 1

STATEMENT PURSUANT TO RULE 56.2(c) ........................................................... 1

STATEMENT OF FACTS ............................................................................................ 4

STANDARD OF REVIEW ........................................................................................... 9

SUMMARY OF THE ARGUMENT ........................................................................... 11

I.      Commerce's Rejection of the Antique Group's Late Filing Was Unlawful Because the Delay in Submitting the Response Was Inconsequential to Commerce's Ability to Conduct a Timely Administrative Review and Commerce's Decision Was Not Supported by the Record Evidence ...................................................................................... 13

    A. Commerce's Decision to Reject the Antique Group's Delayed Filing was an Abuse of Discretion Because the Delay Was Immaterial to the Conduct of the Administrative Review ................................................................................ 13

    B. Commerce's Decision to Reject the Antique Group's Response Was Not Supported by the Record……… ........................................................................................ 17

II.     Commerce Acted Arbitrarily by Deviating from its Established Practice Without Explanation ................................................................................................................. 19

    A.      Commerce Should Have Allowed the Antique Group to Submit its Response Because the Antique Group Previously Had Never Missed a Deadline ............... 19

    B.      Commerce's Rejection of the Antique Group's Filing Was Contrary to its Practice for Granting Extension Requests to Parties that Missed Deadlines Based on Minor Mistakes……… ................................................................................................. 23

III.    Commerce's Application of AFA in this Proceeding Was Unsupported by Substantial Evidence .................................................................................................. 27

    A.      Commerce Failed to Demonstrate that the Antique Group Did Not Cooperate to the Best of its Ability ......................................................................................... 27

    B.      Commerce's Rejection of the Antique Group's Filing Led to Severe and Utterly Disproportionate Consequences and Punitive Results ......................................... 30

IV. CONCLUSION .................................................................................................... 32

## **TABLE OF AUTHORITIES**

## **Cases**

*Appleton Papers Inc. v. United States*, 37 CIT 1034, 1037, 929 F.Supp.2d 1329, 1334 (2013). 10, 18

*Artisan Mfg. Corp. v. United States*, 38 Ct. Int'l Trade 682, 693, 978 F. Supp. 2d 1334, 1344 (2014)............................................................................................................. 16, 18, 31, 32

*Asociacion Columbiana de Exportadores de Flores v. United States*, 22 CIT 173, 184–85, 6 F. Supp. 2d 865, 879–80 (1998)............................................................................................ 11

*Bebitz Flanges Works Private Ltd. v. United States*, 433 F. Supp. 3d 1309, 1316 (Ct. Int'l Trade 2020) .......................................................................................................................... 30

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) .................................... 11

*Cappadora v. Celebrezze*, 356 F.2d 1, 6 (2d Cir. 1966) ............................................................. 21

*Celik Halat v. Tel Sanayi A.S.*, 557 F. Supp. 3d 1348, 1361 (Ct. Int'l Trade 2022).................... 23

*Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), *aff'd*, 810 F.2d 1137 (Fed. Cir. 1987). .............................................................................. 10

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) 9

*Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 619-20 (1966) .............................................. 11

*F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ......................................................................................................................... 32

*Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) ................................... 10

*Green Country Mobilephone, Inc. v. FCC*, 765 F.2d 235, 237, 246 U.S. App. D.C. 366 (D.C. Cir. 1985) ......................................................................................................................... 24

*Grobest& I-Mei Indus. (Vietnam) Co. v. United States, 36 Ct. Int'l Trade 98*, 123, 815 F. Supp. 2d 1342, 1365 (2012).......................................................................................... 14, 15, 18

*Kirk v. Comm'r of Soc. Sec. Admin.*, 987 F.3d 314, 321 (4th Cir. 2021) .................................... 22

*Mitsubishi Heavy Indus. v. United States*, 22 CIT 541, 545, 15 F. Supp. 2d 807, 813 (1998)..... 10

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)..................................................................... 18, 22

*Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 587 F. Supp. 2d 1303, 1307 (2008)............................................................................................................................. 24

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003)......................... 28, 29

*NLRB v. Wash. Star Co.*, 732 F.2d 974, 977 (D.C. Cir. 1984) .................................................... 21

*NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995).................... 11, 19, 30

*Nucor Corp. v. United States*, 32 CIT 1380, 594 F. Supp. 2d 1320, 1331-32 (2008). ................ 11

*Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642, at *6 (Ct. Int'l Trade Feb. 15, 2023). ............................................................................................................. 20

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990)................. 11, 19, 30

*Shelter Forest Int'l Acquisition, Inc. v. United States*, No. 19-00212, 2021 Ct. Intl. Trade LEXIS 19, at *27 (Ct. Int'l Trade Feb. 18, 2021). ...................................................................... 30

*Shunde Yongjian Housewares & Hardwares Co. v. United States*, 896 F. Supp. 2d 1313, 1325 (Ct. Int'l Trade 2013)...................................................................................................... 24

*SKF USA Inc. v. United States*, 630 F.3d 1365, 1368 (Fed. Cir. 2011)....................................... 22

*Solar World Americas, Inc. v. United States,* 962 F.3d 1351, 1359 n.2 (Fed. Cir. 2020) ........... 10

*Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998).......................................... 9

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) .................................................... 11
*Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998) ............................ 10

## Statutes

1677e............................................................................................................................................ 31
19 U.S.C. § 1516a....................................................................................................................... 10
19 U.S.C. § 1516a(b)(1)(B)(i)....................................................................................................... 9
5 U.S.C. § 706(2)(A).................................................................................................................... 10

## Other Authorities

*Certain Quartz Surface Products from India: Final Results of Antidumping Duty Administrative Review; 2019-2021*, 88 Fed. Reg. 1190 (Jan. 9, 2023) ..................1, 9, 11, 14-19, 21, 26-28, 31
*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 146 (Dep't Commerce Aug. 3, 2021) ("*Initiation Notice*")............................................................. 4
*Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order:  Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam*, 70 Fed. Reg. 5152 (Dep't Commerce, Feb. 1, 2005)................................................................................. 4
*Dates of Application of Amendments to the Antidumping and Countervailing Duty Laws Made by the Trade Preferences Extension Act of 2015*, 80 FR 46793 (August 8, 2015)...................... 31
*Silicon Metal from Kazakhstan: Final Affirmative Countervailing Duty Determination*, 83 Fed. Reg. 9831 (March 8, 2018) ............................................................................................... 22, 25

## Regulations

19 C.F.R. § 351.302(c)(2).................................................................................................... 23, 26

## MEMORANDUM IN SUPPORT OF MOTION FOR
## JUDGMENT UPON THE AGENCY RECORD

### INTRODUCTION

Consolidated Plaintiffs, Antique Marbonite Private Limited; Prism Johnson Limited; and

Shivam Enterprise (collectively the "Antique Group"), foreign producers and exporters of certain

quartz surface products from India, submit this memorandum in support of their motion for

judgment on the agency record.  This case concerns decisions by the U.S. Department of

Commerce ("Commerce") to apply total adverse facts available ("AFA") and to assign a 323%

penalty dumping margin to the Antique Group for having filed a supplemental questionnaire

response a few hours after a mid-morning deadline. Given Commerce's established practice and

the minimal burden on the agency because of the late filing, Commerce's rejection of the

Antique Group's second supplemental questionnaire response and its denial of subsequent

requests for permission to refile constituted an abuse of discretion, especially considering the

dire consequences and the Antique Group's cooperative participation in all other aspects of the

review.  An assessment of the administrative record as a whole fails to support Commerce's

actions or conclusions in this matter.  Because Commerce ignored applicable legal principles,

failed to consider important aspects of the problem, and did not support its decision with

substantial record evidence, this Court should remand the case to Commerce with instructions to

reconsider aspects of the final results determination in accordance with the Court's decision.

### STATEMENT PURSUANT TO RULE 56.2(c)

Consolidated Plaintiffs, the Antique Group, contest the final results of the administrative

review of certain quartz surface products from India. *See Certain Quartz Surface Products from*

*India: Final Results of Antidumping Duty Administrative Review; 2019-2021*, 88 Fed. Reg. 1190

(Jan. 9, 2023), and accompanying Issues and Decision Memorandum (Dec. 30, 2022). The

Antique Groups seeks judgment upon the agency's record and a remand of Commerce's determination with respect to the following issues.

**Issue 1:** Was Commerce's decision to reject the Antique Group's supplemental questionnaire response an abuse of its discretion, arbitrary, and unsupported by substantial evidence?

**Answer:** Yes. Commerce abused its discretion when it rejected Antique Group's response, because the few-hours delay placed a low burden on Commerce and did not threaten Commerce's ability to complete the administrative review in a timely manner. Additionally, Commerce's reasoning for rejecting the Antique Group's response was not supported by substantial evidence because no record evidence supports Commerce's claim that it actually was burdened by the five hour delay in the submission of the Antique Group's second supplemental questionnaire response. Further, Commerce's action was arbitrary because Commerce applied disparate treatment to Antique Group's delayed response and other situations involving other parties' delayed responses.

**Issue 2:** Did Commerce depart from its long-standing practice of providing first time offenders that missed a deadline because of a minor error a second chance to file a submission?

**Answer:** Yes. Commerce traditionally has demonstrated leniency towards initial filing errors made by interested parties, allowing them a second opportunity to timely file their submissions. However, Commerce deviated from its established practice and arbitrarily

denied the Antique Group another chance to submit its second supplemental

questionnaire response despite it being the Antique Group's first missed deadline.

**Issue 3:** Was Commerce's refusal to grant the Antique Group an extension request to file

its second supplemental questionnaire response reasonable?

**Answer:** No. Commerce's decision to deny the Antique Group's extension request after

the deadline was inconsistent with its practice in similar cases. Commerce frequently

grants extension requests to interested parties for minor errors even after the response's

deadline has passed. Commerce's denial in this case was inconsistent with its established

practice.

**Issue 4:** Was Commerce's decision to apply adverse facts available to the Antique Group

supported by substantial evidence?

**Answer:** No. The Antique Group, a *pro se* respondent, participated in this administrative

review to the best of its ability. Aside from a minor delay in submitting its second

supplemental questionnaire response, the Antique Group consistently demonstrated

cooperative behavior and promptly provided Commerce with all requested information.

Therefore, Commerce's decision to impose total AFA on the Antique Group for the

single infraction lacked substantial evidence.

**Issue 5:** Was Commerce's AFA rate assigned to the Antique punitive and an abuse of

Commerce's discretion?

**Answer:** Yes. The application of Commerce's 323.12 percent AFA rate to the Antique

Group because of a minor filing error not only was aberrational but also was punitive.

Commerce imposed the AFA rate on the Antique Group without considering the entirety

of the circumstances surrounding the administrative review, resulting in a dumping

margin that does not serve to ensure cooperation in future administrative review, and functions instead as a commercial death sentence for the Antique Group.

## STATEMENT OF FACTS

The Antique Group is comprised of three Indian exporters and producers of certain quartz surface products from India. Certain quartz surface products from India have been subject to an antidumping duty order since 2020. *See Certain Quartz Surface Products from India and Turkey: Antidumping Duty Orders,* 85 FR 37422 (Dep't Commerce, June 22, 2020).  On August 3, 2021, Commerce initiated the first administrative review of the antidumping duty order on certain quartz surface products from India.[1]  Commerce's period of review ("POR") was December 13, 2019, through May 31, 2021.

In September 2021, Commerce issued a memorandum selecting the Antique Group and Pokarna Engineered Stone Limited ("PESL") as mandatory respondents in the 2019-2021 administrative review.[2] This was the first segment of any proceeding in which the Antique Group was a mandatory respondent, and the companies initially participated as a *pro se* respondents with the assistance of only a local trade consultant. In November and December 2021, the Antique Group submitted timely responses to all sections of Commerce's antidumping questionnaire including providing general information, home market sales data, U.S. sales data,

---

[1] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 146 (Dep't Commerce Aug. 3, 2021) ("*Initiation Notice*") (PD 22).  We reference public record documents in this brief as "PD" and confidential record documents as "CD.".

[2] *See* Respondent Selection Memorandum (Sep. 28, 2021) (CD 13).

and costs of production .[3] Specifically, the Antique Group met the November 4, 2021, 5:00 p.m. deadline to file its Section A response; met the December 9, 2021, 5:00 p.m. deadline to file its Section B response; met the December 9, 2021, 5:00 p.m. deadline to file its Section C response; and met the December 9, 2021, 5:00 p.m. deadline to file its Section D response.  Thirteen days after the filing its Section C response (*i.e.*, U.S. sales section), Commerce informed the Antique Group that there were certain errors in the narrative portion of the response, and asked the group to refile its response, which it did on December 23, 2021.[4]

On March 18, 2022, approximately three months after the Antique Group submitted its initial responses, Commerce issued the Antique Group a supplemental questionnaire. The Antique Group filed a timely response to this first supplemental questionnaire on April 15, 2022.[5] Shortly thereafter, Commerce issued the Antique Group a second supplemental questionnaire, and set a response deadline of 5:00 p.m. on May 4, 2022.[6] On April 30, 2022, the Antique Group requested an extension of time to file its second supplemental questionnaire response.[7] On May 2, 2022, Commerce granted the extension in part, setting a deadline of 5:00

---

[3] *See* Antique Group's Section A Response (Nov. 3, 2021) (CD 21 to CD 35); Antique Group's Sections B-D Response (Dec. 9, 2021) (CD 36 to CD 62); Antique Group's re-filed Section C response (December 23, 2021) (CD 180 to 192).

[4] *See* Letter from the Department entitled, "2019-2021 Antidumping Duty Administrative Review of Certain Quartz Surface Products from India: Section C Questionnaire Response" (Dec. 22, 2021) (PD 135).

[5] *See* Commerce's first supplemental questionnaire response (Mar. 18, 2022) (CD 195); *see also* Antique Group's Responses to Commerce's first supplemental questionnaire (Apr. 15, 2022) (CD 206 to 215).

[6] *See* Commerce's second supplemental questionnaire to the Antique Group (Apr. 20, 2022) (CD 216).

[7] *See* Antique Group's first extension request for its second supplemental questionnaire response (Apr. 30, 2022) (PD 198).

p.m. on May 11, 2022, for the Antique Group to respond.[8] Subsequently, on May 7, 2022, the

Antique Group requested a second extension, seeking to move the deadline to May 18, 2022. The

Antique Group provided a detailed explanation for its request, highlighting the substantial nature

of the second supplemental questionnaire, which contained over 200 questions and requests.

Additionally, the Antique Group explained that it needed to collect information from four

geographically dispersed companies across India, which compounded the complexity of

responding to Commerce's requests.[9] On May 9, 2022, the Commerce Department partially

granted the extension request until May 16, 2022, and set a morning deadline of 10:00 a.m..[10] On

May 16, 2022, the Antique Group filed its complete response to Commerce's second

supplemental questionnaire, but did so between 2:56 p.m. and 3:45 p.m., *i.e.*, prior to what it

believed to be Commerce's usual deadline time for submissions (*i.e.*, 5:00 p.m.).[11] On May 18,

2022, Commerce rejected the submission, stating the deadline date for the second supplemental

questionnaire response was, in fact, May 16, 2022, but that the specific deadline time was 10:00

a.m., and that the Antique Group had failed to submit its questionnaire response by the

deadline.[12] In other words, while the Antique Group had filed its response on the correct date,

Commerce rejected the response because the Antique Group did not meet the morning deadline.

---

[8] *See* Commerce's letter extending the deadline for the second supplemental questionnaire
response (May 2, 2022) (PD 199).

[9] *See* Antique Group's second extension request for its second supplemental questionnaire
response (May 7, 2022) (PD 200).

[10] *See* Commerce's letter extending the deadline for the second supplemental questionnaire
response (May 9, 2022) (PD 201).

[11] *See* Antique Group's Response to Commerce's second supplemental questionnaire (May 16,
2022) (CD 217) (PD 202 to 203).

[12] *See* Commerce's Rejection Memo (May 18, 2022) (PD 204).

On May 18, 2022, the Antique Group promptly requested an opportunity to refile its second supplemental questionnaire. In its request, the Antique Group admitted to a misunderstanding regarding the response deadline, believing that the response was due on May 16, 2022, at 5:00 p.m. The Antique Group explained that it and its local trade consultant understood the seriousness of Commerce's deadlines and had worked 12-to-14 hours a day (including weekends) to complete and compile the company's responses.[13] Nonetheless, on May 20, 2022, Commerce denied the Antique Group's request because, according to Commerce, the reason for the Antique Group's late request did not constitute extraordinary circumstances under 19 C.F.R. § 351.302(c).[14]  On May 24, 2022, the Antique Group submitted another request to Commerce to accept its second supplemental questionnaire response. In this request, the Antique Group provided a detailed explanation of the need to extend the deadline, citing extraordinary circumstances. The Antique Group also requested Commerce to permit an opportunity to refile its response because of the unusual nature of the 10:00 a.m. deadline. Commerce denied this request on June 3, 2022.[15] On June 10, 2022, the Antique Group made a third request for an extension of time and for Commerce to reconsider its rejection of the Antique Group's second

---

[13] *See* Antique Group Request to Re-file Second Supplemental Questionnaire Response (May 19, 2022) (PD 205).

[14] *See* Commerce's Letter entitled, "Rejection of Second Supplemental Questionnaire Response" (May 20, 2022) (PD 207).

[15] *See* Antique Group Second Request to Re-file the Second Supplemental Questionnaire Response (May 24, 2022) (PD 208); *see also* Commerce letter entitled, "Certain Quartz Surface Products from India: Denial of Second Request to Resubmit Second Supplemental Questionnaire Response" (June 3, 2022) (PD 216).

supplemental questionnaire response.[16] In its request for reconsideration, the Antique Group

reiterated that it had mistakenly presumed that the response deadline was 5:00 p.m. because that

was the usual deadline time for Commerce submissions. By the time of its third request for

reconsideration, the Antique Group also had hired a U.S. law firm (*i.e.*, Arent Fox Schiff LLP) to

represent it for the remainder of the administrative review proceeding.[17]

On June 30, 2022, Commerce issued its preliminary results of the 2019-2021

administrative review, assigning the Antique Group a preliminary dumping margin of 323.12%

based on the application of adverse facts available because of the Antique Group's untimely filed

(and rejected) second supplemental questionnaire response.[18]

On August 24, 2002, the Antique Group submitted a substantive case brief to Commerce,

specifically challenging Commerce's decision to reject the Antique Group's supplemental

response. The brief emphasized that Commerce should have accepted the Antique Group's

second supplemental questionnaire response, and explained that the existing record contained

sufficient information for Commerce to determine the Antique Group's dumping margin

accurately, thus obviating the need for Commerce to resort to the use of adverse facts available.

The Antique Group's brief also explained that the application of total adverse facts available was

---

[16] *See* Antique Group Third Request for Reconsideration and Request for Extension to File Out
of Time (June 10, 2022) (PD 225).

[17] *Id*.

[18] *See Certain Quartz Surface Products from India: Preliminary Results of Antidumping Duty
Administrative Review and Partial Rescission of Antidumping Duty Administrative Review*;
2019–2021, 87 FR 40786 (July 8, 2022) (Preliminary Results), and accompanying Preliminary
Decision Memorandum (PDM).

inappropriate, and highlighted the unreasonable and aberrational nature of Commerce's use of

the high petition rate as the basis for total adverse facts available.

On December 30, 2022, Commerce issued its final results of the 2019-2021

administrative review, continuing to find that its rejection of the Antique Group's second

supplemental questionnaire response was warranted, and that there was no basis to reconsider its

earlier decision.[19]  This appealed ensued.

<u>**STANDARD OF REVIEW**</u>

In reviewing the final results of an antidumping duty ("AD") administrative review, the

Court deems the agency determination unlawful when it is not supported by substantial evidence

on the record, or otherwise is not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). To

determine whether Commerce's interpretation and application of the AD statute is "in

accordance with law," the Court undertakes the two-step analysis prescribed by *Chevron, U.S.A.,*

*Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984).

Under *Chevron*'s first prong, the Court reviews Commerce's construction of a statutory

provision to determine whether "Congress has directly spoken to the precise question at issue."

*Id.* at 842. "To ascertain whether Congress had an intention on the precise question at issue, {the

Court} employ{s} the 'traditional tools of statutory construction.'" *Timex V.I., Inc. v. United*

*States*, 157 F.3d 879, 882 (Fed. Cir. 1998). The first tool is the statute's text; "if the text answers

the question, that is the end of the matter." *Id.*  If the Court determines that the statute is silent or

ambiguous with respect to the specific issue, the Court next examines whether Commerce's

construction of the statute is permissible. *See Chevron*, 467 U.S. at 843.  This is an inquiry into

---

[19] *See Certain Quartz Surface Products from India: Final Results of Antidumping Duty Administrative Review; 2019-2021*, 88 Fed. Reg. 1190 (Jan. 9, 2023), and accompanying Issues and Decision Memorandum (Dec. 30, 2022) ("Final Results").

the reasonableness of Commerce's interpretation.  *See Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996).

Commerce's exercise of discretion in cases brought pursuant to 19 U.S.C. § 1516a are subject to the default standard of the Administrative Procedure Act ("APA") which authorizes a reviewing court to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A); *see also Solar World Americas, Inc. v. United States,* 962 F.3d 1351, 1359 n.2 (Fed. Cir. 2020) (noting that, in cases reviewed under 28 U.S.C. § 2640(b), APA § 706 review applies "since no law provides otherwise").  "Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion."  *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  In determining whether Commerce's interpretation is reasonable, the Court considers "the express terms of the provisions at issue, the objectives of those provisions, and the objectives of the antidumping scheme as a whole."  *See Mitsubishi Heavy Indus. v. United States*, 22 CIT 541, 545, 15 F. Supp. 2d 807, 813 (1998).  The Court "will not allow an agency, under the guise of lawful discretion, to contravene or ignore the intent of the legislature or the guiding purpose of the statute."  *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), *aff'd*, 810 F.2d 1137 (Fed. Cir. 1987).  Moreover, an abuse of discretion occurs where the decision is "based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or an unreasonable judgment in weighing relevant factors."  *Appleton Papers Inc. v. United States*, 37 CIT 1034, 1037, 929 F.Supp.2d 1329, 1334 (2013) (*citing Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).

Additionally, "{t}he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). Substantial evidence is "more than a mere scintilla," and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 619-20 (1966) (*quoting Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)); *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009). For a determination to satisfy this standard, "{t}here must be a rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962); *Nucor Corp. v. United States*, 32 CIT 1380, 594 F. Supp. 2d 1320, 1331-32 (2008). The Court of International Trade has found Commerce's determinations unlawful "where Commerce has relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions." *Rhone-Poulenc, Inc. United States*, 20 CIT 573, 575, 927 F. Supp. 451, 454 (1996); *see also Asociacion Columbiana de Exportadores de Flores v. United States*, 22 CIT 173, 184–85, 6 F. Supp. 2d 865, 879–80 (1998) (stating that a change in practice requires Commerce to explain the basis for its change and that such basis must be in accordance with law and supported by substantial evidence). Finally, even where Commerce has acted in conformity with its statutory and regulatory obligations, the resulting duty rate must be examined for its accuracy and fairness. *See NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995).

## SUMMARY OF THE ARGUMENT

In the Final Results, Commerce rejected the Antique Group's second supplemental questionnaire response and applied total adverse facts available to the Antique Group resulting in a 323.12 percent duty rate for the Antique Group. Commerce's decisions in this case were

unlawful because the decisions to reject the response, to not permit re-filing, and to assign a margin based on total adverse facts available were arbitrary, unsupported by substantial evidence, and otherwise were not in accordance with the law.

First, the Antique Group, was a *pro se* respondent, and made genuine efforts to cooperate fully with Commerce's instructions. Although the Antique Group inadvertently overlooked the unique time of day associated with the applicable deadline,[20] there is no evidence that the five-hour delay in filing the response created an undue burden on Commerce's ability to conduct the review or meaningfully hindered Commerce's completion of the administrative review in a timely manner, especially when the submission was made 45 days prior to the preliminary determination.[21] Commerce's decision to reject the second supplemental questionnaire was unreasonable and an abuse of discretion because the few-hours delay had no impact on the Commerce's ability to complete the administrative review. Moreover, Commerce's decision to reject the Antique Group's response was unlawful because Commerce failed to identify any record evidence to show that the delay actually hindered its ability to conduct the proceeding.

Second, Commerce rejection of the Antique Group's second supplemental response was unlawful because Commerce traditionally has demonstrated some degree of leniency when filing errors initially are made by interested parties, and has allowed them a second opportunity to file their submissions. However, in the case of the Antique Group, Commerce deviated from its established practice and arbitrarily denied the Antique Group another chance to submit its second

---

[20] *See* Antique Group Request to Re-file Second Supplemental Questionnaire Response (May 19, 2022) (PD 205).

[21] *See* Antique Group's Response to Commerce's second supplemental questionnaire (May 16, 2022) (CD 217) (PD 202 to 203).

supplemental questionnaire response despite the delayed submission being the Antique Group's first missed deadline.

Third, Commerce's decision to deny the Antique Group's extension request after the deadline was inconsistent with its own practices in similar cases. Commerce frequently grants extension requests to interested parties for minor errors even after response deadlines have passed. Commerce's failure to do so in this case rendered Commerce's decision arbitrary.

Finally, aside from a minor delay in submitting its second supplemental questionnaire response, the Antique Group consistently demonstrated cooperative behavior and promptly provided Commerce with all requested information. Commerce's decision to impose total AFA on the Antique Group for the single infraction lacked substantial evidence because the Antique Group participated in the administrative to the best of its abilities. Moreover, Commerce's decision to apply a 323.12 percent AFA rate to the Antique Group was unreasonable and unduly punitive because Commerce failed to account for the totality of circumstances in the proceeding.

## ARGUMENT

I.   **Commerce's Rejection of the Antique Group's Late Filing Was Unlawful Because the Delay in Submitting the Response Was Inconsequential to Commerce's Ability to Conduct a Timely Administrative Review and Commerce's Decision Was Not Supported by the Record Evidence**

    **A.  Commerce's Decision to Reject the Antique Group's Delayed Filing was an Abuse of Discretion Because the Delay Was Immaterial to the Conduct of the Administrative Review**

Commerce abused its discretion in rejecting the Antique Group's second supplemental questionnaire response because Commerce failed to weigh the actual burden of accepting the second supplemental questionnaire response and the need for finality against the accuracy of calculating an accurate antidumping duty rate for the Antique Group.  This Court has found that Commerce abuses its discretion when it rejects documents based on a purported interest in

timeliness and finality when the actual burden placed on Commerce is low and the timeliness of an investigation is not threatened. *See Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 36 Ct. Int'l Trade 98 (2012)(*Grobest*). In the Final Results, Commerce explained that it could not have accepted the Antique Group's delayed submission because it would have "hinder{ed} the efficient and timely conduct of {its} proceedings." *See* Final Results at 20. The Consolidated Plaintiffs recognize the agency's interest in efficiently conducting its proceedings. But the particular circumstances of this case do not warrant such a draconian response.  Here, there is no information on the record that the Antique Group's delayed response, which was filed on the due date and within business hours, placed a burden on Commerce that threatened Commerce's ability to complete the administrative review efficiently or in a timely manner.  Because substantial evidence does not support the agency's claims, Commerce abused its discretion by rejecting the Antique Group's second supplemental questionnaire response.

The Antique Group acknowledges that it filed its second supplemental questionnaire response on May 16, 2022, approximately five hours after the 10:00 a.m. deadline established by Commerce.[22] But there is no evidence on the record that the Antique Group intentionally delayed its filing or attempted to gain some advantage by filing its response after the 10:00 a.m. deadline. In fact, the Antique Group believed its submission to have been timely filed based on its previous experience in the review and Commerce's practice in other proceedings, in which Commerce consistently established 5:00 p.m. filing deadlines.[23]  Indeed, a deadline of 10:00 a.m.

---

[22] *See* Antique Group's Response to Commerce's second supplemental questionnaire (May 16, 2022) (CD 217) (PD 202 to 203).

[23] *See* Antique Group Request to Re-file Second Supplemental Questionnaire Response (May 19, 2022) (PD 205).

occurs less than 0.5 percent of the time in AD/CVD investigations and reviews.[24]  Here, the

Antique Group, a *pro se* respondent, made genuine and demonstrated efforts throughout the

review to cooperate fully with Commerce's instructions,  and in this instance misunderstood the

unique time of day associated with the applicable deadline.[25] But Commerce never presented any

evidence – either at the time of the filing or in its Final Results decision memorandum – that the

five-hour delay meaningfully hindered Commerce's ability to complete the administrative review

in a timely manner, especially given that the preliminary results of review were not issued until

45 days after the filing. Even with a five-hour delay, Commerce had a significant amount of time

available prior to making its preliminary determination in the administrative review, and

Commerce has presented no factual evidence that a five-hour delay made a meaningful

difference in its ability to issue a timely preliminary results decision. Furthermore, even if that

time frame was insufficient – and no information on the administrative record indicates that it

was – Commerce also has not established that the five hour delay prevented Commerce from

calculating an antidumping duty margin for the Antique Group during the remaining 228 days

before Commerce issued its *Final Results* on December 30, 2022.

This Court has rejected Commerce's interest in timeliness and finality as an acceptable

basis for rejecting filings in situations more burdensome to Commerce than that posed by the

Antique Group's delayed filing. In *Grobest & I-Mei Indus. (Vietnam) Co. v. United States, 36 Ct.

Int'l Trade 98*, 123, 815 F. Supp. 2d 1342, 1365 (2012), for example, this Court found that where

---

[24] *See* Divyashakti Granites Ltd's "Request for Limited Acceptance of Submission" (June 8,
2022) at 2-3 (estimating that Commerce sets a 10:00 am deadline with respect to less than 0.5%
of its required submissions) (PD 220).

[25] *See* Antique Group Request to Re-file Second Supplemental Questionnaire Response (May 19,
2022) (PD 205).

a submission was 95 days late, but filed more than seven months before Commerce released the

preliminary results and one year before Commerce released the final results, Commerce's

interest in finality could not outweigh the agency's mandate to calculate antidumping duty rates

with "fairness and accuracy." *Id.* at 36 Ct. Int'l Trade at 121, 815 F. Supp. 2d at 1367.  In

situations analogous to the Antique Group's, the Court similarly has concluded that Commerce's

rejection of a respondent's responses was unlawful. In *Artisan Mfg. Corp. v. United States*, 978

F. Supp. 2d 1334 (Ct. Int'l Trade 2014) (*Artisan Mfg.*), a respondent missed a filing deadline by

less than 24 hours and the submission was available to Commerce by the beginning of the next

business day. In that case, the Court rejected Commerce's assertion that the agency's need to

complete the investigation within the statutory deadline justified the agency's rejection of the

untimely filed submission, explaining,

> Such a brief period could not have delayed the investigation in any meaningful
> way. Nor is it apparent from the record how acceptance of the filing could have
> interfered in any other way with Commerce's ability to conduct the investigation.

*Artisan Mfg.*, 978 F. Supp. 2d at 1345. Although the submission in *Artisan Mfg.* occurred at an

earlier stage of the administrative review process compared to the Antique Group's second

supplemental questionnaire response in the present case, the impact (or lack of impact) on the

agency was similar, and the Court's reasoning is applicable in this context. In fact, the five-hour

delay in the present case was an even shorter delay than in *Artisan Mfg.*, with Commerce

receiving the response in this case on the same day of the deadline and during business hours. As

a result, record evidence does not support that the minor delay had any impact on, or caused any

disruption to, Commerce's overall administrative review process.  As such, Commerce's

decision to reject the Antique Group's second supplemental questionnaire response and to apply

AFA to the company was an abuse of discretion. In light of the facts of this case, the interests of

fairness and accuracy outweigh any claimed, but unsupported, burden on the agency.

Commerce's rejection of the Antique Group's late-filed submission thus was an abuse of

discretion, and this Court should remand the case with instruction to Commerce to accept the

Antique Group's second supplemental questionnaire response and to calculate the Antique

Group's antidumping duty margin based on the company's reported sales and cost data.

### B. Commerce's Decision to Reject the Antique Group's Response Was Not Supported by the Record

Commerce's decision to reject the Antique Group's response was unsupported by

substantial evidence because despite claiming that the Antique Group's late filing encumbered

Commerce's ability to administer the review, Commerce did not identify any record evidence

showing that the submission delay actually hindered its ability either to investigate the Antique

Group's responses or to conduct the proceeding in a timely manner. In the Final Results,

Commerce in fact conceded that "the burden associated with a single late-filed response may be

perceived as minimal," _see_ Final Results at 20, but nonetheless asserted without any support that

the "burden is not minimal when aggregated across all proceedings." _See_ Final Results at 20. But

Commerce never described what "aggregation" of minimal burdens resulted in an actual

substantive burden.  Commerce never explained how a late filing in another proceeding

administered by another office within Commerce might have impacted (or, in fact, did impact)

Office 3's ability to perform its work.  Nor did Commerce even identify any other specific

instance of a late filing in another proceeding.  Finally, Commerce's supposition about the

cumulative impact of multiple small burdens across many cases contradicts Commerce's

separate claim that it considers each case individually.  _See_ Final Results at 33.  Commerce has

an obligation to examine the record and provide an adequate explanation for its findings such

that the record demonstrates a "rational connection between the facts found and the

[determination] made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Here, Commerce's assertion that the burden, when aggregated across all proceedings, was not minimal lacks substantiation from the record. As noted above, Commerce provided no evidence to show that Commerce faced any actual burden across its proceedings when it rejected the Antique Group's second supplemental questionnaire response and denied its requests for additional time. In failing to cite any other ongoing cases or to offer actual examples of how accepting the Antique Group's delayed submission caused an undue burden on Commerce, Commerce failed to substantiate its claims with factual evidence. *See Appleton Papers Inc. v. United States*, 37 CIT 1034, 1037, 929 F.Supp.2d 1329, 1334 (2013) (*citing Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)). In the absence of such evidence, Commerce's claim of burden was not real, but merely hypothetical.  This is insufficient; Commerce's decisions cannot be based on speculation or conjecture.

Moreover, in the Final Results, Commerce claimed "any time that Commerce lost because the submission was untimely did, in fact, make our ability to conduct our preliminary analysis that much more difficult." *See* Final Results at 20. However, as was true in *Artisan Mfg*. and *Grobest*, there is no record evidence that the circumstances of the Antique Group's delayed filing burdened Commerce or posed any undue delay or interference. In this case, there also was no tension between Commerce's need for finality and Commerce's responsibility to accurately calculate the antidumping duty margin because the Antique Group's five-hour late response nonetheless was filed 45 days prior to the preliminary results, and the delay thus represented only one percent of the normal business hours available to Commerce to review the response between the time of filing and the preliminary results deadline. *See NTN Bearing Corp. v. United States*,

74 F.3d 1204, 1208-09 (Fed. Cir. 1995); *see also Rhone Poulenc, Inc. v. United States*, 899 F.2d

1185, 1191 (Fed. Cir. 1990) (In the context of AD proceedings, while Commerce clearly has the

discretion to regulate administrative filings, that discretion is bounded at the outer limits by the

obligation to carry out its statutory duty of determining dumping margins 'as accurately as

possible.')  Commerce's claim that the Antique Group's delay in filing its second supplemental

questionnaire response affected the agency's conduct of the preliminary determination thus is

disconnected from the record of this case and Commerce's Final Results. The Final Results lack

any references to the factual circumstances of this case that would demonstrate the actual impact

or hindrance experienced by the agency as a result of the delay. Remarkably, Commerce never

offered any explanation regarding how the five-hour delay in receiving the response had a

meaningful negative impact on its preparation of the results of the administrative review. Given

the ample 45-day timeframe prior to the preliminary results and Commerce's failure to articulate

how the five-hour delay had an adverse effect on Commerce's preliminary analysis, Commerce's

claims of undue burden are not supported by substantial evidence.

## II.    Commerce Acted Arbitrarily by Deviating from its Established Practice Without Explanation

### A.  Commerce Should Have Allowed the Antique Group to Submit its Response Because the Antique Group Previously Had Never Missed a Deadline

Commerce's rejection of the Antique Group's second supplemental questionnaire

response and denial of its extension requests also were unlawful because these decisions were

inconsistent with Commerce's longstanding policy of leniency for initial filing errors.  The Court

of International Trade explained "Commerce's practice is to allow a law firm that misses a filing

deadline one opportunity to submit the untimely information where { } the law firm failed to …

file a complete submission before the specified hour on the date of the deadline," so long as "that

law firm has: 1) not previously been afforded such an opportunity in a past segment of any proceeding; and 2) identified the steps it has taken to avoid untimely filings in the future." *Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642, at *6 (Ct. Int'l Trade Feb. 15, 2023). In this case, Commerce's denial of the Antique Group's request for additional time to submit its response as well as the rejection of the second supplemental response itself not only were inconsistent with its past practice, but were even more unreasonable because at the time of the filing, the Antique Group was not even represented by a U.S. law firm and was an inexperienced *pro se* respondent.  Commerce acted arbitrarily by not granting the Antique Group the same opportunity to correct a first-time filing deadline error that it previously granted parties represented by experienced trade counsel.  And its rejection and denials were further arbitrary considering that the Antique Group was a *pro se* respondent.

Furthermore, the Antique Group explained to Commerce that it had taken remedial measures to avoid future late filings including:

- instructing its paralegal team to provide relevant updates inclusive of the case number, segment, name of the submission, due date for filing, and time by which any submission was to be made; and that such information would be shared with all members of the organization working on the case to ensure that multiple persons were aware of the relevant timelines;

- ensuring that both the paralegal team and the lead consultant checked any extension requests and confirmed in their calendars the filing deadlines at least one-working day before any filing dates; and

- retaining U.S. counsel to also monitor deadlines and assist with future submissions.[26]

The Antique Group thus not only was a first-time "offender," but also took remedial steps to prevent future late filings.  The Antique Group therefore met all the requirements under Commerce's practice to be afforded a second chance by Commerce. However, in the Final Results, Commerce refused to address the Antique Group's argument that it be permitted an opportunity to refile an untimely response, and continued to reject the Antique Group's second supplemental response even though Commerce did not find that the Antique Group had previously submitted untimely information or failed to adopt concrete measures to prevent future untimely filings.

In the Final Results, Commerce stated that "… it evaluates each individual situation when making a determination of whether accepting a late submission is warranted, basing this decision on the specific facts of each proceeding." See Final Results at 19. However, contrary to this claim, Commerce did not take into consideration that the Antique Group was a *pro se* respondent or that it was a first time offender.  Commerce's explanation therefore not only was unsupported by substantial evidence, but its approach also contradicted its practice of allowing first-time offenders, in similar situations, another opportunity to file their response.  *NLRB v. Wash. Star Co.*, 732 F.2d 974, 977 (D.C. Cir. 1984) (per curiam) ("The present sometimes-yes, sometimes-no, sometimes-maybe policy of [enforcing] due dates cannot, however, be squared with our obligation to preclude arbitrary and capricious management of the [agency]'s mandate."); *see also Cappadora v. Celebrezze*, 356 F.2d 1, 6 (2d Cir. 1966) (Friendly, J.) ("[O]nce appropriate

---

[26] *See* Letter from ArentFox Schiff LLP, re: Antique Group Pre-Preliminary Comments (Jun. 14, 2022) ("Antique Group Pre-Prelim. Comments") at 4 (PD 230).

rules have been established, the discretion conferred in day to day administration cannot have been assumed to extend to unreasonable deviation from such rules on an *ad hoc* basis at the whim of the [agency].")

In *Welded Line Pipe from the Republic of Turkey*, Commerce reconsidered its decision to reject a supplemental questionnaire response filed after the deadline because of a calendaring error based on counsel's assurance that they would "make every effort to stop and recheck deadlines when entering them on his calendar and to recheck them again throughout the process of working on the submissions."[27] Commerce has excused untimely or incomplete submissions by law firms in several other recent cases.[28] But in this case, rather than afford the Antique Group the same one opportunity to submit an untimely response that it has extended to many other parties, Commerce departed from its consistent practice without "supply{ing} a reasoned analysis for the change." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42, 56-57 (1983); *see also SKF USA Inc. v. United States*, 630 F.3d 1365, 1368 (Fed. Cir. 2011); *see also* id. at 1373 ("When an agency changes its practice, it is obligated to provide an adequate explanation for the change."). Federal courts have recognized that an "agency 'can be said to be at its most arbitrary' when it 'treat{s} similar situations dissimilarly.'" *Kirk v. Comm'r of Soc. Sec. Admin.*, 987 F.3d 314, 321 (4th Cir. 2021) (citation omitted).  The

---

[27] *See* The Antique Group's Request for Reconsideration and Request for Extension (June 10, 2022) (PD 225); *see also* Narrow Woven Ribbons from Taiwan, No. A-583-844, Commerce Letter (Feb. 27, 2015) (counsel filed response two days late); *Silicon Metal from Kazakhstan: Final Affirmative Countervailing Duty Determination*, 83 Fed. Reg. 9831 (March 8, 2018) and accompanying Issues and Decision Memorandum at n.64 (citing Memorandum to the File, Titanium Sponge from Kazakhstan: Acceptance of Petition Supplement (Sept. 13, 2017)).

[28] *See* Narrow Woven Ribbons from Taiwan, No. A-583-844, Commerce Letter (Feb. 27, 2015) (counsel filed response two days late).

Antique Group fully cooperated throughout the administrative review and overlooked the time of the filing deadline in one instance. Commerce should have afforded the Antique Group the same opportunity to re-file its response as it has done in many other cases. By departing from its established practice and failing to provide the Antique Group with a second opportunity to file its response, Commerce acted arbitrarily without a reasoned explanation, and its decision not to accept the Antique Group's second supplemental response must be reversed.

**B. Commerce's Rejection of the Antique Group's Filing Was Contrary to its Practice for Granting Extension Requests to Parties that Missed Deadlines Based on Minor Mistakes**

Commerce's rejection of the Antique Group's request to re-file its second supplemental questionnaire response was further arbitrary and thus unsupported by substantial evidence because such rejection was inconsistent with Commerce's practice of granting extension requests based on minor mistakes. Although Section 351.302(c)(2) of Commerce's regulations defines the "extraordinary circumstances" required for late extension requests as an unexpected event that (1) could not have been prevented if reasonable measures had been taken, and (2) precludes a party or its representative from timely filing an extension request through all reasonable means, the Court has clarified that Commerce may not enforce its "extraordinary circumstances" rule in a manner that produces an unjust or punitive result. *See Celik Halat v. Tel Sanayi A.S.*, 557 F. Supp. 3d 1348, 1361 (Ct. Int'l Trade 2022) (expressing that "even were the court to presume, arguendo, that {the respondent's} representative had not described what Commerce would consider an 'extraordinary circumstance'…Commerce imposed a grossly disproportionate penalty for what essentially was a minor technical violation that had no discernible effect on the investigation.").  As such, Commerce previously has reasonably applied this regulation to allow parties to file untimely responses and extension requests because of inadvertent mistakes.

However, in this case, Commerce unreasonably denied the Antique Group's request to file its response after the deadline for a minor error when it previously has allowed parties to file responses after the deadline in similar situations. *See*, e.g., *Green Country Mobilephone, Inc. v. FCC*, 765 F.2d 235, 237, 246 U.S. App. D.C. 366 (D.C. Cir. 1985) ("We reverse the {agency} not because the strict rule it applied is inherently invalid, but rather because the {agency} has invoked the rule inconsistently. We find the {agency} has not treated similar cases similarly."); *Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 587 F. Supp. 2d 1303, 1307 (2008) ("Agencies have a responsibility to administer their statutorily accorded powers fairly and rationally, which includes not treating similar situations in dissimilar ways." (quotation and alteration marks and citation omitted)). "{A}n 'agency action is arbitrary when the agency offers{s} insufficient reasons for treating similar situations differently.'" *Foshan Shunde Yongjian Housewares & Hardwares Co. v. United States*, 896 F. Supp. 2d 1313, 1325 (Ct. Int'l Trade 2013) (citations omitted).  As the following cases demonstrate, Commerce routinely has allowed respondents to file submissions out of time, without a timely extension request, for reasons including routine mistakes and clerical errors by counsel:

- In *Narrow Woven Ribbons with Woven Selvedge from Taiwan*, counsel requested extensions for Sections B and C, but not for Section D.  Nonetheless, Commerce permitted an extension for Section D.  *See* Roung Shu Extension Request dated February 18, 2015, in Narrow Woven Ribbons with Woven Selvedge from Taiwan (A-583-844) (ACCESS Code: 3260204-01) and DOC Letter dated February 27,2015, to Akin Gump Strauss Hauer & Feld LLP granting Extension Request.[29]

---

[29] *See* The Antique Group's Request for Reconsideration and Request for Extension (June 10, 2022) (PD 225)

- In *Carbon and Certain Alloy Steel Wire Rod from the United Kingdom*, Commerce permitted a company to re-file a questionnaire response, which was not filed by the same 10 a.m. deadline at issue here. British Steel Post-Deadline Extension Request dated July 7, 2017, Carbon and Certain Alloy Steel Wire Rod from the United Kingdom (A-412-826) (ACCESS Barcode: 3590026-01) and DOC Letter dated July 10, 2017, to Steptoe & Johnson LLP granting British Steel's Extension Request. (ACCESS Barcode: 3591490-01).[30]

- In *Titanium Sponge from Kazakhstan*, Commerce retroactively extended the deadline for a supplemental questionnaire response that was filed 27 minutes late based, in part, on the fact that Commerce continued to have the opportunity to issue supplemental questionnaires. *Silicon Metal from Kazakhstan: Final Affirmative Countervailing Duty Determination*, 83 Fed. Reg. 9831 (March 8, 2018) and accompanying Issues and Decision Memorandum at n.64 (citing Memorandum to the File, Titanium Sponge from Kazakhstan: Acceptance of Petition Supplement (Sept. 13, 2017)).[31]

As demonstrated above, Commerce routinely grants parties an opportunity to submit (or resubmit) their filings even when they missed the initial deadline because of a minor mistake.  In recognition of the fact that errors can occur, Commerce has displayed flexibility by overlooking minor and inconsequential delays for diligent and cooperative respondents, enabling them to file their submissions.  However, in this case for the Antique Group, Commerce's application of 19

---

[30] *See* The Antique Group's Request for Reconsideration and Request for Extension (June 10, 2022) (PD 225).

[31] *See* The Antique Group's Amended Case Brief (Aug. 24, 2022) (PD 315).

C.F.R. § 351.302(c)(2) deviated from such practice.  As explained above, prior to the second

supplemental questionnaire deadline Commerce had never previously established a time deadline

for the Antique Group that was other than the normal 5:00 p.m. deadline, and the Antique Group

had no reason to expect that the deadline for its second supplemental questionnaire response

would be any different. As a respondent that monitored only its own responses in this

proceeding, the company did not understand that deadlines other than 5:00 p.m. were even

possible. Therefore, the Antique Group filed the responses by 5:00 p.m., and therefore believed

the filing to have been made in a timely manner. Commerce suggests that the Antique Group

should have submitted a timely request for an extension of time, but the Antique Group was

unaware of any need to file an extension request because it believed its response to have been

timely filed in the first place. *See* Final Results at 19.  As such, the Antique Group's missed

deadline is similar to the other missed deadline described above where Commerce has allowed

the parties to submit their responses past the deadline.[32] However, in the case of the Antique

Group, Commerce did not follow this approach, and rejected the supplemental response and

denied all requests to refile, thus leading to the application of AFA and a total AFA dumping

margin of 323.12 percent.

 In the Final Results, Commerce asserts that it applies the extraordinary circumstances

regulation "uniformly and even-handedly to all parties." *See* Final Results at 18. However, given

Commerce's past practice, Commerce did not treat the Antique Group even-handedly in this

case.  Commerce's denial of the Antique group's extension request was inconsistent with

Commerce's prior practice of granting similar requests from other parties, even when the delays

---

[32] *See* The Antique Group's Request for Reconsideration and Request for Extension (June 10, 2022) (PD 225).

were more substantial than those faced by the Antique Group.[33] By refusing to grant the Antique Group additional time to file its second supplemental questionnaire response, Commerce failed to provide the Antique Group with the same treatment afforded to parties in other similar cases. Commerce's inconsistent treatment of the Antique group in this case was a deviation from Commerce's established practice and thus arbitrary and unlawful.

### III.   Commerce's Application of AFA in this Proceeding Was Unsupported by Substantial Evidence

#### A.   Commerce Failed to Demonstrate that the Antique Group Did Not Cooperate to the Best of its Ability

Commerce's decision to assign total adverse facts available to the Antique Group was unsupported by substantial evidence because the record unequivocally demonstrates that, with the exception of a five-hour delay in submitting its second supplemental response, the Antique Group consistently exemplified the conduct expected of a respondent throughout the entirety of the administrative review.  The Antique Group took reasonable steps to keep and maintain full and complete records that Commerce called upon it to produce; the Antique Group had familiarity with the information within its possession so that it could respond to Commerce's second supplemental questionnaire (and all other questionnaires); and the Antique Group conducted a careful and comprehensive investigation of all of its records in the preparation and submission of its second supplemental questionnaire response and all other responses.  In the Final Results, Commerce provided the following rationale for the application of adverse facts available to the Antique Group:

> Commerce is applying facts available under section 776(a) of the Act because necessary information is not available on the record. Moreover, Commerce is

---

[33] *See* The Antique Group's Request for Reconsideration and Request for Extension (June 10, 2022) (PD 225)

applying an adverse inference under section 776(b) of the Act because Antique
Group did not cooperate to the *best of its ability*, as it was careless or inattentive
when reviewing the deadlines for its submissions.

Final Results on page 31.  Commerce's claim that the Antique Group did not participate to the

"best of its ability" therefore was based solely on the fact that the Antique Group was

"inattentive" when reviewing the deadline. *See* Final Results at 34. Commerce thus construed the

best of its ability standard to mean perfection.  But that is not the appropriate standard. In *Nippon*

*Steel Corp*, the court stated that "ability" goes to the "physical, mental, or legal power to

perform." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003) (*Nippon*

*Steel*). While the Court explained that the "best of its ability" standard "does not condone

inattentiveness, carelessness, or inadequate record keeping," such lapses referred to whether a

respondent had taken reasonable steps to keep and maintain records of information that

Commerce might need and that it might reasonably be called upon to produce, and not to filing

errors. *Id*. at 1382-83. To put it simply, the mere act of filing a late response does not imply that

the respondent did not do its best to cooperate because "mistakes sometimes occur," *see id.*, as

happened with the Antique Group's filing of its second supplemental questionnaire response.

In this case, it was unreasonable for the one deadline timing error by the Antique Group

to have resulted in a total adverse facts available decision. Throughout this case, the Antique

Group put forth a maximum effort to provide complete responses to all of Commerce's

requests.[34] Specifically, the Antique Group provided complete and timely responses to

Commerce's initial questionnaire response and first supplemental questionnaire response.

---

[34] *See* Antique Group's Section A Response (Nov. 3, 2021) (CD 21 to CD 35); Antique Group's
Sections B-D Response (Dec. 9, 2021) (CD 36 to CD 62); Antique Group's re-filed Section C
response (December 23, 2021) (CD 180 to 192); Antique Group's Responses to Commerce's
first supplemental questionnaire (Apr. 15, 2022) (CD 206 to 215).

Additionally, the Antique Group timely requested extensions for the submissions of its initial questionnaire response and first supplemental questionnaire response, ensuring adherence to the prescribed timelines. For the second supplemental questionnaire response, the Antique Group worked around the clock to respond to ensure that it provided Commerce with full and complete answers to all of Commerce's inquiries.[35] In a letter advocating for the acceptance of its second supplemental questionnaire response, the Antique Group outlined the extensive efforts exerted by the Antique Group in preparing its second supplemental questionnaire response:

> the entire team responsible for the filing this response at SBA traveled to the Antique Group's offices at Morbi (notwithstanding the ongoing challenges of the 8 hour travel due to Covid) and worked 12-14 hours each day (including weekends) to complete and compile responses.[36]

To be clear, the 19 U.S.C. § 1677e(b) does not by its terms establish a "willfulness" or "reasonable respondent" standard for determining whether a respondent has acted to the best of its ability; nor does it require findings of motivation or intent.  As the *Nippon Steel* Court put it, "there is no *mens rea* component to the section 1677e(b) inquiry."  337 F.3d at 1383.  Rather, the statute requires a factual assessment of the extent to which a respondent keeps and maintains reasonable records and the degree to which the respondent cooperates in investigating those records and in providing Commerce with the requested information.  *Id.*  In this case, the minor mistake that led to the second supplemental questionnaire response being filed five hours late does not reflect any lack of cooperation or the Antique Group not responding to the best of its abilities. This is not a case, as in *Nippon Steel*, where Commerce asked for information and the

---

[35] *See* Antique Group's second extension request for its second supplemental questionnaire response (May 7, 2022) (PD 200).

[36] *See* Antique Group Request to Re-file Second Supplemental Questionnaire Response (May 19, 2022) (PD 205).

respondent indicated the information was not necessary; and when Commerce asked again, the

respondent erroneously indicated that the information did not exist.  337 F.3d at 1383.  To the

contrary, the record demonstrates the Antique Group's diligent efforts to meet Commerce's

requests by providing all the required information in the supplemental questionnaire. Here, the

Antique Group was fully cooperative and put forth maximum effort in the administrative review

to provide Commerce with the information that Commerce requested. Because the Antique

Group participated to the best of its abilities throughout this administrative review, including the

submission of its second supplemental questionnaire response, Commerce's determination to

apply adverse facts available to the Antique Group was unsupported by the record of this case.

### B.  Commerce's Rejection of the Antique Group's Filing Led to Severe and Utterly Disproportionate Consequences and Punitive Results

Commerce's imposition of a 323.12 percent duty to the Antique Group also was

unreasonable because the assigned rate was not remedial in nature, and was unnecessarily

punitive. Commerce is legally obligated to effectuate the purpose of the antidumping statute,

which is to calculate antidumping duties "as accurately as possible." *Rhone Poulenc, Inc. v.

United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990). Any discretion exercised by Commerce to

impose and enforce time limits "is bounded at the outer limits by the obligation to carry out its

statutory duty of determining accurate duty margins." *Bebitz Flanges Works Private Ltd. v.

United States*, 433 F. Supp. 3d 1309, 1316 (Ct. Int'l Trade 2020) citing *NTN Bearing Corp. v.

United States*, 74 F.3d at 1208 (quoting Rhone Poulenc, 899 F.2d at 1191). Moreover, decisions

made by Commerce that give rise to inaccurate and punitive results point to an abuse of

discretion. *See Shelter Forest Int'l Acquisition, Inc. v. United States*, No. 19-00212, 2021 Ct.

Intl. Trade LEXIS 19, at *27 (Ct. Int'l Trade Feb. 18, 2021).

The imposition of a 323.12 percent duty rate to the Antique Group was disproportionate to the error in question, making it both inaccurate and punitive. This Court consistently has rejected the application of consequences that are grossly disproportionate to the mistake made by the parties involved. In *Artisan Mfg.*, Commerce rejected a filing and extension request filed less than 24 hours past the deadline, and in response to the untimely filing imposed an adverse rate on the respondent company that was likely twice what it would have otherwise imposed. 978 F. Supp. 2d at 1347. In that case, this Court considered all the circumstances surrounding the agency's decision to reject the company's late filing and concluded that Commerce had abused its discretion, in part because the consequence of the adverse rate that Commerce attached to the late filing was "particularly severe" and "grossly disproportionate" to the "relatively minor" mistake that was committed "innocently and inadvertently by plaintiffs' counsel" and that resulted in only a day-long delay of Commerce receiving the information contained in the late filing. Similarly, Commerce in this case assigned a grossly disproportionate 323.12 percent antidumping duty rate to the respondent for an inadvertent timing error. Thus, Commerce abused its discretion by applying a severe punishment to the Antique Group for a minor and inconsequential mistake.

In the Final Results, Commerce disregarded the Antique Group's arguments that the AFA rate it assigned to the Antique Group was punitive. Commerce claimed that the language in the Trade Preferences Extension Act (TPEA) allowed Commerce to select an AFA rate for the Antique Group that was not based on commercial reality, asserting that Commerce could choose any AFA rate as long as it was corroborated, and thus assigned the highest rate possible to the Antique Group. *See* Final Results on pages 40-41. While the TPEA does not require Commerce to consider commercial reality in selecting an AFA rate for a respondent, the TPEA does not

grant Commerce unlimited discretion to select AFA rates that are punitive and aberrational. *See Dates of Application of Amendments to the Antidumping and Countervailing Duty Laws Made by the Trade Preferences Extension Act of 2015*, 80 FR 46793 (August 8, 2015) (*TPEA*). The Federal Circuit has stated expressly that "the purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins." *F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (emphasis added); *Artisan Mfg. Corp. v. United States*, 38 Ct. Int'l Trade 682, 693, 978 F. Supp. 2d 1334, 1344 (2014). Here, Commerce's use of §1677e(b) was not rooted in an incentive towards cooperation. Rather, Commerce's assignment of the 323.12 percent antidumping rate was punitive in nature, targeting the respondent for a minor error in filing its response five hours after the deadline. Here, the error was not a failure to cooperate, nor could more cooperation have prevented the mistake upon which Commerce based its application of § 1677e(b). The five-hour delay in filing the second supplemental questionnaire response was a minor, isolated, and inadvertent mistake, and not based on any pattern of non-responsiveness. Because the Antique Group consistently displayed a high level of responsiveness, timeliness, and cooperation throughout the entirety of the administrative review, Commerce's decision to apply the highest possible rate to the Antique Group was punitive and should be reversed.

## IV. CONCLUSION

For the reasons stated above, Commerce's decisions to reject the Antique Group's second supplemental response and to deny its requests to refile the response were arbitrary and an abuse of discretion. Furthermore, Commerce's decision to assign the Antique Group a dumping rate based on total adverse facts available was unreasonable and unsupported by substantial evidence.

Respectfully submitted,

/s/ Aqmar Rahman
Robert G. Gosselink
Aqmar Rahman

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Consolidated Plaintiffs Antique
Marbonite Private Limited; Prism Johnson
Limited; and Shivam Enterprise

Dated:  June 30, 2023