# UNITED STATES COURT OF INTERNATIONAL TRADE
## NEW YORK, NEW YORK

<u>BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE</u>

CAMBRIA COMPANY LLC,

    Plaintiff,

    and

ANTIQUE MARBONITE PRIVATE LIMITED, SHIVAM
ENTERPRISES, PRISM JOHNSON LIMITED; ARIZONA
TILE, LLC; M S INTERNATIONAL, INC.; AND PNS
CLEARANCE LLC,

    Consolidated Plaintiffs,

    v.

UNITED STATES,

    Defendant,

    and

APB TRADING, LLC; COSMOS GRANITE
(WEST) LLC;COSMOS GRANITE (SOUTH
EAST) LLC; COSMOS GRANITE (SOUTH
WEST) LLC; CURAVA CORPORATION;
DIVYASHAKTI GRANITES LIMITED;
DIVYASHAKTI LIMITED; MARUDHAR ROCKS
INTERNATIONAL PVT LTD;
OVERSEASMANUFACTURING AND
SUPPLY INC. D/B/A MERRIMACK STONE
INDUSTRIES; QUARTZKRAFT LLP;
STRATUS SURFACES LLC;  FEDERATION OF INDIAN
QUARTZ  SURFACE INDUSTRY; ARIZONA TILE,
LLC; M S INTERNATIONAL, INC.; AND PNS
CLEARANCE LLC,

    Defendant-Intervenors.

Consol. Court No. 23-00007
**NON-CONFIDENTIAL VERSION**

**MOTION OF CONSOLIDATED PLAINTIFFS ARIZONA TILE, LLC,
M S INTERNATIONAL, INC., AND PNS CLEARANCE LLC
<u>FOR JUDGMENT ON THE AGENCY RECORD</u>**

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade, Consolidated Plaintiffs Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC (collectively, "Consolidated Plaintiffs") respectfully move this Court for Judgment on the Agency Record with respect to the Final Results of the U.S. Department of Commerce in the first administrative review of the antidumping duty ("AD") order on certain quartz surface products ("QSPs") from India, published as *Certain Quartz Surface Products From India*, 88 Fed. Reg. 1,188 (Dep't Commerce Jan. 9, 2023) (final results of AD administrative review; 2019–2021) ("*Final Results*"), and the accompanying Issues and Decision Memorandum.

For the reasons explained in their accompanying memorandum in support, Consolidated Plaintiffs respectfully request this Court to hold that the contested portions of the Final Results are not supported by substantial evidence, arbitrary and capricious, an abuse of discretion, and are not otherwise in accordance with law.

Consolidated Plaintiffs further ask this Court to remand this matter to the U.S. Department of Commerce for further disposition consistent with the order and opinion of this Court.

A proposed order is enclosed.

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel
Jared R. Wessel
Nicholas R. Sparks
Cayla D. Ebert

HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-6634
jonathan.stoel@hoganlovells.com

*Counsel to Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC*

Dated: June 30, 2023

## UNITED STATES COURT OF INTERNATIONAL TRADE
## NEW YORK

BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE

CAMBRIA COMPANY LLC,

    Plaintiff,

    and

ANTIQUE MARBONITE PRIVATE LIMITED,
SHIVAM ENTERPRISES, PRISM JOHNSON
LIMITED; ARIZONA TILE, LLC; M S
INTERNATIONAL, INC.; AND PNS
CLEARANCE LLC,

    Consolidated Plaintiffs,

    v.

UNITED STATES,

    Defendant,

    and

APB TRADING, LLC; COSMOS GRANITE
(WEST) LLC;COSMOS GRANITE (SOUTH
EAST) LLC; COSMOS GRANITE (SOUTH
WEST) LLC; CURAVA CORPORATION;
DIVYASHAKTI GRANITES LIMITED;
DIVYASHAKTI LIMITED; MARUDHAR ROCKS
INTERNATIONAL PVT LTD;
OVERSEASMANUFACTURING AND
SUPPLY INC. D/B/A MERRIMACK STONE
INDUSTRIES; QUARTZKRAFT LLP;
STRATUS SURFACES LLC;  FEDERATION OF
INDIAN QUARTZ  SURFACE INDUSTRY;
ARIZONA TILE, LLC; M S INTERNATIONAL,
INC.; AND PNS CLEARANCE LLC,

    Defendant-Intervenors.

Consol. Court No. 23-00007

**NON-CONFIDENTIAL
VERSION**
Business Proprietary Information
removed from pages 37 and 38

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RULE 56.2 MOTION FOR JUDGEMENT UPON AGENCY RECORD OF CONSOLIDATED PLAINTIFFS ARIZONA TILE, LLC, M S INTERNATIONAL, INC., AND PNS CLEARANCE LLC

Jonathan T. Stoel
Jared R. Wessel
Nicholas R. Sparks
Cayla D. Ebert

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
(202) 637-6634
jonathan.stoel@hoganlovells.com

*Counsel to Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC*

June 30, 2023

# TABLE OF CONTENTS

Page

ADMINISTRATIVE DETERMINATION SOUGHT TO BE REVIEWED.................................1

II.    ISSUES PRESENTED AND SUMMARY OF THE ARGUMENT..................................2

III.    STATEMENT OF FACTS ........................................................................................3

    A.    Antique Cooperated to the Best of Its Ability During the Administrative Review .4

        1.    Antique Fully and Timely Responded to Commerce's Initial Questionnaire and First Supplemental Questionnaire ............................................................4

        2.    Antique Inadvertently Filed Its Response to Commerce's Second Supplemental Questionnaire Five Hours After Commerce's Irregular 10 AM Deadline................................................................................................5

        3.    Antique Made Multiple Attempts to Correct the Record with Commerce and Re-Submit the Requested Information.........................................................7

        4.    Commerce Assigned a Punitive and Uncorroborated Rate to Antique......10

        5.    Commerce Failed to Apply the Correct Export Subsidy Offset to its Pulled Forward All-Others Rate............................................................................13

IV.    STANDARD OF REVIEW ....................................................................................14

V.    COMMERCE'S REJECTION OF ANTIQUE'S SUPPLEMENTAL QUESTIONNAIRE AND SUBSEQUENT AD RATE BASED ON AFA WAS CONTRARY TO LAW ......16

    A.    Commerce's Refusal to Accept Antique's Filing was Arbitrary and Capricious..18

        1.    Commerce's Refusal to Extend its Second-Chance Doctrine to Antique is not Supported by Substantial Evidence and is Otherwise Contrary to Law ........................................................................................................19

        2.    Commerce's Application of Its "Extraordinary Circumstances" Standard was Contrary to Law, an Abuse of Agency Discretion, and Unsupported by Substantial Evidence ................................................................................25

        3.    If Leave to File after Commerce's Deadline is Not Permitted under These Circumstances, then the Regulations are Contrary to Law and Constitute an Abuse of Discretion ...............................................................................31

    B.    The 323 Percent AFA Rate Applied to Antique Is Uncorroborated, Punitive, and Not Supported by Substantial Evidence .............................................................34

        1.    Commerce Failed to Meet its Statutory Obligation to Corroborate the Petition Rate............................................................................................36

VI.    COMMERCE ERRED WHEN IT FAILED TO PROPERLY APPLY THE EXPORT SUBSIDY OFFSET TO THE ALL-OTHERS RATE....................................................40

VII.    CONCLUSION.....................................................................................................45

# TABLE OF AUTHORITIES

**Cases**

*Allegheny Ludlum Corp. v. United States*,
   24 C.I.T. 452, 112 F.Supp.2d 1141 (2000) ............................................................... 16

*Artisan Manufacturing Corp. v. United States*,
   978 F.Supp.2d 1334 (Ct. Int'l Trade 2014) ............................................................ 33

*BlueScope Steel, v. United States*,
   548 F. Supp 1351 (Ct. Int'l Trade 2021) ................................................................ 35

*BMW of N. Am. LLC v. United States*,
   926 F.3d 1291 (Fed. Cir. 2019) ....................................................................... 38, 39

*Bosun Tools Co., Ltd. v. United States*,
   405 F.Supp.3d. 1359 (Ct. Int'l Trade 2019) .......................................................... 30

*Burlington Truck Lines, Inc. v. United States*,
   371 U.S. 156 (1962) ................................................................................................. 14

*Celik Halat Ve Tel Sanayi A.S. v. United States*,
   557 F.Supp.3d 1348 (Ct. Int'l Trade 2022) ........................................................... 39

*Changzhou Trina Solar Energy Co. v. United States*,
   975 F.3d 1318 (Fed. Cir. 2020) ....................................................................... 40, 41

*Chaparral Steel Co. v. United States*,
   901 F.2d 1097 (Fed. Cir. 1990) .............................................................................. 34

*Consol. Edison Co. v. N.L.R.B.*,
   305 U.S. 197 (1938) ................................................................................................. 14

*Daewoo Elecs. Co. v. Int'l Union of Elec., Tech., Salaried & Mach. Workers, AFL-CIO*,
   6 F.3d 1511 (Fed. Cir. 1993) .................................................................................. 14

*Davila-Bardales v. Immig. and Naturalization Service*,
   27 F.3d 1 (1st Cir. 1994) ......................................................................................... 16

*Essar Steel Ltd. v. United States*,
   678 F.3d 1268 (Fed. Cir. 2012) .............................................................................. 38

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*,
   216 F.3d 1027 (Fed. Cir. 2000) .............................................................................. 36

*Gallant Ocean (Thailand) Co. v. United States*,
    602 F.3d 1319 (Fed. Cir. 2010)............................................................. 14

*Grobest & I-Mei Industrial (Vietnam) Co. Ltd. v. United States*,
    36 C.I.T. 98, 815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) .................................. 15

*Hussey Copper, Ltd. v. United States*,
    834 F.Supp. 413 (1993) ...................................................................... 16

*In Re Fifra Section 3(C)(2)(B) Note of Intent to Suspend Dimethyl Tetrachloroterephthalate (DCPA) Tech.l Registration Amvac Chemical Corp.*,
    2023 WL 3033527 (EPA Office of the Administrator, Apr. 11, 2023) ................................. 32

*Leco Supply, Inc. v. United States*,
    619 F. Supp. 3d 1287 (Ct. Int'l Trade 2023) .......................................... 15

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)............................................................... 15, 30

*Nevro Corp. v. Boston Sci. Neuromodulation Corp.*,
    2020 WL 341724 (Patent Trial and Appeal Board, June 22, 2020) ...................................... 32

*Nippon Steel Corp. v. United States*,
    146 F.Supp.2d 835 (2001) ..................................................... 38

*NTN Bearing Corp. v. United States*,
    74 F.3d 1204 (Fed. Cir. 1995).......................................... 29, 34

*Oman Fasteners, LLC v. United States*,
    No. 22-00348, 2023 WL 2233642 (Ct. Int'l Trade 2023) .................................... 15, 20, 38, 39

*POSCO v. United States*,
    296 F. Supp. 3d 1320 (Ct. Int'l Trade 2018) ........................................ 38

*Pro-Team Coil Enterprise v. United States*,
    532 F.Supp.3d 1281 (Ct. Int'l Trade 2021) .......................................... 36

*Pro-Team Coil Nail Enterprise v. United States*,
    419 F. Supp.3d 1319 (Ct. Int'l Trade 2019) ........................................ 28, 29, 34, 38

*Rhone Poulenc, Inc. v. United States*,
    899 F.2d 1185 (Fed. Cir. 1990)............................................... 35

*Sec'y of Lab. v. Burlington Capital PM Grp., Inc.*,
    2020 WL 13610776 (Occupational Safety Health Review Commission, Dec. 31, 2020)...... 32

*SGL Carbon LLC v. United States*,
    36 C.I.T. 264, 275 (Ct. Int'l Trade 2012) .......................................... 44

*Ta Chen Stainless Steel Pipe, Ltd, v. United States,*
25 C.I.T 989 (Ct. Int'l Trade 2001) ........................................... 16

*Timken U.S. Corp. v. United States,*
434 F.3d 1345 (Fed Cir. 2006)................................................... 29

*Universal Camera Corp. v. NLRB,*
340 U.S. 474 (1951) ................................................................... 14

*Vierra v. Rubin,*
915 F.2d 1372 (10th Cir. 1990) .......................................... 31, 32

## Statutes

19 U.S.C § 1677m(e) .................................................................... 28

19 U.S.C. § 1516a(b)(1)(B)(i) ...................................................... 14

19 U.S.C. § 1675(a) ..................................................................... 14

19 U.S.C. § 1677a(c) ................................................ 3, 4, 13, 40

19 U.S.C. § 1677e ............................................................... 18, 35

19 U.S.C. § 1677e(a)(2) ....................................................... 17, 35

19 U.S.C. § 1677e(b) ........................................................... 18, 35

19 U.S.C. § 1677e(c) ................................................ 11, 18, 35, 36

5 U.S.C. § 706(2)(A).......................................................... passim

## Regulations

19 C.F.R. § 351.224(f) ......................................................... 42, 43

19 C.F.R. § 351.302(b) ............................................................... 16

19 C.F.R. § 351.302(c)(2).................................................... passim

19 C.F.R. § 351.303(b) ..................................................... 6, 21, 26

## Administrative Materials

*Certain Quartz Surface Products from India and Turkey*, 85 Fed. Reg. 37,422 (Dep't Commerce June 22, 2020) (antidumping duty orders)................................... 1, 4, 13, 43

*Fine Denier Polyester Staple Fiber from India*, 86 Fed. Reg. 62,786 (Dep't Commerce Nov. 12, 2021) (final results of antidumping duty administrative review; 2019-2020)........................ 41

*Organic Soybean Meal From India*, 87 Fed. Reg. 29,737 (Dep't Commerce May 16, 2022) (antidumping order order) ................................................................................................... 41

*Prestressed Concrete Steel Wire Strand From the Republic of Turkey*, 87 Fed. Reg. 68,679 (Dep't Commerce Nov. 16, 2022) (final results of antidumping duty administrative review; 2020-2022) ........................................................................................................................... 41

*Silicon Metal from the Republic of Kazakhstan*, 83 Fed. Reg. 9,831 (Dep't Commerce Mar. 8, 2018) (final affirmative countervailing duty determination), and accompanying Issues and Decision Memorandum ................................................................................................. 26, 27

*Stainless Steel Flanges From India*, 86 Fed. Reg. 47,619 (Dep't Commerce Aug. 26, 2021) (final results of antidumping duty administrative review; 2018–2019) .......................................... 41

**Other Authorities**

*SAA accompanying the Uruguay Round Agreements Act*, H.R. Doc. No. 103-316 (1994) ......... 36

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
RULE 56.2 MOTION FOR JUDGEMENT ON THE AGENCY RECORD OF
CONSOLIDATED PLAINTIFFS ARIZONA TILE, LLC, M S INTERNATIONAL, INC.,
AND PNS CLEARANCE LLC**

Consolidated Plaintiffs Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC (collectively, "Consolidated Plaintiffs") hereby submit the following Memorandum in support of their Motion for Judgment on the Agency Record in accordance with Rule 56.2(c) of the Rules of the United States Court of International Trade ("CIT" or "the Court"). For the reasons set forth below, Consolidated Plaintiffs respectfully request that this Court remand this matter to the U.S. Department of Commerce ("Commerce" or "the Department") for reconsideration and disposition consistent with the order and opinion of this Court.

## RULE 56.2 STATEMENT AND SUMMARY OF ARGUMENT

## I.      ADMINISTRATIVE DETERMINATION SOUGHT TO BE REVIEWED

Consolidated Plaintiffs contest certain aspects of the final results issued by the Department in its first administrative review of the antidumping duty order on certain quartz surface products ("QSPs") from India, Case No. A-533-889. The AD Order was published as *Certain Quartz Surface Products from India and Turkey*, 85 Fed. Reg. 37,422 (Dep't Commerce June 22, 2020) (antidumping duty orders) (the "AD Order"). Commerce's AD administrative review final results were published in the *Federal Register* on January 9, 2023. *Certain Quartz Surface Products From India*, 88 Fed. Reg. 1,188 (Dep't Commerce Jan. 9, 2023) (final results of antidumping duty administrative review; 2019–2021) ("*Final Results*") (P.R. 355). 1/

This appeal also contests certain aspects of the findings and conclusions set forth in Commerce's Issues and Decision Memorandum accompanying the *Final Results* and

---

1/      References to public and confidential documents in the administrative record for this appeal are identified as "P.R." and "C.R.," respectively.

Commerce's Response to Consolidated Plaintiffs' Ministerial Error Allegations. Memorandum from Scott Fullerton to Lisa W. Wang, *Certain Quartz Surface Products from India: Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review; 2019-2021* (Dec. 30, 2022) ("Final IDM") (P.R. 346); Memorandum from David Lindgren to Erin Benegal, *Allegation of Ministerial Error* (Jan. 24, 2023) ("Ministerial Error Memorandum") (P.R. 362). The period of review ("POR") was December 13, 2019 through May 31, 2021.

Consolidated Plaintiffs' timely filed their Summons and Complaint with this Court on January 31, 2023 and February 10, 2023, respectively. Summons, *Arizona Tile LLC et al v. United States*, Case No. 23-19, (Ct. Intl Trade Jan. 31, 2023) ECF 1; Complaint, *Arizona Tile LLC et al v. United States*, Case No. 23-19, (Ct. Intl Trade Feb. 10, 2023) ECF 12.

This Court subsequently consolidated Consolidated Plaintiffs' separate appeal with other related appeals filed by Cambria Company LLC, Antique Marbonite Private Limited et al., APB Trading LLC et al., and the Federation of Indian Quartz Surface Industry. Consol. Order, Mar. 17, 2023, ECF 40. Consolidated Plaintiffs' Motion for Judgment on the Agency Record and this Memorandum are timely filed in accordance with this Court's Scheduling Order dated April 20, 2023, ECF 46.

## II. ISSUES PRESENTED AND SUMMARY OF THE ARGUMENT

Consolidated Plaintiffs seek judgment on the agency record with respect to the following issues raised in their Complaint as set forth below.

1. **Commerce's refusal to accept the second supplemental questionnaire response of Antique Marbonite Pvt. Ltd. and its affiliates Shivam Enterprises, RMC Readymix Porselano (India) Limited, and Prism Johnson Limited (collectively, "Antique"), was arbitrary and capricious and contrary to law.**

a. Commerce's decision not to extend Antique an opportunity to submit the inadvertently late filing, through its "second-chance doctrine," was arbitrary and capricious or otherwise contrary to law.

b. Alternatively, Commerce's finding that no extraordinary circumstances existed to extend its deadline for Antique's second supplemental questionnaire was not supported by substantial evidence.

c. Alternatively, Commerce's regulations regarding its discretion to extend deadlines under 19 C.F.R. § 351.302 are arbitrary and capricious and therefore contrary to law.

2. In the alternative and if this Court upholds Commerce's refusal to accept Antique's filing, Commerce's application of adverse facts available and the resulting 323.12 percent AD rate was not properly corroborated – and thus was unlawfully punitive – and not supported by substantial evidence.

3. Commerce failed to apply properly the export subsidy offset to the all-others rate assigned to Indian exporters not selected for individual review.

## III. STATEMENT OF FACTS

Antique worked tirelessly throughout the proceeding to cooperate fully with Commerce and submitted thousands of pages of requested information. After an inadvertently missed deadline of its voluminous Second Supplemental Questionnaire Response ("Second SQR"), Commerce rejected Antique's filing. Despite numerous attempts to refile its submission per Commerce's extraordinary circumstances and second-chance doctrine under 19 C.F.R. § 351.302(c)(2), with the support of other parties, Commerce declined these requests. Subsequently, Commerce found that Antique did not cooperate to the best of its ability and applied adverse facts available ("AFA") to assign a punitive and uncorroborated AD rate of 323.12% to Antique.

Additionally, in pulling forward the "All-Others" rate from the AD original investigation for the Non-Selected companies, Commerce did not properly account for export subsidies as required by 19 U.S.C. § 1677a(c).

**A.** **Antique Cooperated to the Best of Its Ability During the Administrative Review**

Following the initial AD investigation in this case, on June 22, 2020, Commerce published the AD Order in the *Federal Register*. Commerce established AD deposit rates as follows: (a) 3.58% on imports of subject merchandise from Antique; (b) 0.33% on imports of subject merchandise from Pokarna Engineered Stone Limited ("Pokarna"); and (c) 1.02% on imports of subject merchandise from all-other companies ("All-Others") subject to the AD Order. The AD cash deposit rates were lower than the assigned AD margins (5.15%, 2.67%, and 3.19% for Antique, Pokarna, and All-Others, respectively) because Commerce needed to avoid the double-counting of export subsidies, as required by Congress in 19 U.S.C. § 1677a(c).

Commerce initiated its first administrative review of the AD Order as it pertains to India on August 3, 2021. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 41,821, 41,823 (Dep't Commerce Aug. 3, 2021) (P.R. 22). On September 28, 2021, Commerce selected Antique and Pokarna as mandatory respondents in the first administrative review. Memorandum from Charles Doss to Erin Bengal, *Respondent Selection* (Sept. 28, 2021) (P.R. 53; C.R. 13).

**1.** **Antique Fully and Timely Responded to Commerce's Initial Questionnaire and First Supplemental Questionnaire**

Antique timely filed its responses to Section A of Commerce's Initial Questionnaire on November 3, 2021, and Sections B, C, and D on December 9, 2021. *See* Response from SBA Strategy Consulting to Commerce, *Submission of Section-A Initial Questionnaire Response* (Nov. 3, 2021) (P.R. 79-81; C.R. 21-35); Response from SBA Strategy Consulting to Commerce, *Submission of Section-B Initial Questionnaire Response* (Dec. 9, 2021) (P.R. 95; C.R. 36-41); Response from SBA Strategy Consulting to Commerce, *Submission of Section-C Initial Questionnaire Response* (Dec. 9, 2021) (P.R. 96; C.R. 42-54); Response from SBA Strategy

Consulting to Commerce, *Submission of Section-D Initial Questionnaire Response* (Dec. 9, 2021) (P.R. 97; C.R. 55-62). Additionally, on April 15, 2022, Antique timely filed its response to Commerce's First Supplemental Questionnaire. Response from SBA Strategy Consulting to Commerce, *Certain Quartz Surface Products from India (A-533-889 AR1 Submission of response to First Supplemental Questionnaire (Section A and B)* (Apr. 15, 2022) (P.R. 189-192; C.R. 206-215).

### 2. Antique Inadvertently Filed Its Response to Commerce's Second Supplemental Questionnaire Five Hours After Commerce's Irregular 10 AM Deadline

On April 20, 2022, Commerce issued a Second Supplemental Questionnaire to Antique, setting a deadline of May 4, 2022 for the company to submit its response. Letter from Commerce to SBA Strategy Consulting, *Second Supplemental Questionnaire* (Apr. 20, 2022) (P.R. 197; C.R. 216). This Questionnaire includes **68 multi-part questions**, totaling more than 16 full pages in length. *Id.* Due to the extensive nature of the Questionnaire and the complexity of the questions, Antique requested a two-week extension of the deadline on April 30, 2022. Letter from SBA Strategy Consulting to Commerce, *Extension request to submit response to Second Supplemental Questionnaire (Section A, C and D)* (Apr. 30, 2022) (P.R. 198). On May 2, 2022, Commerce granted a partial extension to Antique, extending the deadline by one week to May 11, 2022. Letter from Commerce to SBA Strategy Consulting, *Extension request to submit response to Second Supplemental Questionnaire (Section A, C and D)* (May 2, 2022) (P.R. 199).

On May 7, 2022, Antique requested a further one-week extension to file its Second SQR. Letter from SBA Strategy Consulting to Commerce, *2nd extension request to submit response to Second Supplemental Questionnaire (Section A, C and D)* (May 7, 2022) (P.R. 200). On May 9, 2022, Commerce granted Antique's request, in part, providing an extension of five days until May 16, 2022. Letter from Commerce to SBA Strategy Consulting, *Second Extension of Time for*

*Antique Group's Second Supplemental Questionnaire Response* (May 9, 2022) (P.R. 201). In issuing this extension to Antique, Commerce departed from its usual practice of requiring submissions to be filed before 5:00 PM ET. This procedure is set forth in Commerce's own regulations at 19 C.F.R. § 351.303(b). Instead, Commerce set a case-specific deadline of 10:00 AM ET for Antique's Second Supplemental Questionnaire. *Id.* Commerce never provided an explanation for establishing this unusual deadline, which the agency concedes is "not utilized regularly." Final IDM at 17 (P.R. 346).

On Monday, May 16, 2022, Antique filed its Second SQR between 2:56 PM and 3:45 PM ET, well before the standard 5:00 PM ET deadline. Response from SBA Strategy Consulting to Commerce, *Certain Quartz surface products from India (A-533-889 AR1) Submission of Response to Second Supplemental Questionnaire (Section A, C, D)* (May 16, 2022) ("Antique's Second SQR") (P.R. 202; C.R. 217). In seeking to cooperate fully with Commerce, Antique's response was extensive—almost 90 pages long plus 87 exhibits, totaling thousands of pages. *Id.* As demonstrated by its sheer size, the response required "intensive data and information compilation," the "collection and the scrutinization and analysis of that data" relating to information across the entire Antique Group, which comprises four (4) geographically dispersed companies spread across India." Letter from SBA Strategy Consulting to Commerce, *Request for Opportunity to Refile Response to Second Supplemental Questionnaire (Section A, C and D)* (May 19, 2022) ("Antique's First Request to Refile") (P.R. 205). Antique did not seek a further extension of time to submit its Second SQR because Antique understood in good faith that the filing was timely made before Commerce's standard 5:00 PM ET deadline.

This substantial filing was submitted by Antique's consultants located on the other side of the world, in India, while overcoming the additional, unexpected challenge of a key executive's

COVID-19 diagnosis. 2/  Letter from SBA Consulting to Commerce, *Request for acceptance of 2nd Supplemental Questionnaire Response (Sec-ACD) post deadline* (May 24, 2022) ("Antique's Second Request to Refile") at 16–17 (P.R. 208; C.R. 218).  Antique's consultants were unaware of the possibility of a deadline outside of Commerce's standard 5:00 PM ET deadline set forth in the regulations.  In addition, the abnormal deadline would not have been facially apparent given the time difference between Washington, D.C. and India.  Brief from ArentFox Schiff to Commerce, *Certain Quartz Surface Products from India: Submission of Antique Group's Amended Case Brief* (Aug. 24, 2022) ("Antique Case Brief") (P.R. 315; C.R. 250).

On May 18, 2022, Commerce rejected Antique's Second SQR, claiming that it was untimely because Antique filed after the unusual 10 AM ET deadline (but before Commerce's standard 5 PM ET deadline).  Letter from Commerce to SBA Strategy Consulting, *Rejection of Second Supplemental Questionnaire Response* (May 18, 2022) ("Commerce's First Rejection Letter") (P.R. 203).

### 3. Antique Made Multiple Attempts to Correct the Record with Commerce and Re-Submit the Requested Information

The very next day, Antique submitted its first request for leave to refile its Second SQR. Antique's First Request to Refile (P.R. 205).  In its request, Antique apologized for its error and reiterated its commitment to cooperate fully with the Department.  Antique explained that there was a miscommunication between the paralegal team and its consultants.  As a result, the Lead Consultant believed in good faith that Commerce had extended its deadline until May 16, 2022, at the standard 5:00 PM ET deadline.  *Id.*  Antique further explained that the company and its

---

2/    Antique initially participated as *pro se* respondents in this proceeding with the assistance of only local economic consultants.

consultants had been working "around-the-clock" to meet Commerce's requests, as evidenced by its extension requests. *Id.* at 3.

Moreover, Antique's consultants implemented new procedures to ensure such a mistake would not happen again. *Id.* Antique further emphasized that the five-hour delay would not have impacted the Department's ability to meet its statutory obligations, or Petitioner's ability to comment on Antique's data and information. *Id.* at 3-4.

On May 20, 2022, Commerce rejected Antique's request. Letter from Commerce to SBA Strategy Consulting, *Certain Quartz Surface Products from India: Rejection of Second Supplemental Questionnaire Response* (May 20, 2022) ("Commerce's Second Rejection Letter") (P.R. 207). In so doing, the Department stated that Antique's "internal {mis}communication" did not constitute extraordinary circumstances to extend the deadline under 19 C.F.R. § 351.302(c)(2). *Id.* Further, Commerce stated:

> Untimely filings and untimely extension requests hinder the efficient and timely conduct of our proceedings and lead us to spend additional time and resources to address such untimely filings and requests. Additionally, although the burden associated with a single late filed questionnaire response may be perceived as minimal, that burden is not minimal when aggregated across all proceedings.

*Id.* at 2.

On May 24, 2022, Antique submitted its second request for Commerce to accept the response. Antique's Second Request to Refile (P.R. 208; C.R. 218). Antique explained that extraordinary circumstances did exist to justify Commerce's acceptance of the filing. In particular, Antique stated as follows: (1) on the same day Commerce granted the partial extension, Antique received news that one of its key executives responsible for preparing the accounting necessary to complete the Second SQR was diagnosed with COVID-19; (2) the unusual 10:00 AM ET deadline constituted "extraordinary circumstances" on its own; and (3) the executive and consultant teams

had travelled to Mumbai and were working around the clock to complete Commerce's requests. *Id.* In the following days, Consolidated Plaintiffs, Defendant-Intervenor the Federation of Quartz Surface Industry of India ("the Federation"), and the Government of India all submitted requests urging Commerce to reconsider its decision. Letter from the Government of India to Commerce, *Concerning administrative review of antidumping order on Certain Quartz surface products from India (A-533-889)- Government of India submission to allow an opportunity to refile the rejected submission of Antique Group* (May 25, 2022) (P.R. 210); Letter from Hogan Lovells to Commerce, *Letter in Support of Antique's Request for Acceptance of Its Second Supplemental Questionnaire Response* (May 26, 2022) (P.R. 211); Letter from Crowell & Moring to Commerce, *Request to Reconsider Rejection of Antique Group Questionnaire Response* (May 27, 2022) (P.R. 212). Antique also requested and participated in an ex-parte telephone conference with Commerce regarding these same issues on June 1, 2022. Memorandum from Peter Zukowski to the File, *Certain Quartz Surface Products from India: Ex-Parte Meeting* (June 1, 2022) (P.R. 214).

Again, Commerce rejected Antique's request. Letter from Commerce to SBA Strategy Consulting, *Denial of Second Request to Resubmit Supplemental Questionnaire Response* (June 3, 2022) (P.R. 216). Commerce stated that it disagreed with Antique that "the rationale laid out in its letter (or in any of the letters of support) support a conclusion that extraordinary circumstances were the cause of Antique not filing its second supplemental response in a timely manner." *Id.* at 2. Commerce also stated that it had set a 10:00 AM ET deadline in ten different instances so far in 2022, and claimed that such an unusual, infrequently employed deadline constituted a "practice." *Id.* at 3.

Recognizing the significance of the matter, Antique engaged new counsel at ArentFox Schiff LLP, who formally entered an appearance before Commerce on June 9, 2022. Entrance of

Appearance by ArentFox Schiff (June 9, 2022) (P.R. 224). On June 10, 2022, Antique submitted its third and final request for the Department to reconsider its rejection of the Second SQR. Letter from ArentFox Schiff to Commerce, *Request for Reconsideration and Request for Extension to File Out of Time* (June 10, 2022) (P.R. 225). In this request, Antique again explained that the late filing was the result of extraordinary circumstances due to the unanticipated 10:00 AM ET deadline. Antique stated that Commerce imposed a 10:00 AM ET deadline less than 0.4% of the time out of its 3,000 deadlines between January and May 2022, and that such an infrequently imposed deadline could not be considered an established practice. *Id.* at 3. Antique also asked Commerce to extend Antique treatment under its "second-chance" doctrine, given that Antique had cooperated fully throughout the proceeding and had agreed to change its practice and procedures so as to ensure that similar errors would not occur in the future. *Id.* at 4. Lastly, Antique explained that the Department had "good cause" to allow Antique to submit its Second SQR. *Id.* at 8. Commerce failed to acknowledge Antique's third and final request for reconsideration.

In sum, the undisputed record evidence shows that Antique was fully committed to cooperate with Commerce: (1) Antique responded timely to Commerce's other questionnaires; (2) Antique sought additional time in order to provide Commerce with the voluminous information requested in the Second Supplemental Questionnaire; (3) Antique filed its Second SQR hours before the normal 5:00 PM ET deadline; (4) Antique voluntarily changed its practice and procedures following the late filing; and (5) Antique made multiple attempts to remedy the misunderstanding caused by Commerce's establishment of a highly unusual deadline.

### 4. Commerce Assigned a Punitive and Uncorroborated Rate to Antique

On July 1, 2022, Commerce issued its preliminary results in the administrative review. Commerce again decided to reject Antique's Second SQR and assigned a punitive 323.12%

dumping margin to Antique on the basis of total AFA. *Certain Quartz Surface Products From India*, 87 Fed. Reg. 40,786 (Dep't Commerce July 8, 2022) (preliminary results of AD review and partial rescission of AD review; 2019-2021) ("*Preliminary Results*") (P.R. 248). Commerce also preliminarily assigned a dumping margin of zero to Pokarna. In addition, Commerce set a dumping margin of 161.56% for the Non-Selected Companies based on a simple average between the two rates assigned to the mandatory respondents. *Id.*

Commerce attempted to justify its decision as to Antique on the grounds that its Second SQR was untimely and "the respondent failed to notify Commerce that it was having difficulty providing the information or request an extension." Memorandum from Scot Fullerton to Ryan Majerus, *Decision Memorandum for the Preliminary Results and Partial Rescission of the Administrative Review of the Antidumping Duty Order on Certain Quartz Surface Products from India; 2019-2021* (June 30, 2022) ("Preliminary IDM") at 8 (P.R. 243). Without further explanation, Commerce found that Antique withheld information and "significantly impeded the proceeding." *Id.* Commerce acknowledged the numerous requests by respondent parties asking that the Second Supplemental Questionnaire be accepted for the record, but did not provide any further justification for its denial other than the fact that filing was made after the 10:00 AM deadline. Commerce went on to find that Antique did not act to the best of its ability and that AFA was justified. *Id.* at 8-9.

Commerce's selection of the AFA rate to Antique was based on the highest AD rate alleged in Cambria's petition. The governing statute requires Commerce to corroborate the petition rate. 19 U.S.C. § 1677e(c). Attempting to corroborate the 323.12% rate, Commerce reviewed the preliminary individual dumping margins for Pokarna. Commerce found Cambria's petition rate

to be "within the ranges of PESL's calculated individual dumping margins." *Id.* at 10-11. Commerce did not provide any further evidence of corroboration.

Antique, along with other interested parties, filed case briefs demonstrating several errors by Commerce. Respondent parties asserted that Commerce had erred in rejecting Antique's filing; that the statutory requirements to apply AFA were not met under the statute; and that the Department had failed to corroborate the AFA rate assigned to Antique. In particular, Consolidated Plaintiffs argued as follows: (1) accept Antique's Second SQR as warranted by the extraordinary circumstances it faced and the Department's "second-chance" doctrine; (2) (in the alternative) reject the petition rate of 323.12% as uncorroborated should the Department continue to erroneously apply AFA; and (3) establish the Non-Selected rate in the Final Results by "pulling-forward" the All-Others rate calculated in the original investigation rather than employing a simple average. Brief from Hogan Lovells to Commerce, *Case Brief of Arizona Tile, LLC, M S International, Inc., and PNS Clearance* LLC (Aug. 17, 2022) ("Consolidated Plaintiffs' Case Brief") (P.R. 306; C.R. 248).

On August 30, 2022, Commerce held a public hearing, in which Antique, Consolidated Plaintiffs, and other parties again requested that Commerce accept Antique's Second SQR and reconsider its application of AFA. Letter from Peter Zukowski to All Interested Parties, *Hearing in First Antidumping Duty Administrative Review of Quartz Surface Products from India* (Aug. 19, 2022) (P.R. 308). Further, on September 8, 2022, counsel for one of the Consolidated Plaintiffs, M S International, Inc., met with Department officials to discuss the arguments presented in its briefs and again requested that Commerce accept Antique's Second SQR. Memorandum from David Lindgren to the File, *Ex Parte Video Conference* (Sept. 8, 2022) (P.R. 327).

On January 3, 2023, Commerce issued its *Final Results*. (P.R. 355). Commerce made no changes to its *Preliminary Results* with respect to Antique's assigned rate. Commerce claims that its rejection of Antique's Second SQR is "warranted," and that it is "appropriate to apply facts available with an adverse inference" to Antique because "Antique Group failed to cooperate to the best of its ability." Final IDM at Cmts. 2–3 (P.R. 346). Commerce further stated that the Second Supplemental Questionnaire was Antique's additional opportunity to provide requested information, and that Commerce had no obligation to provide another opportunity. *Id.* Commerce also rejected parties' arguments that Commerce had sufficient information on the record to calculate Antique's dumping margin, stating that the deficiencies in Antique's data did not allow the Department to undertake an AD margin analysis. *Id.* Commerce rejected each of Antique's arguments and those of other parties. Commerce continued to assign a final dumping margin of 323.12% to Antique on the basis of total AFA. *Id.* Of note, the Department completely failed to address the Consolidated Plaintiffs' argument that the Department should have exercised its "second-chance" doctrine to accept Antique's late filing.

### 5. Commerce Failed to Apply the Correct Export Subsidy Offset to its Pulled Forward All-Others Rate

In its *Final Results*, Commerce correctly lowered the Non-Selected rate from the highly unreasonable 161.56% rate originally assigned, opting instead to "pull forward" the 3.19% All-Others rate calculated in the original investigation. *Final Results* (P.R. 355); Final IDM at Cmt. 5 (P.R. 346). Commerce failed, however, to apply the appropriate export subsidy offset required by the governing statute. In contravention of the statute, Commerce pulled forward an AD rate that was unequivocally not adjusted to take into account export subsidies. 19 U.S.C. § 1677a(c); *see* AD Order.

On January 9, 2023, Consolidated Plaintiffs filed Ministerial Error Comments to notify Commerce of this plain omission. Letter from Hogan Lovells to Commerce, *Ministerial Error Comments on Final Results and Comments on Draft Customs Instructions of Arizona Tile, LLC; M S International, Inc.; and PNS Clearance LLC* (Jan. 9 , 2023) (P.R. 354) ("HL Ministerial Error Comments"). On January 24, 2023, Commerce issued a memorandum declining to take the export subsidy adjustment into account solely on the grounds that it was not a ministerial error. Ministerial Error Memorandum (P.R. 362).

## IV. STANDARD OF REVIEW

The governing statute provides that this Court reviews final determinations issued by Commerce in AD administrative reviews pursuant to 19 U.S.C. § 1675(a) to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), and "is more than a mere scintilla." *Id.* (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). A court "reviews the record as a whole, including any evidence that fairly detracts from the substantiality of the evidence," *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (internal quotation marks and citation omitted). The CIT determines "whether the evidence and reasonable inferences from the record support {the agency's} finding." *Daewoo Elecs. Co. v. Int'l Union of Elec., Tech., Salaried & Mach. Workers, AFL-CIO*, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (internal quotation marks and citation omitted). Commerce must provide a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). The agency must also "examine the relevant

data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983).

In addition, Commerce's exercise of discretion is subject to the default standard of the Administrative Procedure Act ("APA"). The APA instructs a reviewing court to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642, at *4 (Ct. Int'l Trade 2023) (citing 5 U.S.C. § 706(2)(A)).

Commerce has discretion to promulgate regulations to implement its authority under the antidumping laws. Notwithstanding, Commerce may not impose inherently unreasonable and arbitrary standards in its regulations. Under Section 706 of the APA, an agency's action in promulgating standards may be set aside if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The Court's repeated emphasis that "{i}t is well established that the purpose of the antidumping . . . duty statute is remedial, not punitive," *Leco Supply, Inc. v. United States*, 619 F. Supp. 3d 1287, 1308 n.22 (Ct. Int'l Trade 2023), has guided the CIT's considerations of whether Commerce has abused its discretion. *See, e.g.*, *Grobest & I-Mei Industrial (Vietnam) Co. Ltd. v. United States*, 36 C.I.T. 98, 123, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012) ("when considering whether Commerce's {determination} amounts to an abuse of discretion, the court is guided first by the remedial, and not punitive, purpose of the antidumping statute and the statute's goal of determining margins 'as accurately as possible.") (internal citations omitted).

Lastly, it is well-established law that once an agency establishes a practice, any departure from that practice without "a reasoned analysis for the change" is unlawful. *Motor Vehicles Mfrs. Ass'n*, 463 U.S. at 42; *see also Hussey Copper, Ltd. v. United States*, 834 F.Supp. 413, 418–19

(1993) (holding that "an agency must either conform itself to its prior decisions or explain the reasons for its departure."); *Allegheny Ludlum Corp. v. United States*, 24 C.I.T. 452, 458, 112 F.Supp.2d 1141, 1147-48 (2000). The CIT has held "{i}f an administrative agency decides to depart significantly from its own precedent, ***it must confront the issue squarely and explain why the departure is reasonable***." *Ta Chen Stainless Steel Pipe, Ltd, v. United States*, 25 C.I.T 989 (Ct. Int'l Trade 2001) (quoting *Davila-Bardales v. Immig. and Naturalization Service*, 27 F.3d 1, 5 (1st Cir. 1994)) (emphasis added). Moreover, the CIT has rejected explanations by Commerce "where such rationale, rather than acknowledging the policy change, attempts to argue that it is consistent with past practice." *Ta Chen Stainless Steel Pipe,* 25 C.I.T 989.

## V. COMMERCE'S REJECTION OF ANTIQUE'S SUPPLEMENTAL QUESTIONNAIRE AND APPLICATION OF AFA WAS CONTRARY TO LAW

For the reasons set forth below, Commerce's decision to apply AFA to Antique is not supported by substantial evidence and is otherwise contrary to law. The pertinent regulation, 19 C.F.R. § 351.302(b), provides that "unless expressly precluded by statute, the Secretary may, for good cause, extend any time limit established by {the regulations}." Commerce has enumerated multiple examples under which good cause exists to grant an extension of time, including when extraordinary circumstances are present, and yet the agency failed to apply them properly here. Commerce's refusal to accept Antique's late filing, caused by an unusual deadline and an inadvertent procedural error, was unlawful and arbitrary and capricious.

First, Commerce's practice is to provide parties with a second chance to refile inadvertently late-submitted filings when those parties have fully complied and met Commerce's deadlines up to that point in a proceeding. Without explanation, Commerce failed here to use its "second-chance" doctrine to allow Antique to re-file its late submission. This alone warrants a remand to the agency.

Second, Commerce has found extraordinary circumstances and allowed leave to re-file a late submission in several similar cases, but did not do so here. "Extraordinary circumstances" are defined by the regulations as "an unexpected event that (1) could not have been prevented if reasonable measures had been taken, and (2) precludes a party or its representative from timely filing an extension request through all reasonable means." 19 C.F.R. § 351.302(c)(2). Commerce failed to consider properly the combination of factors constituting extraordinary circumstances that existed for Antique, including: (1) Commerce's establishment of an irregular 10:00 AM ET deadline; (2) one of Antique's executive team member's had contracted COVID-19 and was required to isolate; and (3) the executive and consultant teams were required to travel 11+ hour to Mumbai despite COVID-19 restrictions to complete Commerce's requests. Commerce's disparate treatment of Antique is arbitrary and capricious.

Third, to the extent that the application of 19 C.F.R. § 351.302(c)(2) (either through the second-chance doctrine or more generally as an extraordinary situation) does not permit an extension of time based on the facts in this proceeding, then the regulation is contrary to law.

Finally, assuming *arguendo* that Commerce correctly rejected Antique's filing, the governing statute, 19 U.S.C. § 1677e(a)(2), provides that Commerce may use "facts otherwise available" only when an interested party "fails to provide such information by the deadlines for submission of the information or in the form and manner requested." Further, "{i}f the administering authority { } finds that an interested party has failed to cooperate by not acting to the best of its ability. . . . the administering authority . . . may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." *Id.* § 1677e(b). But, such discretion cannot cross the bounds of two well-established principles – (1) Commerce must

calculate dumping margins as accurately as possible, and (2) the antidumping laws are remedial, not punitive. Commerce crossed these bounds in its selection of the petition rate as AFA.

In order to determine an accurate AD margin, Commerce was required to corroborate its AFA rate applied to Antique's exports under 19 U.S.C. § 1677e(c). Commerce's attempt to corroborate the assigned AFA rate is inaccurate and not supported by substantial evidence. Moreover, a 315%+ difference between the rate assigned in the investigation and the rate assigned to Antique is punitive on its face. Even if Commerce were permitted to apply AFA to Antique under 19 U.S.C. § 1677e – and it was not so authorized – such punitive action is an abuse of Commerce's discretion.

In sum, Commerce's refusal to allow a re-filing by Antique under 19 C.F.R. § 351.302(c)(2) is inconsistent with agency practice and contrary to law. Moreover, Commerce's subsequent application of AFA resulting in an overly punitive and uncorroborated AD rate of 323.12% is unsupported by substantial evidence and arbitrary and capricious. Commerce's determination must be set aside by this Court under 5 U.S.C. § 706(2)(A).

### A. Commerce's Refusal to Accept Antique's Filing was Arbitrary and Capricious

As detailed above, despite Antique's good faith and full cooperation throughout the proceeding, Commerce rejected Antique's submission of its Second SQR because it was filed merely a few hours after Commerce's irregular 10:00 AM ET deadline. Commerce's practice is to provide parties with a second chance to refile inadvertently late-submitted filings. Commerce failed to follow its practice here and thus did not treat Antique fairly and reasonably. The facts of this case compel application of Commerce's second-chance doctrine because Antique had not previously missed a deadline and, after failing to meet Commerce's unusual 10 AM ET deadline, voluntarily agreed to implement policies to ensure its inadvertent error did not occur again.

Commerce's rejection of Antique's submission is not supported by substantial evidence and is contrary to law.

Commerce also declined to find that extraordinary circumstances warranted leave to refile Antique's late submission. This finding is inconsistent with its practice and its treatment of other parties in other proceedings. As such, Commerce's action is arbitrary and capricious under 19 C.F.R. § 351.302(c)(2).

Lastly, if Commerce's regulations and application of those regulations in practice allow for (1) the denial of a filing made in good faith only five hours after an irregular deadline established by Commerce in a particular proceeding, but well before Commerce's standard deadline, and (2) that denial is employed by Commerce to apply AFA punitively, with the attendant application of a 323.12% dumping margin, Commerce's regulations are *per se* are arbitrary and capricious and should be set aside by this Court under 5 U.S.C. § 706(2)(A).

### 1. Commerce's Refusal to Extend its Second-Chance Doctrine to Antique is not Supported by Substantial Evidence and is Otherwise Contrary to Law

As detailed above, Antique believed in good faith that it had timely submitted its voluminous and multi-part Second SQR in accordance with Commerce's standard 5:00 PM ET filing deadline. Specifically, Antique submission was made between 2:56 PM and 3:45 PM ET on May 16, 2023. After Antique discovered its inadvertent error, Antique made multiple attempts to refile. In departing from agency practice, Commerce rejected Antique's attempts to cooperate fully with the agency and act in good-faith to provide Commerce the extensive requested information. Under its "second-chance" doctrine, Commerce allows firms a one-time opportunity to resubmit a late filing in AD/CVD proceedings, and yet. Commerce failed to provide this opportunity to Antique.

In *Certain Corrosion-Resistant Steel Products from the Republic of Korea*, Commerce explained the second-chance doctrine "allows a law firm a second opportunity to submit the untimely information only if that law firm has: 1) not previously been afforded such an opportunity in a past segment of any proceeding; and 2) identified the steps it has taken to avoid untimely filings in the future." Letter from Commerce to Arnold & Porter Kaye Scholer LLP, *Anti-dumping Duty Administrative Review of Certain Corrosion-Resistant Steel Products from the Republic of Korea*, Case No. A-580-878 (2016–17 Review) (Aug. 3, 2018) at 2–3.

In *Oman Fasteners*, the Court explicitly recognized and discussed Commerce's second-chance doctrine. The Court stated: "the Commerce Department imposed a duty rate of 154.33 percent on Oman Fasteners, LLC . . . solely for missing a filing deadline by 16 minutes." *Oman Fasteners*, 2023 WL 2233642 at *1. The Court granted judgment on the agency record because "Commerce's challenged actions here are the very definition of abuse of discretion." *Id.* at *2.

The Court held that "there is no dispute that Oman's counsel is eligible for leniency" under Commerce's second-chance "practice." *Id.* at *6. In explaining its reasoning, the CIT found that

> Commerce's response disregards its own prior statements and therefore constitutes an abuse of discretion (at best) or arbitrary and capricious action (at worst). The Department said, *five times*, that it has a "practice" of allowing a law firm one tardy filing—a "one-bite rule," as it were. This court will hold Commerce to its stated practice.

*Id.* (internal citations omitted) (emphasis added).

Here, Commerce similarly disregarded its prior statements and practice of leniency afforded to parties committing a mistake for the first time—indeed, Commerce failed entirely to address this argument in its *Final Results*. Antique clearly intended to meet Commerce's deadline and actually filed its Second SQR well before the standard 5:00 PM ET deadline set forth in

Commerce's regulations. 19 C.F.R. § 351.303(b). Further, Commerce does not contest that Antique had not previously been extended this "second-chance" opportunity, or that Antique's consultants subsequently implemented procedures for correcting the source of the inadvertent error. 3/ As such, the specific facts of this case require the exercise of the Department's "second-chance" doctrine, whereby Antique should have been permitted its one opportunity to refile a late submission.

The acceptance of Antique's Second SQR is also consistent with the Department's practice in other cases where the Department has accepted out of time submissions following counsel's implementation of procedures to prevent missed deadlines going forward. For example, in *Carbon and Certain Alloy Steel Wire Rod from the United Kingdom*, a company missed a 10:00 AM ET deadline, and the Department permitted the refiling of its questionnaire response. Letter from ArentFox Schiff to Commerce, *Certain Quartz Surface Products From India: Request For Reconsideration and Request for Extension to File Out of Time* (June 10, 2022) ("Antique's June 10 Request to Refile") (P.R. 226) (citing Letter from Commerce to Steptoe & Johnson, *Less-than-Fair-Value Investigation on Carbon and Alloy Steel Wire Rod from the United Kingdom*, Case No.

---

3/ Anticipating the applicability of a second-chance opportunity, thereby acknowledging Commerce's practice to allow parties to "submit information after unintentionally missing a deadline," Cambria argued before the agency that such opportunity is only allowed once. Letter from Schagrin Associates to Commerce, *Petitioner's Comments on Antique's Request to Refile* (May 20, 2022) (P.R. 206). Cambria argued that Commerce had already provided Antique other opportunities to refile certain portions of its questionnaire responses. But, those arguments are misleading and factually inaccurate. Commerce did request that Antique refile certain portions of its questionnaire responses, but because of bracketing issues, not "an unintentionally missed deadline" under the second-chance doctrine. *See* Memorandum to the File from Kyle Clahane, *Reject and Retain* (Dec. 22, 2021) ("Commerce December 22 Letter") (P.R. 136); Memorandum from David Lindgren to the File, *Rejection and Removal of Submissions* (Apr. 14, 2022) ("Commerce April 14 Letter") (P.R. 188). Commerce had not previously extended Antique the benefit of its second-chance doctrine, and therefore should have, per its own practice, allowed Antique to refile its Second SQR.

A-412-826 (Investigation) (Jul. 10, 2017)). 4/ Following the proffer of counsel to deploy new procedures to prevent future missed deadlines, the Department exercised its discretion and allowed the respondent to refile its response out of time in that case. This is precisely the same issue and deadline at play here.

Similarly, in *Welded Line Pipe from Turkey*, the Department reconsidered its decision to reject a supplemental questionnaire response filed after the deadline because counsel had inadvertently entered the wrong calendar date. Antique's June 10 Request to Refile (P.R. 226) (citing Letter from Commerce to Law Offices of David L. Simon, *Countervailing Duty Investigation of Welded Line Pipe from the Republic of Turkey*, Case No. C-489-823 (Investigation) (Feb. 23, 2015)). After Counsel subsequently assured the Department they would "make every effort to stop and recheck deadlines when entering them on {their} calendar and to recheck them again throughout the process of working on the submissions," Commerce accepted the filing. *Id.*

Moreover, in *Cold-Rolled Steel Products from Korea*, Commerce allowed a respondent to refile its supplemental questionnaire response after it inadvertently missed the Department's noon deadline established by a partial granting of respondent's request for extension of time. Memorandum to the File from Robert M. James, *Antidumping Duty Investigations of Cold-Rolled Steel Products from Korea: Ex Parte Meeting*, Case No. A-580-881(Investigation) (Jan. 11, 2016) ("Cold-Rolled Ex Parte Meeting"). In that case, Commerce required respondent's counsel to submit a letter – (1) confirming that counsel understood the Department's filing requirements, and (2) detailing the steps counsel would take to ensure that all future submissions are filed timely. *Id.*

---

4/ Consolidated Plaintiffs are providing all of the administrative materials from these other cases in **Appendix A**.

Counsel filed the requested letter and explained that the company was participating in multiple other Commerce proceedings and was burdened with other filings on or around the same time as the missed deadline, and that the questionnaires were issued during the holiday period. Letter from Arnold & Porter to Commerce, *Certain Cold-Rolled Steel Flat Products from Korea: Additional Information Concerning Extension Request for Supplemental Section D Questionnaire Response*, Case No. A-580-881 (Investigation) (Jan. 8, 2016). Commerce subsequently allowed the respondent an opportunity to refile its submission. Cold-Rolled Ex Parte Meeting. *See also* Letter from Commerce to Akin Gump Strauss Hauer & Feld, *Narrow Woven Ribbons with Woven Selvedge from Taiwan: 2013-2014 Antidumping Duty Administrative Review*, Case No. A-583-844 (13–14 Review) (Feb. 27, 2015) (granting respondent's request for retroactive extension of deadline to submit Section D questionnaire response because counsel inadvertently left off Section D in its request for extension of time after counsel implemented new procedures to prevent missed deadlines and explained the delay).

The factual circumstances described in the examples above are strikingly similar to those presented to this Court. Antique provided detailed explanations for its human error and made clear that the company and its consultants had implemented remedial procedures to ensure that this mistake was not made again. Such procedures included entering the time of the deadline issued by Commerce in its calendar, and rechecking deadlines one working day before any submission. Antique's First Request to Refile (P.R. 205). Yet, with no explanation given, Commerce deemed Antique ineligible to receive the benefit of the second-chance doctrine under the same circumstances.

Remarkably, and showing that Commerce continues to extend lenience to certain parties in its proceedings, Commerce just recently accepted a filing made by a petitioner after the standard

5:00 PM ET deadline, after the submitter requested an extension at exactly 5:00 PM ET. Memorandum from Chris Hargett to the File, *2021-2022 Administrative Review of Large Diameter Welded Pipe from Greece: Accepting CV Profit and Expense Information and Extending Deadline for Rebuttal Comments*, Case No. A-484-803 (2021-22 Review) (June 21, 2023). Specifically, the agency stated: "Commerce is accepting the {filing}, because the document was filed three minutes after the 5:00 PM ET deadline." *Id.* Commerce provided no other explanation for why this submission was accepted after the deadline. In any event, Commerce's action is plainly inconsistent with its rejection of Antique's Second SQR, which was only filed late due to the Department's establishment of an irregular 10:00 AM deadline. Commerce is thus applying its second-chance practice in an arbitrary and capricious manner that is inherently unlawful.

Ironically, even Commerce itself has made inadvertent calendaring errors relating to extension requests, and this Court has granted leniency. In *Clearon Corp. v. United States*, Commerce, in a situation eerily similar to the present, failed to file its remand results with the Court by its deadline of December 5, 2014. Pl's Motion for Relief, *Clearon Corp.*, CIT Ct. No. 13-73, ECF 64. Plaintiff subsequently filed a motion requesting the court to remand the case to Commerce again and grant the judgment it sought in the AD proceeding. *Id.* Commerce filed a response apologizing for the "inadvertent error," as it believed the Court had granted its extension request in full (i.e., until December 22, 2014), when the Court only partially granted the request, setting the deadline for December 5, 2014. Def.'s Consolidated Response to the Motion for Relief and Motion for Leave, *Clearon Corp.*, CIT Ct. No. 13-73, ECF 65. Commerce claimed to the Court that the agency had never "erroneously calendared" a deadline before and had acted in good faith, and thus that the CIT should allow the Department to file the remand results seven days out of time. *Id.* The CIT granted the requested relief, but also observed "Commerce's past, some

might argue draconian, inflexibility with regard to administrative deadlines set for parties to administrative proceedings." Order, *Clearon Corp.*, CIT Ct. No. 13-73, ECF 68.

Commerce cannot have its cake and eat it too. The Department must provide respondents the ability to correct inadvertent errors and enforce its deadlines with some reasonableness and understanding of human error, given it has sought the same treatment from this Court.

For the reasons stated herein, this Court should find that Commerce's rejection of Antique's Second SQR is not supported by substantial evidence on the record, and is otherwise contrary to law.

> **2.      Commerce's Application of Its "Extraordinary Circumstances" Standard was Contrary to Law, an Abuse of Agency Discretion, and Unsupported by Substantial Evidence**

As discussed above, pursuant to 19 C.F.R. § 351.302(c)(2), Commerce may consider an untimely filed extension request when a party demonstrates that an extraordinary circumstance exists. Commerce's application of its standard to justify the rejection of Antique's Second SQR was not supported by substantial evidence because Antique faced extraordinary circumstances warranting a retroactive extension of the deadline.

Commerce failed to consider properly the combination of factors leading to the extraordinary circumstances that existed for Antique. First, the abnormal 10:00 AM ET deadline is extraordinary. Second, an Antique team member integral to completing the response contracted COVID-19 and was required to isolate. Third, the executive and consultant teams had to travel 11+ hours to Mumbai (during COVID-19 restrictions) and work around the clock to complete Commerce's requests.

Antique faced an unfamiliar 10:00 AM ET deadline that Commerce itself admits is "not utilized regularly." Final IDM at 17.

As evidence that it was not unreasonable for Antique to default to the 5:00 PM deadline, Hogan Lovells' International Trade practice, which was not involved in Antique's late filing, changed our internal practice to ensure that all deadlines for DOC filings specify the time of filing when entered into our calendar system. Letter from Hogan Lovells to Commerce, *Letter in Support of Antique's Request for Acceptance of Its Second Supplemental Questionnaire Response* (May 26, 2022) at 4 (P.R. 211).

Further, Commerce's finding that Antique "did not attempt to get a further extension after Commerce set the deadline and before the deadline had passed" is intellectually dishonest. Final IDM at 18. Antique was working towards what it reasonably, but incorrectly, believed was a timely submission, and thus could not reasonably have been expected to seek an extension since it did not believe one was needed. Because of Antique's inadvertent misunderstanding, it was precluded from timely filing an extension request through all reasonable means. Indeed, Commerce's own regulations set forth at 19 C.F.R. § 351.303(b) support Antique's reasonable belief that the Department's practice was to accept electronic submissions as long as they were filed "by 5 p.m. Eastern Time on the due date." These factors, taken together, created "extraordinary circumstances" that could not have been prevented by Antique.

The facts in this case are similar to several proceedings where the Department has found extraordinary circumstances and exercised its discretion to allow a late filing (beyond application of the second-chance doctrine discussed above). For instance, in *Titanium Sponge from Kazakhstan,* the Department retroactively extended the deadline for a supplemental questionnaire response that was filed 27 minutes late. *See Silicon Metal from the Republic of Kazakhstan*, 83 Fed. Reg. 9,831 (Dep't Commerce Mar. 8, 2018) (final affirmative countervailing duty determination), and accompanying Issues and Decision Memorandum at Cmt 1 (discussing

Commerce's acceptance of a petition supplement filed 27 minutes late) (citing Memorandum from Commerce to the File, *Titanium Sponge from Kazakhstan, Acceptance of Petition Supplement*, Case No. C-834-810 (Investigation) (Sept. 13, 2017)). Commerce continued to have ample time in that proceeding to issue supplemental questionnaires, which was one of the reasons the Department accepted the late filing. *Id.* The same was true here.

In *Polyethylene Terephthalate Film, Sheet and Strip from Brazil*, Commerce granted a retroactive extension for comments on remand when the agency had sufficient time to review parties' comments before the final remand was due to the CIT. Letter from Commerce to Wilmer Cutler Pickering Hale and Dorr, *Polyethylene Terephthalate Film, Sheet and Strip from Brazil; Remand Redetermination of Scope Review of Terphane, Inc. and Terphane, Ltda.'s "Copolymer Surface Films"*, Case No. A-351-841 (Remand) (Oct 5, 2017). In this case, respondent's lead counsel missed the ACCESS notification of draft remand results due to an emergency medical situation, and thus subsequently missed the comment deadline. *Id.* Commerce found extraordinary circumstances existed and granted leniency to the respondent once Commerce determined there was sufficient time to review and consider the filing. *Id.*; *see also* Letter from Commerce to Sidley Austin, *2013 Administrative Review of the Countervailing Duty Order on Aluminum Extrusions from the People's Republic of China: Extension of Time to Provide a Response to the Department's Quantity and Value Questionnaire*, Case No. C-570-968 (2013 Review) (Sept. 22, 2014) (finding extraordinary circumstances existed because an attorney experienced medical issues and was unable to delegate responsibility to another attorney). Here, one of Antique's team member's had contracted COVID-19 and was required to isolate, yet Commerce claimed that other team members could have assisted with the filing as supporting a

finding of no extraordinary circumstances. In sum, Commerce has unlawfully applied this test inconsistently. 5/

Moreover, the CIT has rejected Commerce's refusal to accept late filings when it would not interfere with conducting its proceedings and would produce punitive results. In *Pro-Team Coil Nail Enterprise v. United States*, 419 F. Supp.3d 1319 (Ct. Int'l Trade 2019), the CIT found Commerce's disregard of respondent's data submitted ***seven days*** after the deadline and application of total AFA to be unsupported by substantial evidence, arbitrary and capricious, and an abuse of discretion. The respondent had inadvertently omitted a revised version of its quantity and value schedule in a supplemental questionnaire response and subsequently attempted to file it after the deadline. Commerce rejected the late filing. *Id.* at 1323. The CIT stated "Commerce's reliance on the untimeliness of {respondent's} filing to disregard the information contained therein was an abuse of discretion and the agency's finding that {respondent} failed to act to the best of its ability lacks substantial evidence." *Id.* at 1331. Notably, the CIT distinguished, on the one hand, Commerce's disregard of respondent's data for untimeliness in regard to a deadline set by the Department, from, on the other hand, Commerce's rejection of respondent's data for containing untimely filed factual information pursuant to the regulatory deadlines. *Id. at* 1331-32 (citing 19 U.S.C § 1677m(e)(3), (5)). The CIT also stated that "it is well-settled that a deadline-setting regulation that is 'not required by statute may, in appropriate circumstances, be waived *and must*

---

5/      In *Carbon and Certain Alloy Steel Wire Rod from Mexico*, Commerce even found extraordinary circumstances existed when respondent experienced printer difficulties. Letter from Wiley Rein to Commerce, *Carbon and Certain Alloy Steel Wire Rod from Mexico: Extension Request for New Factual Information in Response to Deacero's Supplemental Section D and E Questionnaire Responses*, Case No. A-201-830 (2015-16 Review) (Aug. 25, 2017); Letter from Commerce to Wiley Rein, *2015-2016 Administrative Review of the Antidumping Duty Order on Carbon and Certain Alloy Steel Wire Rod from Mexico: Request for Extension for Deadline to Submit Comments for Deacero's Section D and E Supplemental Questionnaire* Responses, Case No. A-201-830 (2015-16 Review) (Aug. 25, 2017).

*be waived where failure to do so would amount to an abuse of discretion*.' " *Id.* at 1331 (citing *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207 (Fed. Cir. 1995)) (emphasis added).

The CIT likened the inadvertent mistake to a clerical error and held that "Commerce is free to correct ***any*** type of {respondent} error—clerical, methodology, substantive, or one in judgment—in the context of making an antidumping duty determination," if the respondent seeks correction the final results and "adequately proves the need for the requested corrections." *Id.* at 1332 (citing *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed Cir. 2006)) (emphasis added).

This Court should reject Commerce's refusal to accept Antique's Second SQR for the same reasons – plus, here Antique missed Commerce's deadline by only a few hours. First, the missed deadline at issue in this case was not a factual information deadline set by the regulations, rather an abnormal and arbitrary 10:00 AM deadline set by Commerce. Second, the finality was not an issue in *Pro-Team Coil* because the mistake was made in the preliminary stage, months before Commerce issued its final results. *Pro-Team Coil*, 419 F.Supp.3d at 1331. Here, the inadvertent late filing was over a month before the preliminary results deadline, and almost seven months before the *Final Results*. Therefore, "any burden would appear to be minimal." *Id.* at 1332. As noted above, Commerce has failed to demonstrate why it did not have sufficient time to review and respond as necessary to Antique's Second SQR. The agency has not demonstrated specific harm from the alleged loss of those five hours. Commerce never claimed that its officials even attempted to access, much less review, Antique's materials between 10:01 AM ET and 5:00 PM ET. Third, Commerce determined that the information provided in the Second SQR was critical for its *Final Results*—accordingly, its acceptance could only increase the accuracy of the outcome.

Antique provided the requested information to address any concerns Commerce had identified in its previous submissions. As in *Pro-Team Coil*, Antique's filing was of additional, corrective information. Commerce's review and incorporation of such data in the *Final Results* would not have created an undue burden. In fact, the CIT has held that "invocation of a general prejudice stemming from late submissions and the potential effect that cumulative late filings across all proceedings may have on Commerce's ability to administer its caseload {} do not constitute a reasonable explanation." *Bosun Tools Co., Ltd. v. United States*, 405 F.Supp.3d. 1359, 1365-66 (Ct. Int'l Trade 2019); *but see* Final IDM at 20 (P.R. 346) ("Although the burden associated with a single late-filed questionnaire response may be perceived as minimal, that burden is not minimal when aggregated across all proceedings.").

Additionally, Commerce's use of the data would have resulted in a much more accurate margin than the wildly punitive and arbitrary 300%+ rate assigned to Antique. There is also no record evidence of bad faith by Antique or an indication that it stood to benefit from its lack of cooperation – and the outcome makes clear it did not benefit from its alleged lack of cooperation.

The Supreme Court has held that when an agency departs from its prior practice without sufficient explanation, it amounts to an abuse of discretion. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, 56. Moreover, the inconsistent application of an agency's standards is arbitrary and capricious and contrary to law. 5 U.S.C. § 706(2)(A). Here, Commerce failed to articulate sufficiently why it has departed from its practice of finding that these types of circumstances constitute extraordinary circumstances. Further, Commerce has applied its extraordinary circumstances test inconsistently across different proceedings, resulting in an action that is arbitrary and capricious. Commerce has therefore acted unlawfully in applying 19 C.F.R. § 351.302(c)(2), requiring a remand for the agency to accept and consider Antique's Second SQR.

### 3. If Leave to File after Commerce's Deadline is Not Permitted under These Circumstances, then the Regulations are Contrary to Law and Constitute an Abuse of Discretion

Assuming, *arguendo*, that the application of Commerce's regulation, 19 C.F.R. § 351.302(c)(2), does not warrant leave for Antique to refile, then the regulation is contrary to law and constitutes an abuse of discretion. Specifically, if Commerce is not permitted to rectify inadvertent errors like Antique's, then the system Commerce has established is inherently at odds with the governing statute's remedial mandate. Commerce suggests that "strict enforcement of time limits and other requirements is neither arbitrary nor an abuse of discretion," Final IDM at 19 (P.R. 346), but such enforcement efforts may produce an impermissibly punitive system. That line has been crossed in this proceeding.

By way of analogy, the U.S. Court of Appeals for the Tenth Circuit struck down regulations promulgated under the Secretary of Health and Human Services ("HHS") specifying the nature of "good cause" in the context of a late filing. *Vierra v. Rubin*, 915 F.2d 1372, 1375-76 (10th Cir. 1990). In that case, HHS's regulations recognized only two narrow exceptions from late-filing penalties, and the agency rejected a program recipient's one-day-late filing of a required document and subsequently denied her benefits. *Id.* The appellate court held the agency's narrow definition of "good cause" to excuse late filings and its application of the rule "fail{ed} to consider the consistency and reasonableness" of the regulation in relation to the statute's purpose of equitability and exceeded the Secretary's authority to formulate the definition. *Id.* at 1380. The appellate court further found that Congress enacted penalties for late filings to decrease erroneous welfare payments, but explicitly provided for the good cause exemption "to provide a shield for innocent late filers." *Id.* at 1378. The Court held that the "restrictive" definition (1) "undercuts" the program's goals, (2) "deprive{s} the application of any realistic opportunity to present her case for good cause as required by the regulation," and (3) "conflicts with federal regulations which

provide that eligibility conditions may not be imposed arbitrarily or unreasonably." *Id.* at 1378-80.

Other federal agencies and administrative law judges have agreed that a certain degree of leniency should be afforded for human error and unforeseen circumstances. *E.g.*, *Nevro Corp. v. Boston Sci. Neuromodulation Corp.,* 2020 WL 341724 (Patent Trial and Appeal Board, June 22, 2020) (administrative patent judges deemed timely a patent owner's filing submitted after the deadline due to unexpected technical difficulties); *In Re Fifra Section 3(C)(2)(B) Note of Intent to Suspend Dimethyl Tetrachloroterephthalate (DCPA) Tech.l Registration Amvac Chemical Corp.*, 2023 WL 3033527 (EPA Office of the Administrator, Apr. 11, 2023) (administrative law judge allowed a late filing due to "counsel's inadvertent error" causing a 15-minute delay which had no meaningful impact on the proceedings); *Sec'y of Lab. v. Burlington Capital PM Grp., Inc.*, 2020 WL 13610776 (Occupational Safety Health Review Commission, Dec. 31, 2020) (reversing decision by administrative law judge to deny acceptance of late filing due to inadvertent mailing the document to the wrong location).

The Mt. Everest-like "emergency circumstances" Commerce has created under 19 C.F.R. § 351.302(c)(2) are overly restrictive, deprive respondents of the opportunity to correct an inadvertent human error made in good faith, and are contrary to the statute's underlying goal of remediation (rather than punishment). Rather, the regulation and Commerce's application of it are thus arbitrary and unreasonable.

Commerce attempts to justify the impermissibly severe system it has created by making far-fetched claims such as "*any time"* a submission is untimely, the agency's job is made that "much more difficult." Final IDM at 20 (P.R. 346) (emphasis added). Commerce asserts that a

delay of roughly 5 hours in receiving a supplemental questionnaire significantly impeded the underlying administrative review, yet failed to demonstrate such harm.

Moreover, even if Commerce had, in fact, sought to access the materials precisely at 10:01 AM ET, Antique's untimely submission could not have reasonably led to a meaningful delay.  In an analogous case, *Artisan Manufacturing Corp. v. United States* ("*Artisan*"), the CIT held that Commerce's insistence on the need to complete the investigation by the statutory deadline was insufficient justification to reject a late Quality & Value filing.  The court observed that the delay of "{s}uch a brief period" – between the 5:00 PM close of business on the due date the beginning of the next business day – "*could not have delayed the investigation in any meaningful way.  Nor is it apparent from the record how acceptance of the filing could have interfered in any other way with the Department's ability to conduct the investigation*."  978 F. Supp. 2d 1334, 1345 (Ct. Int'l Trade 2014)  (emphasis added).  Here, there was no statutory deadline at issue since the *Preliminary Results* were still well over a month away, and the delay caused was only a few hours and within the same business day.

In Commerce's Second Rejection Letter, the Department conceded:  "Although the burden associated with a single late filed questionnaire response *may be perceived as minimal*, that burden is not minimal *when aggregated across all proceedings*.  Accordingly, for the efficient conduct of Commerce's proceedings, it is critical that parties adhere to the deadlines established by Commerce."  Commerce's Second Rejection Letter at 2 (P.R. 207).  Commerce may not punish a proceeding participant, here Antique, solely in order to send a warning to future proceeding participants.  This is inherent in the fundamental principle that the AD law is intended to be remedial, not punitive.  *E.g.*, *Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103–04 (Fed.

Cir. 1990) ("the remedial purpose of duties . . . are intended merely to prevent future harm to the *domestic industry* . . . ." (emphasis added)).

Moreover, as this Court has recognized: "It is well-settled that a deadline-setting regulation that '*is not required by statute* may, in appropriate circumstances, be waived and *must be waived where failure to do so would amount to an abuse of discretion.*' " *Pro-Team Coil*, 419 F. Supp. 3d at 1332 (quoting *NTN Bearing Corp*, 74 F.3d at 1207) (emphasis added). Commerce's promulgation of its regulations, which only allows for leniency in the narrowest of circumstances, is unsupported by substantial evidence and an abuse of discretion.

This abuse of discretion is further shown in how Commerce treats human error *within* filings. In the underlying administrative review, Commerce requested certain parties fix bracketing of confidential information and resubmit filings. *E.g.*, Commerce December 22 Letter (P.R. 136); Commerce April 14 Letter (P.R. 188). Commerce also permitted Antique to fix certain inconsistencies between the BPI and Public versions of its Section C and Section D questionnaire responses. Letter from Commerce to SBA Strategy Consulting, *Public Versions of Section C and D Initial Questionnaire Responses* (Apr. 14, 2022) (P.R 187). Commerce thus permitted the correction of certain inadvertent errors relating to its confidential and public filings, but then refused to permit a filing made five hours after an unusual deadline. These facts demonstrate the arbitrary nature of Commerce's regulations.

For these reasons, Commerce's regulations constitute an abuse of discretion and its determination must be remanded to correct the inconsistent imposition of an impossible standard.

**B.      The 323 Percent AFA Rate Applied to Antique Is Uncorroborated, Punitive, and Not Supported by Substantial Evidence**

If this Court finds that Commerce was correct in its rejection of Antique's filing, Commerce's application of AFA in this proceeding is still not supported by substantial evidence.

The governing statute, 19 U.S.C. § 1677e(a)(2), provides that Commerce may use "facts otherwise available" when an interested party "fails to provide such information by the deadlines for submission of the information or in the form and manner requested."  Further, "{i}f the administering authority { } finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority { }, the administering authority . . . may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." *Id.* § 1677e(b).

Commerce's ability to apply AFA is nonetheless constrained, however, because "at all times, the overriding purpose of the statute is to determine an accurate antidumping margin for a respondent when one is warranted." *BlueScope Steel*, *v. United States*, 548 F. Supp 1351, 1358 (Ct. Int'l Trade 2021).  Put another way, Commerce must calculate dumping margins as accurately as possible. *E.g.*, *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990).

Consistent with the need for accuracy, Commerce is statutorily required to corroborate its AFA rate under 19 U.S.C. § 1677e(c).  That provision states that Commerce "shall, to the extent practicable, corroborate that information from independent sources that are reasonably at their disposal."  Commerce's attempted corroboration with respect to the AFA rate applied to Antique, is inaccurate and not supported by substantial evidence.

Moreover, the 315%+ difference between the rate assigned in the investigation and the rate assigned here in the first administrative review as a result of AFA is punitive on its face.  Even if AFA were allowed under 19 U.S.C. § 1677e, such punitive action is an abuse of discretion.

Commerce's application of AFA resulting in an overly punitive and uncorroborated AD rate of 323.12% is arbitrary and capricious, unsupported by substantial evidence, and an abuse of discretion, and must be set aside by this Court under 5 U.S.C. § 706(2)(A).

### 1. Commerce Failed to Meet its Statutory Obligation to Corroborate the Petition Rate

Commerce applied a 323.12 % rate, the highest AD rate alleged in Cambria's petition, as AFA. Commerce found this rate was justified based on its finding that Antique failed to cooperate to the best of its ability, and corroborated this rate by merely stating that it "fell within the range of PESL's individually calculated margins." Final IDM at 42 (P.R. 346). Commerce failed, however, to cite any specific information on which it based this corroboration or explain how falling within the range corroborated the petition rate. Furthermore, Commerce ignored completely its underlying goal of calculating a fair and accurate dumping margin for Antique. This approach led to a punitive and unreasonable rate, uncorroborated by the data on the record.

Under 19 U.S.C. § 1677e(c), the Department has a statutory obligation to "corroborate" any selected AFA rates "from independent sources that are reasonably at {its} disposal." The Federal Circuit has further emphasized that the purpose of this requirement is "to prevent the petition rate (or other adverse inference rate), when unreasonable, from prevailing and to block any temptation by Commerce to overreach reality in seeking to maximize deterrence." *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000). The CIT has held that "corroborating information means determining that the information has probative value." *Pro-Team Coil Enterprise v. United States*, 532 F.Supp.3d 1281, 1287 (Ct. Int'l Trade 2021) (citing *SAA accompanying the Uruguay Round Agreements Act*, H.R. Doc. No. 103-316 (1994)).

The *Final Results* merely state that such a rate fell within the calculated individual rates set forth in the Petition for the other mandatory respondent (Pokarna). Final IDM at 42 (P.R. 346). However, the record evidence does not demonstrate that the margins at the high-end of Pokarna's data had probative value, as required by the SAA. Rather, those high-level margins – i.e., the

margins above 323.12% used for corroboration – were [



]. Consolidated Plaintiffs' Case Br. at 16–17 (P.R. 306; C.R. 248). 6/ Thus, while the Department asserted that it found the rate of 323.12% to be within the range of Pokarna's calculated individual dumping margins, the Department's selected range is insufficient for the purposes of corroboration because it bears no relationship to the actual products sold by Antique – i.e., [            ].

Pokarna's product code (or "CONNUMU")-specific margins show that the range of individual margins the Department used to corroborate Antique's AFA rate represents [

]. That is, they are transactions not representative of Antique's sales of quartz slab. Consolidated Plaintiff's Case Br. at Exhibit 1 (P.R. 306; C.R. 248). QSP suppliers and/or distributors frequently provide [



].

In many ways [

] as a result. The provision of [            ] bears no probative relationship to the provision of quartz slabs. Moreover, the quantity of these transactions is so small ([

]), that their consideration by Commerce only results in a skewed calculation.

Specifically, the range in question (i.e., sales with margins in the triple digits that are alleged to corroborate the triple digit Petition rate) is exclusively comprised of Pokarna's [

---

6/      *See* **Exhibit 1** (Pokarna's BPI).

]. In fact, as indicated in Exhibit 1 of Consolidated Plaintiff's Brief, all of the transaction-specific margins and CONNUMU-specific margins above [

] merchandise. These margins account for less than [

]. *Id.* Such outlier transactions, which have no bearing on Pokarna's actual [

], do not have probative value, and therefore cannot be the basis of Commerce's corroboration.

The fact that Commerce failed to corroborate the AFA rate confirms that Commerce's intent was punitive, not remedial, and that Commerce did not calculate a rate as accurately as possible. Commerce's AFA authority is "to provide respondents with an incentive to cooperate with Commerce's investigation, not to impose punitive damages." *Id.* (quoting *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012)) (internal quotation removed). The CIT has contrasted the use of AFA and a punitive rate by stating "that the facts merited the use of an adverse inference does not necessarily mean that those same facts merited selection of the highest rate." *POSCO v. United States*, 296 F. Supp. 3d 1320, 1349 (Ct. Int'l Trade 2018). The CIT has also made clear that the result of AFA must "reflect the seriousness of the non-cooperating party's misconduct." *Oman Fasteners*, 2023 WL 2233642 at *8 (citing *BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1301 (Fed. Cir. 2019)). Further, the CIT has held that "Commerce must devise a non-arbitrary way of distinguishing among errors that merit an adverse inference and errors that do not." *Pro-Team Coil Nail Enterprise*, 419 F.Supp.3d at 1333 (citing *Nippon Steel Corp. v. United States*, 146 F.Supp2d 835, 841 n.10 (2001)) (internal quotation removed).

The record evidence does not justify Commerce's selection of the highest rate possible as AFA. Antique received the same AFA rate reserved for companies who are caught materially lying to the Department. Antique was a willing participant in this review (as well as the original

investigation) and submitted thousands of pages to the Department in an effort to obtain a reasonably calculated AD rate based on its data, not AFA.

Once again, Commerce's actions in this case mirror those in *Oman Fasteners* and, once again, warrant a remand. In that case, the CIT held that even if Commerce did not err by applying AFA, it abused its discretion by selecting the highest rate possible and imposing a "draconian sanction" on the respondent. *Oman Fasteners* at *8. In *Oman Fasteners*, the rejected punitive rate was 150%+, which was more than the highest rate respondent had received in previous segments. *Id.* The CIT rejected an outcome where Commerce's explanation amounted to the following: "We choose this as the adverse rate because its crushing." *Id.*; *see also BMW of N. Am.*, 926 F.3d at 1301 (rejecting Commerce's "discretion" to deter non-compliance and outcomes that result in 120%+ ranges in rates); *Celik Halat Ve Tel Sanayi A.S. v. United States*, 557 F.Supp.3d 1348, 1380-81 (Ct. Int'l Trade 2022) (rejecting Commerce's application of AFA and imposition of a "draconian sanction for what essentially was a minor and technical violation that had no discernible effect on the investigation").

Here, Antique received a 3.58% rate in the AD original investigation, but Commerce assigned it a 323.12% rate in its administrative review as a result of AFA – more than a 315% swing from the only other rate received by the company. Commerce has not provided any rational explanation for why a five-hour delay mandated such an extreme outcome or why Antique deserved to be treated in the same manner as if it had fabricated evidence to the Department. Nor has it properly corroborated this rate as statutorily required. As a consequence, Commerce's application of AFA to Antique is contrary to law, an abuse of discretion, and not supported by substantial evidence. This Court should remand Commerce's determination for further consideration.

## VI.    COMMERCE ERRED WHEN IT FAILED TO PROPERLY APPLY THE EXPORT SUBSIDY OFFSET TO THE ALL-OTHERS RATE

In addition to errors with the application of AFA to Antique, the Court should remand this case to Commerce to correct the *Final Results* by adjusting the cash deposit and assessment rates assigned to the Non-Selected Companies by the export subsidy offset rate of 2.17% calculated in the original investigation. Specifically, the cash deposit and assessment rates for the Non-Selected Companies should be revised downward from 3.19% to 1.02%, which reflects the rate the Department should have pulled-forward from the original investigation to serve as the rate in this review. Commerce failed entirely in this proceeding to explain its omission of an export subsidy adjustment and instead mysteriously faulted Consolidated Plaintiffs for not anticipating such an outcome contrary to the pertinent statute in advance of the *Final Results*. Commerce's failure to apply an export subsidy offset is contrary to its statutory mandate and constitutes a ministerial error as it is an erroneous transcription of the original investigation rate, which Commerce stated to be its intention in establishing the Non-Selected Company rate.

Congress was unequivocal in its instruction for Commerce to take export subsidies into account in assessing export price. The Tariff Act of 1930, as amended, directs that "{t}he price used to establish export price and constructed export price *shall* be increased by . . .  the amount of any countervailing duty imposed on the subject merchandise . . . to offset an export subsidy." 19 U.S.C. § 1677a(c) (emphasis added). The Federal Circuit has emphasized that the statute's use of "shall" here is intentional and "generally creates 'an *obligation* impervious to judicial discretion.' " *Changzhou Trina Solar Energy Co. v. United States,* 975 F.3d 1318, 1328 (Fed. Cir. 2020) (emphasis added) (citation omitted). Furthermore, the Federal Circuit has explained: "Where . . . merchandise is subject to both antidumping and countervailing duties during the period of review, Commerce 'shall,' when calculating a respondent's antidumping duty

rate, 'increase{ }' the respondent's 'export price' or 'constructed export price' by 'the amount of any countervailing duty imposed ... to offset an export subsidy{.}' " *Id.*

Consistent with direction from Congress and the courts, Commerce's practice is to recognize this statutory mandate in setting cash deposit requirements for Non-Selected Companies whose merchandise is subject to AD and countervailing duty ("CVD") orders and offset the amount of the export subsidy in the AD calculation:

- In its AD investigation of *Organic Soybean Meal from India* the Department found an "All-Others" estimated weighted average dumping margin of 3.07% but an adjusted cash deposit rate of 0.00% to account for the export subsidy offset. *Organic Soybean Meal From India*, 87 Fed. Reg. 29,737 (Dep't Commerce May 16, 2022) (antidumping order order).

- In the 2018-2019 administrative review of the AD order on *Stainless Steel Flanges from India*, Commerce adjusted the cash deposit rate for companies not individually examined to account for export subsidies, publishing a dumping margin of 145.25% but a cash deposit rate of 140.38% for these companies. *Stainless Steel Flanges From India*, 86 Fed. Reg. 47,619 (Dep't Commerce Aug. 26, 2021) (final results of antidumping duty administrative review; 2018–2019).

- In the final results of the 2019-2020 administrative review of *Fine Denier Polyester Staple Fiber from India*, Commerce assessed a dumping rate of 21.43 but instructed CBP to collect a cash deposit rate of 19.33%. Commerce explained it subtracted the 2.10% export subsidy rate from the most recent segment of the companion CVD proceeding. *Fine Denier Polyester Staple Fiber from India*, 86 Fed. Reg. 62,786, 62,787 (Dep't Commerce Nov. 12, 2021) (final results of antidumping duty administrative review; 2019-2020).

- In the final results of the 2020-2022 administrative review of the AD order on Prestressed Concrete Steel Wire Strand from Turkey, Commerce explained that, in order to calculate the cash deposit requirement it subtracted 0.49% export subsidy rate from the most recent segment of the companion CVD proceeding, from the dumping margin. *Prestressed Concrete Steel Wire Strand From the Republic of Turkey*, 87 Fed. Reg. 68,679, 68,680 (Dep't Commerce Nov. 16, 2022) (final results of antidumping duty administrative review; 2020-2022).

In contrast to the statute and its past practice, Commerce pulled forward a rate in this proceeding that contained unaccounted for export subsidies in the margin. Commerce then refused

to explain this deviation.  It simply stated the parties should have raised the issue in their case briefs – which were obviously submitted well before the *Final Results*.  Ministerial Error Memo at 4 (P.R. 362).  Commerce's assertion was particularly surprising because, the *Preliminary Results* suggested that Commerce would follow, not disregard, its practice: "The cash deposit rate for all other producers or exporters will continue to be the all-others rate of 1.02 percent, the rate established in the investigation of this proceeding, ***as adjusted for subsidy offsets***."  *Preliminary Results* (P.R. 248) (emphasis added).  Commerce's refusal to make a subsidy offset adjustment, combined with its failure recognize this ministerial error, is not supported by substantial evidence and is contrary to law.

Shortly after Commerce issued the *Final Results*, Consolidated Plaintiffs timely explained that the omission of the export subsidy offset from the cash deposit and assessment rates is "a clerical error" and thus a "ministerial error," as defined in 19 C.F.R. § 351.224(f), thereby requiring correction in an amended final results and CBP instructions.  Consolidated Plaintiffs' Ministerial Error Comments at 2-3 (P.R. 354).  Simply put, the All-Others rate from the original investigation was not properly copied and duplicated into the Final Results because the AD rate assigned to the Non-Selected Companies did not include the export subsidy offset from the original investigation.

This omission constituted a ministerial error because in its *Final Results*, Commerce explained that it *intended* to apply the rate established in the original investigation. Final IDM at 55 (P.R. 346) ("{W}e find that the most reasonable approach in assigning a rate to the non-selected companies . . . is to pull forward the all-others rate calculated in the underlying investigation.").  Commerce thus found that the appropriate cash deposit and assessment rate should remain unchanged from the original AD investigation.  That rate was a margin of 3.19%, inclusive of

2.17% from an export subsidy.  AD Order.  Accordingly, the cash deposit and assessment rate that should have been "pulled forward" to the current review is 1.02%.

Notwithstanding this stated intention, the actual cash deposit and assessment rates assigned to the Non-Selected Companies in both the *Final Results* and the customs instructions are more than three times higher than the cash deposit rate imposed in the underlying investigation. Memorandum from Charles Doss to the File, *Final Draft U.S. Customs and Border Protection Cash Deposit and Liquidation Instructions* (Jan. 5, 2023) (P.R. 349; C.R. 261); Customs Message 3012404, *Cash Deposit Instructions for Certain Quartz Surface Products from India (A-533-889)* (Feb. 12, 2023) (P.R. 366).  Neither the *Final Results* nor the Final IDM indicate that Commerce intended this outcome or otherwise concluded that the statutorily mandated export subsidy adjustment is inapplicable.

In response to Consolidated Plaintiffs' comments, Commerce simply asserts that the alleged error was not a ministerial error.  Ministerial Error Memo at 4 (P.R. 362).  Commerce claims to have made a "methodological selection of the 3.19 percent dumping margin calculated for all other companies in the investigation."  *Id.*  Commerce further claims not to have made "statements of intent to adjust for export subsidies or to rely upon a cash deposit rate as the rate that would be assigned to the non-selected companies."  *Id.*

Commerce's stated intention to pull forward the same rate as the investigation inherently and statutorily requires application of the subsidy offset to accurately calculate the overall rate for the Non-Selected Companies.  19 U.S.C. § 1677a.  Such application of the subsidy offset is indeed an "arithmetic function" apparent from its name—"offset."  Commerce thus committed a ministerial error under 19 C.F.R. § 351.224(f)—it failed to ***subtract*** the 2.17% export subsidy from the 3.19% rate assigned to Non-Selected Companies.  This omission was an "oversight" because

it deviated from Commerce's stated intention of pulling forward the investigation rate. *SGL Carbon LLC v. United States*, 36 C.I.T. 264, 275 (Ct. Int'l Trade 2012) (describing ministerial errors as, for example, oversights by the agency).

Even if this Court does not consider Commerce's error to have been "ministerial," however, Commerce's failure to correct the rate Non-Selected Companies rate to account for export subsidies is not supported by substantial evidence and contrary to law. Commerce is required by both the governing statute and its own practice to make an export subsidy adjustment. It failed to do so in the *Final Results* without "a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 30. Accordingly, this Court should remand to Commerce to correct its error and implement an export subsidy offset of 2.17% for the Non-Selected Companies in this review.

## VII. CONCLUSION

For the forgoing reasons, Consolidated Plaintiffs respectfully request that this Court grant its Motion for Judgment on the Agency Record and remand the *Final Results* to Commerce, with instructions to (1) recalculate Antique's AD margin, and (2) correct its ministerial error with respect to the Non-Selected companies in its instructions to Customs consistent with the arguments set forth above.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel
Jared R. Wessel
Nicholas R. Sparks
Cayla D. Ebert


HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
Phone: +1.202.637.5600
Fax: +1.202.637.5910
E-mail: jonathan.stoel@hoganlovells.com

*Counsel to Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC*

</div>

Dated: June 30, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Standard Chambers Procedure section 2(B)(1), the undersigned counsel at Hogan Lovells US LLP hereby certifies that this Reply Brief complies with the word-count limitation requirement. This Reply Brief contains 13,528 words as computed by Hogan Lovells US LLP's word processing system (Microsoft Word 2010).

Respectfully submitted,

/s/ Jonathan T. Stoel

Jonathan T. Stoel
Jared R. Wessel
Nicholas R. Sparks
Cayla D. Ebert

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
(202) 637-6634
jonathan.stoel@hoganlovells.com

*Counsel to Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC*

June 30, 2023

**Appendix A**

| Doc. No. | Department of Commerce File Referenced (In Order of Appearance) |
|----------|------------------------------------------------------------------|
| A | Letter from the U.S. Department of Commerce to Arnold & Porter Kaye Scholer LLP, *Anti-dumping Duty Administrative Review of Certain Corrosion-Resistant Steel Products from the Republic of Korea*, Case No. A-580-878 (2016-17 Administrative Review) (Aug. 3, 2018). |
| B | Letter from the U.S. Department of Commerce to Steptoe & Johnson LLP, *Less-than-Fair-Value Investigation on Carbon and Alloy Steel Wire Rod from the United Kingdom*, Case No. A-412-826 (Investigation) (Jul. 10, 2017). |
| C | Letter from the U.S. Department of Commerce to Law Offices of David L. Simon, *Countervailing Duty Investigation of Welded Line Pipe from the Republic of Turkey*, Case No. C-489-823 (Investigation) (Feb. 23, 2015). |
| D | Memorandum from Robert M. James to the File, *Antidumping Duty Investigations of Cold-Rolled Steel Products from Korea: Ex Parte Meeting with Arnold & Porter, LLP, Counsel to Hyundai Steel Company*, Case No. A-580-881 (Investigation) (Jan. 11, 2016). |
| E | Letter from Arnold & Porter to U.S. Department of Commerce, *Certain Cold-Rolled Steel Flat Products from Korea: Additional Information Concerning Extension Request for Supplemental Section D Questionnaire Response*, Case No. A-580-881 (Investigation) (Jan. 8, 2016). |
| F | Letter from U.S. Department of Commerce to Akin Gump Strauss Hauer & Feld LLP, *Narrow Woven Ribbons with Woven Selvedge from Taiwan: 2013-2014 Antidumping Duty Administrative Review* Case No. A-583-844 (2013-14 Administrative Review) (Feb. 27, 2015). |
| G | Memorandum from Chris Hargett to the File, *2021-2022 Administrative Review of Large Diameter Welded Pipe from Greece: Accepting CV Profit and Expense Information and Extending Deadline for Rebuttal Comments*, Case No. A-484-803 (2021-22 Administrative Review) (June 21, 2023). |
| H | Memorandum from U.S. Department of Commerce to the File, *Titanium Sponge from Kazakhstan, Acceptance of Petition Supplement*, Case No. C-834-810 (Investigation) (Sept. 13, 2017). |
| I | Letter from US Dept of Commerce to Wilmer Cutler Pickering Hale and Dorr LLP, *Polyethylene Terephthalate Film, Sheet and Strip from Brazil; Remand Redetermination of Scope Review of Terphane, Inc. and Terphane, Ltda.'s "Copolymer Surface Films"*, Case No. A-351-841 (Remand) (Oct. 5, 2017). |
| J | Letter from U.S. Department of Commerce to Sidley Austin LLP, *2013 Administrative Review of the Countervailing Duty Order on Aluminum Extrusions from the People's Republic of China: Extension of Time to Provide a Response to the Department's Quantity and* |

| Doc. No. | Department of Commerce File Referenced (In Order of Appearance) |
|---|---|
|  | *Value Questionnaire*, Case No. C-570-968 (2013-14 Administrative Review) (Sept. 22, 2014). |
| K | Letter from Wiley Rein LLP to US Department of Commerce, *Carbon and Certain Alloy Steel Wire Rod from Mexico: Extension Request for New Factual Information in Response to Deacero's Supplemental Section D and E Questionnaire Responses*, Case No. A-201-830 (2015-16 Administrative Review) (Aug. 25, 2017). |
| L | Letter from Department of Commerce to Wiley Rein, *2015-2016 Administrative Review of the Antidumping Duty Order on Carbon and Certain Alloy Steel Wire Rod from Mexico: Request for Extension for Deadline to Submit Comments for Deacero's Section D and E Supplemental  Questionnaire* Responses, Case No. A-201-830 (2015-16 Administrative Review) (Aug. 25, 2017). |



# Document A

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-580-878
Administrative Review
POR: 01/04/2016 – 06/30/2017
E&C/OFC VII: EB
*Public Document*

August 3, 2018

*Hyundai Steel Company*
c/o J. David Park
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743

Antidumping Duty Administrative Review of Certain Corrosion-Resistant Steel Products from the Republic of Korea

Dear Mr. Park:

This letter concerns the Department of Commerce's (Commerce) earlier decision to accept your client's, Hyundai Steel Company (Hyundai Steel), narrative response to Commerce's supplemental section D questionnaire, dated June 26, 2018. After further consideration of Commerce's regulations and practice, for the reasons detailed below, we are rejecting the response as untimely.

If a submission contains information for which the submitter claims business proprietary treatment, the submitter may elect to file the submission under the one-day lag rule.[1] A complete submission must be filed within the applicable deadline, but the one-day lag rule allows an additional day to finalize bracketing of business proprietary information. A person must file the complete final business proprietary version and public version of the document with Commerce by the close of the business day after the date on which the one-day lag document was filed.[2] The final business proprietary document must be identical in all respects to the document filed on the previous day, except for any bracketing corrections.[3]

Hyundai Steel's narrative to its supplemental section D questionnaire response was included in the final business proprietary and public versions submitted on June 27, 2018, but it was not included in the bracketing not final document submitted on the June 26, 2018, deadline. Because the versions differ in respects other than bracketing, Hyundai Steel's filing was not made in accordance with 19 CFR 351.303(c)(2) and was not timely submitted by June 26, 2018. Hyundai Steel's failure to include the narrative portion of its response within the established deadline may have been inadvertent, but the result was nevertheless that Hyundai Steel failed to submit the

---

[1] *See* 19 CFR 351.303(c)(1).
[2] *See* 19 CFR 351.303(c)(2)(ii).
[3] *See* 19 CFR 351.303(c)(2).



narrative portion if its response by the deadline. Thus, Hyundai Steel's narrative portion of its supplemental section D questionnaire response was untimely under Commerce's regulations.

Commerce has previously rejected similar submissions that do not conform to the filing requirements of the one-day lag rule as untimely. In *Diamond Sawblades from China*, we rejected a supplemental questionnaire response that was not filed in accordance with 19 CFR 351.301(c) as untimely because the respondent did not timely file the final public version of the supplemental questionnaire response, notwithstanding the fact that the original submission was complete and timely submitted within the set deadline.[4] Here, Hyundai Steel's submission was not filed in accordance with 19 CFR 351.301(c) because the bracketing not filed document submitted within the deadline and the final version submitted the following day differ in respects other than bracketing. Thus, as in *Diamond Sawblades from China*, we are rejecting Hyundai Steel's untimely filed narrative within its partial supplemental section D questionnaire response.

In addition, Commerce's practice is to allow a law firm that misses a filing deadline one opportunity to submit the untimely information where a the law firm failed to: 1) file a complete submission before the specified hour on the date of the deadline;[5] 2) timely file the public version of the response;[6] or 3) respond on the date of the deadline, but promptly contacted Commerce.[7] We also note that Commerce allows a law firm a second opportunity to submit the untimely information only if that law firm has: 1) not previously been afforded such an opportunity in a past segment of any proceeding; and 2) identified the steps it has taken to avoid untimely filings in the future. This practice is grounded in 19 CFR 351.301(a), which states that Commerce "may request any person to submit factual information at any time during a proceeding or provide additional opportunities to submit factual information." In essence, despite the missed deadline and the timeliness requirements in 19 CFR 351.301(b)-(c), Commerce may request the relevant party to submit its information for the record in very limited circumstances.

As noted above, Hyundai Steel's narrative to its supplemental section D questionnaire response was filed untimely. Pursuant to the practice described above, we previously accepted Hyundai Steel's narrative response because we determined that the law firm representing Hyundai Steel was eligible to receive a second opportunity. While analyzing the petitioner's request for reconsideration, we discovered that Commerce had accepted untimely-filed information from the

---

[4] *See Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2015-2016*, 83 FR 17527 (April 20, 2018), and accompanying Issues and Decision Memorandum (IDM) at Comment 1.

[5] *See, e.g.*, Commerce Letter re: Request for Extension of Time to Submit Response to the Department of Commerce's Section A Questionnaire in the Antidumping Duty Investigation of Certain Softwood Lumber Products from Canada (A-122-857), dated March 2, 2017.

[6] *See, e.g.*, Commerce Letter re: Steel Concrete Reinforcing Bar from the Republic of Turkey: Permission to File Public Version of Icdas' Section B Antidumping Duty Questionnaire Response Out of Time (A-489-829), dated January 27, 2017.

[7] *See, e.g.*, Roung Shu Letter re: Narrow Woven Ribbons with Woven Selvedge from Taiwan: Request Reconsideration of Section D Extension Request (A-583-844), dated February 18, 2015 (noting that counsel contacted Commerce two days after the deadline); and Commerce Letter re: Antidumping Duty Administrative Review of Narrow Woven Ribbons with Woven Selvedge from Taiwan: 2013-2014 Antidumping Duty Administrative Review (A-583-844), dated February 27, 2015 (allowing counsel to refile its response when the party contacted Commerce within two days of missing the filing deadline).

2

law firm representing Hyundai Steel prior to our acceptance of the untimely filed information in this administrative review.  Specifically, on January 11, 2016, Commerce accepted untimely-filed information from this law firm on behalf of Hyundai Steel in the less-than-fair-value investigation of cold-rolled steel from Korea.[8]  It is inconsistent with Commerce's practice to allow the law firm another opportunity to file untimely information in this administrative review. Commerce must be able to enforce its deadlines and, if we permitted law firms to repeatedly miss deadlines without consequences, our deadlines would become meaningless.

Accordingly, because Commerce had already afforded the law firm representing Hyundai Steel a second opportunity to submit untimely-filed information in another proceeding, we have reconsidered our decision to accept untimely-filed information from this firm in this administrative review. As a result, pursuant to our regulations and practice, we have rejected and removed Hyundai Steel's untimely filed narrative response within its partial supplemental section D questionnaire response from the record of this segment of the proceeding.

We request that Hyundai refile the above rejected part of its supplemental questionnaire response, with the narrative section to section D response redacted in its entirety, by **COB August 8, 2018**.

Should you have any questions about this matter, please contact Elfi Blum at (202) 482-0197.

Sincerely,

Thomas Gilgunn
Program Manager
AD/CVD Operations, Office VII

---

[8] *See* Memorandum, dated August 3, 2018 placing "Antidumping Duty Investigation of Cold-Rolled Steel Products from Korea: Ex-Parte Meeting with Arnold & Porter, LLP, Counsel to Hyundai Steel Company, dated January 11, 2016," on the record of this review.



# Document B

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-412-826
Investigation
POI: 1/1/2016 – 12/31/2016
**Public Document**
E&C ADCVDII: JAG

July 10, 2017

Thomas J. Trendl, Esq.
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795

Re:     Less-than-Fair-Value Investigation on Carbon and Alloy Steel Wire Rod from the United
        Kingdom

Dear Mr. Trendl:

This concerns your July 10, 2017, letter in which you request that the Department of Commerce
(the Department) permit your client, British Steel Limited (British Steel), to submit a response to
section D of the Department's questionnaire.  Based on the information you provided in your
letter, including your description of the procedures you now have in place to prevent missed
deadlines, we will allow British Steel to submit its response to section D of the questionnaire.

Please be advised that, from this point forward, if you (or your firm) miss an established deadline
in this or any other proceeding before the Department, you will not be permitted to submit the
information at a later date.  Note also that all late submissions from your firm will be rejected,
unless you contact the Department to request an extension of time in accordance with 19 CFR
351.302(c), or you alert the Department of any technical difficulties encountered during an
attempt to file a submission via ACCESS, in accordance with 19 CFR 351.303(b)(2)(ii)(C).

Given that British Steel's section D response was originally due on July 5, 2017, the Department
is requiring that your client submit its response within the next business day.  Therefore, British
Steel's section D response is now due no later than **5 p.m. Eastern Time (ET) on Tuesday,
July 11, 2017**.  Please note that pursuant to 19 CFR 351.303(c)(2) and 351.304(c), you must also
submit an appropriate public summary of the proprietary data in British Steel's response no later
than **5 p.m. ET on Wednesday, July 12, 2017**.  Additionally, pursuant to 19 CFR 351.302(d),
any information submitted after the applicable deadlines will be considered untimely filed and
rejected.  In such case, we may rely on the facts available as outlined in section 776 of the Tariff
Act of 1930, as amended, for the preliminary determination in this investigation.



INTERNATIONAL
T R A D E
ADMINISTRATION

If you have any questions on this matter, please contact Alice Maldonado at (202) 482-4682 or Andrew Medley at (202) 482-4987.

Sincerely,

Shawn Thompson
Program Manager, Office II
AD/CVD Operations
Enforcement and Compliance

2



**Document C**

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

C-489-823
Investigation
**Public Document**
E&C Office II: SM

February 23, 2015

David Simon
Law Offices of David L. Simon
1025 Connecticut Avenue, NW, Suite 1000
Washington, DC 20036

Re:    Countervailing Duty Investigation of Welded Line Pipe from the Republic of Turkey

Dear Mr. Simon:

This concerns your February 12, 2015, supplemental questionnaire responses which you filed on behalf of your clients, Tosçelik Profil ve Sac Endüstrisi A.S. and Tosyali Dis Ticaret (collectively, Tosçelik). Based on the reasons you provided in your February 12, 2015, and February 19, 2015, letters, we have reconsidered our decision to reject your supplemental questionnaire responses. Therefore, we are accepting your February 12, 2015, submission in total, including all exhibits.

Accordingly, we are accepting the following bar codes submitted in the Department's ACCESS system:

- 3259394-01 through 04 (2nd & 3rd Supplemental Questionnaire, part 1-4 – BPI);
- 3259398-01 (2nd & 3rd Supplemental Questionnaire – Public Version); and
- 3259399-01 through 04 (Prior Calculations, part 1-4 – BPI).

Please be advised that, from this point forward, all late submissions from you (or your firm) in this or any other proceeding before the Department will be rejected, unless you contact the Department to request an extension of time in accordance with 19 CFR 351.302(c), or you alert the Department of any technical difficulties encountered during an attempt to file a submission via ACCESS, in accordance with 19 CFR 351.303(b)(2)(ii)(C).

If you have any questions on this matter, please contact Elizabeth Eastwood at (202) 482-3874 or Dennis McClure at (202) 482-5973.

Sincerely,

Shawn Thompson
Program Manager
AD/CVD Operations, Office II
Enforcement and Compliance



**Document D**


A-580-881
InvestigationPOI:
04/01/2014-03/31/2015
**Public Document**
AD/CVD Operations, Office 6: RMJ

January 11, 2016

MEMORANDUM FOR:      The File

THROUGH      Scot Fullerton
Director
AD/CVD Operations Office VI

FROM:      Robert M. James
Program Manager
AD/CVD Operations Office VI

RE:      Antidumping Duty Investigation of Cold-Rolled Steel
Products from Korea: *Ex Parte* Meeting with Arnold &
Porter, LLP, Counsel to Hyundai Steel Company

On January 8, 2016, the Department met with counsel to respondent Hyundai Steel Company
(Hyundai) in the above-referenced investigation. This meeting was held to discuss Hyundai's
failure to timely file a response to the Department's supplemental section D questionnaire by
January 5, 2016, the established deadline.

At the meeting, Christian Marsh, Deputy Assistant Secretary for AD/CVD Operations, discussed
with Arnold & Porter the circumstances surrounding Hyundai's failure to respond to the
supplemental questionnaire, and emphasized the need for interested parties appearing before the
Department to adhere strictly to submission deadlines.

At the conclusion of the meeting DAS Marsh requested that Arnold & Porter submit a letter on
the record of the instant investigation 1) confirming that Arnold & Porter understands the
Department's filing requirements; and 2) detailing the steps Arnold & Porter will take internally
to ensure that all future submissions, in this proceeding or others, are filed in a timely manner.
Ms. Phyllis Derrick indicated that she would file the requested letter, and she assured DAS
Marsh and other officials present that Arnold & Porter would prevent similar filing problems
from arising in the future. On Monday, January 11, 2016, Robert James of AD/CVD Operations
Office VI telephoned Ms Yujin McNamara of Arnold & Porter and informed her that the



Department would accept the tardy submission if it was filed by the close of business today. Ms. McNamara indicated she would file Hyundai's submission by the close of business.

The following individuals were present at the meeting:

<u>Arnold & Porter LLC</u>

Phyllis Derrick, Economist
Yujin McNamra, Counsel to Hyundai Steel Company

<u>U.S. Department of Commerce</u>

Christian Marsh, Deputy Assistant Secretary for AD/CVD Operations
Gary Taverman, Associate Deputy Assistant Secretary for AD/CVD Operations
Scot Fullerton, Director, AD/CVD Operations Office VI
Henry Loyer, Attorney, Office of Chief Counsel for Trade Enforcement and Compliance
Michael Martin, Program Manager, Office of Accounting
Robert James, Program Manager, AD/CVD Operations Office VI



**Document E**

# ARNOLD & PORTER LLP

J. David Park
David.Park@aporter.com

+1 202.942.5646
+1 202.942.5999 Fax

601 Massachusetts Ave., NW
Washington, DC 20001-3743

January 8, 2016

Case No. A-580-881
Total Pages: 5
Investigation
POI: 07/01/2014-06/30/2015
ITA/EC/Office VI

**PUBLIC DOCUMENT**

<u>VIA ELECTRONIC FILING</u>

The Honorable Penny Pritzker
Secretary of Commerce
International Trade Administration
Enforcement & Compliance
APO/Dockets Unit, Room 18022
14th Street & Constitution Avenue, NW
Washington, DC 20230

Re: **Certain Cold-Rolled Steel Flat Products From Korea: Additional Information Concerning Extension Request for Supplemental Section D Questionnaire Response**

Dear Secretary Pritzker:

We represent Hyundai Steel Company ("Hyundai Steel"), a mandatory respondent in the above-referenced proceeding. This letter concerns our January 5, 2016 request for a retroactive extension of the deadline to submit Hyundai Steel's response to the Department's December 23, 2015 Supplemental Section D Questionnaire.

# ARNOLD & PORTER LLP

The Honorable Penny Pritzker
January 8, 2016
Page 2

As discussed in that request, the supplemental questionnaire was issued on December 23, essentially one day before Christmas.[1] The Department initially established a deadline of December 30, 2015, a mere seven days. On the next morning, December 24, Hyundai Steel filed its initial extension request, asking for a six business day extension to submit the response on January 8, 2016. On the following Monday, December 28, the Department granted a partial extension until January 5. On December 29, Hyundai Steel submitted a response to the Department's Supplemental E questionnaire in the CORE investigation, consisting of 528 pages and a full set of data files. On January 4, Hyundai Steel submitted its response to the Department's Supplemental Sections B&C questionnaire in this proceeding, as well as its response to the Department's Supplemental Section D questionnaire in the Hot-Rolled investigation.

Hyundai Steel appreciates that the Department is extraordinarily burdened with the task of conducting 17 separate antidumping investigations involving various flat-rolled carbon steel products and faces its heaviest workload in decades. Hyundai Steel is also participating as a mandatory respondent in the antidumping investigations of Corrosion-Resistant Steel Products (CORE) from Korea (A-580-878) and Hot-Rolled Steel Products from Korea (A-580-883) and is the only producer so tasked. Throughout the course of each of these investigations, Hyundai Steel has committed to cooperating fully with the Department, submitting numerous responses and thousands of pages.

---

[1] The Federal government closed early the following day, December 24.

# ARNOLD & PORTER LLP

The Honorable Penny Pritzker
January 8, 2016
Page 3

The error here was extraordinary as it came about as the result of a perfect storm of multiple circumstances that rarely converge. These supplemental questionnaires were issued just prior to and in the midst of the year-end holiday period, when many staff and personnel were on travel for the holidays and while we were simultaneously preparing substantial responses to the Department's supplemental questionnaires in the CORE and hot-rolled investigations. Consequently, while we correctly logged the extended January 5, 2016 due date for the Supplemental Section D Questionnaire into our internal deadline tracking system, we inadvertently failed to log the noon (as opposed to close of business) deadline into the system.

Our client remains committed to cooperating fully with the Department in each of these investigations. In accordance with the Department's request of today, we hereby explain in detail the actions our firm is taking to ensure that this error does not occur again in this or other proceedings before the Department.

Upon receipt of a communication from the Department via Access, the person that has retrieved the document will circulate a summary to the other team members via internal email with a copy of the document attached. In the case of a communication that gives a deadline, e.g., a questionnaire, the sender will identify the due date and time in bold text in the summary email. The internal tracking system will be updated to note the due date and time at that time. We have also designated a separate attorney to review and confirm the tracking system on a daily basis.

Our firm recognizes that the efficient and timely completion of the Department's proceedings require that parties strictly adhere to the Department's established deadlines. We

# ARNOLD & PORTER LLP

The Honorable Penny Pritzker
January 8, 2016
Page 4

have taken actions to create backup systems to prevent the error here from reoccurring. We

apologize for the inconvenience caused. We greatly appreciate the Department's attention to this

matter.

*     *     *     *     *

In accordance with the Department's regulations, we are filing this submission

electronically via ACCESS at access.trade.gov. Copies of this submission have been served on

parties as indicated in the attached certificate of service. If you have any questions or desire any

additional information, please feel free to contact the undersigned.

Respectfully submitted,

J. David Park

ARNOLD & PORTER LLP
*Counsel to Hyundai Steel*

# PUBLIC CERTIFICATE OF SERVICE

**Certain Cold-Rolled Steel Flat Products
From the Republic of Korea
Case No. A-580-881
Investigation**

     I hereby certify that, on this day, copies of the foregoing submission were served upon the following parties by hand-delivery:

On Behalf of Nucor Corporation:
Alan H. Price, Esq.
Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006

On Behalf of ArcelorMittal USA LLC:
Grace W. Kim, Esq.
Kelley Drye & Warren LLP
3050 K Street, NW Suite 400
Washington, DC 20007-5108

On Behalf of Steel Dynamics, Inc.:
Roger B. Schagrin, Esq.
Schagrin Associates
900 7th Street, NW
Suite 500
Washington, DC 20001

On Behalf of Ameri-Source Specialty
Products, Inc.:
Robert G. Gosselink, Esq.
Trade Pacific PLLC
719 A Street, NE
Washington, DC 20002

On Behalf of United States Steel Corporation:
Jeffrey D. Gerrish, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005-2111

On Behalf of USS-POSCO Industries:
Elizabeth J. Drake, Esq.
Stewart and Stewart
2100 M Street, NW
Suite 200
Washington, DC 20037

On Behalf of AK Steel Corporation:
Stephen A. Jones, Esq.
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4706

| 1/08/2016 | /s/ Yujin McNamara |
| Date | Yujin McNamara |
| | Arnold & Porter LLP |

# Document F

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-583-844
Administrative Review
POR: 9/1/2013 – 8/31/2014
**Public Document**
E&C Office II: DC

February 27, 2015

J. David Park
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036

Re: <u>Narrow Woven Ribbons with Woven Selvedge from Taiwan: 2013-2014 Antidumping
Duty Administrative Review</u>

Dear Mr. Park:

This concerns your February 23, 2015, letter in which you request that the Department of
Commerce (the Department) permit your client, Roung Shu Industry Corporation (Roung Shu),
to submit a response to section D of the Department's questionnaire. Based on the information
you provided in your letter, including your description of the procedures you now have in place
to prevent missed deadlines, we will allow Roung Shu to submit its response to section D of the
questionnaire.

Please be advised that, from this point forward, if you (or your firm) miss an established deadline
in this or any other proceeding before the Department, you will not be permitted to submit the
information at a later date. Note also that all late submissions from your firm will be rejected,
unless you contact the Department to request an extension of time in accordance with 19 CFR
351.302(c), or you alert the Department of any technical difficulties encountered during an
attempt to file a submission via ACCESS, in accordance with 19 CFR 351.303(b)(2)(ii)(C).

Given that Roung Shu's section D response was originally due on February 4, 2015, the
Department is requiring that your client submit its response within two business days. Therefore,
Roung Shu's section D response is now due no later than **5 p.m. Eastern Time (ET) on
Tuesday, March 3, 2015**. Please note that pursuant to 19 CFR 351.303(c)(2) and 351.304(c),
you must also submit an appropriate public summary of the proprietary data in Roung Shu's
response no later than **5 p.m. ET on Wednesday, March 4, 2015**. Additionally, pursuant to 19
CFR 351.302(d), any information submitted after the applicable deadlines will be considered
untimely filed and rejected. In such case, we may rely on the facts available as outlined in
section 776 of the Tariff Act of 1930, as amended, for the preliminary results in this
administrative review.



If you have any questions on this matter, please contact David Crespo at (202) 482-3693 or Alice Maldonado at (202) 482-4682.

Sincerely,

Shawn Thompson
Program Manager
AD/CVD Operations, Office II
Enforcement and Compliance

# Document G

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-484-803
Administrative Review
POR: 5/1/2021 – 4/30/2022
**Public Document**
E&C/OII: DC

DATE: June 21, 2023

MEMORANDUM TO: The File

FROM : Chris Hargett
Program Manager, Office II
AD/CVD Operations

SUBJECT: 2021-2022 Administrative Review of Large Diameter Welded Pipe
from Greece: Accepting CV Profit and Expense Information and
Extending Deadline for Rebuttal Comments

---

On June 15, 2023, the American Line Pipe Producers Association Trade Committee (Trade
Committee), requested that the U.S. Department of Commerce (Commerce) extend the deadline
for the Committee to submit to respond to Commerce's request for comments and submission of
new factual information related to constructed value (CV) profit and selling expenses in instant
review.[1]

Concurrently, the Trade Committee submitted CV profit and selling expense information to
Commerce between 4:56 pm and 5:03 pm on the same day.[2]   In the Trade Committee's
supplement filed after the CV profit and selling expense submission had been completed in its
entirety, the Trade Committee maintains that they began filing the submissions shortly after 3:30
pm, June 15, 2023.[3]

Commerce is accepting the Trade Committee's CV profit and selling expense information,
because the document was filed three minutes after the 5:00 pm deadline.

Concurrently, in response to requests from the parties, we are extending the deadline for all
rebuttal comments regarding CV profit and selling expenses to June 28, 2023.[4]

---

[1] See Letters from the Committee, "Large Diameter Welded Pipe from Greece: Request for Extension of Deadline to
respond to Commerce's request for comments and submission of NFI related to CV profit and selling expenses,"
and "Large Diameter Welded Pipe from Greece: Supplement to Extension Request for Constructed Value Profit and
Selling Expenses Information," (Supplement) both dated June 15, 2023.
[2] See Letter from the Committee, "Large Diameter Welded Pipe from Greece: Constructed Value Profit and Selling
Expenses Information," dated June 15, 2023.
[3] See Supplement.
[4] See Corinth Pipeworks Pipe Industry S.A.'s Letter, "Large Diameter Welded Pipe from Greece: Extension Request
for Rebuttal Comments," dated June 21, 2023; see also Trade Committee's letter, "Large Diameter Welded Pipe
from Greece: Extension Request for Rebuttal Information on Constructed Value Profit and Selling Expenses," dated
June 21, 2023.



# Document H



**UNITED STATES DEPARTMENT OF COMMERCE**
International Trade Administration
Washington, D.C. 20230

C-834-810
POI: 1/1/2016-12/31/2016
**Public Document**
E&C/IV: LA

DATE: September 13, 2017

MEMORANDUM TO: The File

THROUGH: Robert Bolling
Program Manager
AD/CVD Operations, Office IV

FROM: Lilit Astvatsatrian
Senior International Trade Compliance Analyst
AD/CVD Operations, Office IV

CASE: Titanium Sponge from Kazakhstan

SUBJECT: Acceptance of Petition Supplement

On August 30, 2017, the Department of Commerce (the Department) issued a supplemental
questionnaire regarding Titanium Metal Corporation's (TIMET) petition for the imposition of
countervailing duties on imports of titanium sponge from Kazakhstan. The Department specified
a deadline of 12:00 pm September 1, 2017. However, TIMET's response was not received by
the Department's electronic filing system until 12:27 pm September 1, 2017. TIMET did not
seek an extension of time, or otherwise explain its untimely filing.

According to section 351.302(b) of the Department's regulations, "{u}nless expressly precluded
by statute, the Secretary may, for good cause, extend any time limit…." Because the
Department's August 30, 2017, supplemental questionnaire addressed allegations of subsidy
programs which the Department has not previously evaluated, the Department finds that good
cause exists to extend the deadline until 5:00 pm September 1, 2017, and accordingly to accept
TIMET's response for the record of this proceeding. The Department also notes that it continued
to issue supplemental questionnaires with respect to the underlying petition, and receive timely
responses from TIMET, through September 11, 2017.



# Document I

**UNITED STATES DEPARTMENT OF COMMERCE**
**International Trade Administration**
Washington, D.C. 20230

A-351-841
Remand
**PUBLIC DOCUMENT**
ECVI: TW

October 5, 2017

David M. Horn
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave.
N.W., Washington, D.C. 20006

Re:     Polyethylene Terephthalate Film, Sheet and Strip from Brazil; Remand Redetermination
of Scope Review of Terphane, Inc. and Terphane, Ltda.'s "Copolymer Surface Films"

Dear Mr. Horn:

This concerns the Department's September 21, 2017, draft remand redetermination in the above-referenced proceeding. On September 27, 2017, counsel for Mitsubishi Polyester Film, Inc. (the petitioner) filed an untimely request to extend its time to comment on the draft redetermination until October 2, 2017. In that request, counsel stated that it satisfied the standard for an "extraordinary circumstance" under 19 C.F.R. 351.302(d) because the attorney in charge of the case was dealing with a medical emergency. We denied the petitioner's request in a letter dated October 2, 2017, citing the deadlines in the October 6, 2017 deadline for the Department to file its final remand redetermination.[1] On October 2, 2017, the petitioner filed an updated extension request, requesting "at least" an additional five days.[2] On October 4, 2017, the Court in *Mitsubishi Polyester Film, Inc. v. United States,* Ct. No. 13-62, granted the petitioner's motion for an extension on the final remand given these circumstances. The Court ordered the Department to file its final remand redetermination by October 20, 2017 (ECF Docket No. 107 (October 4, 2017)). On October 5, 2017, Petitioner filed a second request to extend its time to comment on the draft redetermination until October 10, 2017, referencing the Court's order granting the petitioner's extension motion.

In consideration of the petitioner's requests and the court's extension order, we are granting the petitioner's request and extending the petitioner's deadline to comment on the draft remand until no later than **12:00 pm (noon) on October 10, 2017**.

Please contact Tyler Weinhold at 202-482-1121 if you have any questions.

---

[1] *See* Department Letter re: extension denial, dated October 2, 2017.
[2] In their October 2, 2017 letter, the petitioner stated that, for example, if an extension were to be granted on October 2, 2017, their request would be for a new deadline to be set for October 10, 2017 (eight days later). Also, this request was filed on the same day and prior to the release of our previous letter denying the petitioner's first request, but our denial letter did not specifically address petitioner's updated request.

Sincerely,

Erin Kearney
Program Manager
AD/CVD Operations, Office VI
Enforcement and Compliance



**Document J**

Barcode:3230428-01 C-570-968 REV - Admin Review 1/1/13 - 12/31/13

**UNITED STATES DEPARTMENT OF COMMERCE**
International Trade Administration
Washington, D.C. 20230

C-570-968
AR: 1/1/2013 – 12/31/2013
**Public Document**
E&C AD/CVD OIII: AMM

September 22, 2014

**Sapa Profiles (Shanghai) Co., Ltd.**
c/o Neil Ellis
Sidley Austin LLP
1501 K St NW
Washington, DC 20005

Re:     2013 Administrative Review of the Countervailing Duty Order on Aluminum Extrusions
        from the People's Republic of China:  Extension of Time to Provide a Response to the
        Department's Quantity and Value Questionnaire

Dear Mr. Ellis:

This is in response to your September 8, 2014, letter to the Department of Commerce
("Department") on behalf of your client, Sapa Profiles (Shanghai) Co., Ltd., in which you request
an extension of time to respond to the Department's quantity and value questionnaire in connection
to the above referenced review.

We have evaluated your request for a four-day extension of time to submit the aforementioned
material.  Based on the extraordinary circumstances discussed in your letter to the Department dated
September 16, 2014, we are granting your client's extension request, in full.  Accordingly, we have
accepted as timely your client's quantity and value submission which was submitted on September
8, 2014.

If you have any questions, please contact Andrew Medley at (202) 482-4987.

Sincerely,

Erin Begnal

Erin Begnal
Program Manager, Office III
Antidumping and Countervailing Duty Operations



# Document K



**Wiley Rein LLP**

Alan H.Price
202.719.3375
aprice@wileyrein.com

1776 K STREET NW
WASHINGTON, DC 20006
PHONE 202.719.7000

www.wileyrein.com

August 25, 2017

DOC Case No. A-201-830
Total Pages: 5
Administrative Review for the POR
10/1/15 - 9/30/16
AD/CVD Operations, Office III
**Contains No Business**
**Proprietary Information**
**PUBLIC DOCUMENT**

**VIA ELECTRONIC FILING**

The Honorable Wilbur L. Ross Jr.
Secretary of Commerce
Attention: Enforcement & Compliance
APO/Dockets Unit, Room 18022
U.S. Department of Commerce
14th Street and Constitution Avenue, N.W.
Washington, D.C. 20230

Re:  *Carbon and Certain Alloy Steel Wire Rod from Mexico:*
Extension Request for New Factual Information in Response to
Deacero's Supplemental Section D and E Questionnaire Responses

Dear Secretary Ross:

On behalf of Nucor Corporation ("Nucor"), petitioner in the above-
captioned administrative review, we respectfully request an extension of time to
submit factual information to rebut, clarify, or correct the information in the
Supplemental Section D and E questionnaire response filed by Deacero S.A.P.I.
de C.V. and Deacero USA, Inc. (collectively, "Deacero").[1]  Currently, the

---

[1]  *See* Letter from Greenberg Traurig LLP to Sec'y of Commerce, re: *Carbon and Certain Alloy Steel Wire Rod from Mexico – Response to Supplemental Section D Questionnaire* (August 14, 2017) ("Deacero's Supplemental Section D Response"); Letter from Greenberg Traurig LLP to Sec'y of Commerce, re: *Carbon and Certain Alloy Steel Wire Rod from Mexico – Response to*

Barcode:3611122-01 A-201-830 REV - Admin Review 10/1/15 - PUBLIC DOCUMENT

deadline to submit rebuttal factual information is August 24, 2017.[2]   Nucor
requests that the Department extend this deadline to 3:00 pm on August 25, 2017.

Pursuant to 19 C.F.R. § 351.302(b), "{u}nless expressly precluded by
statute, the Secretary may, for good cause, extend any time limit" established in
its regulations.  Further, the Department will consider an extension filed after the
deadline extraordinary circumstances exist.[3]  Nucor submits that good cause and
extraordinary circumstances exist for this one-day extension. Counsel for Nucor
worked diligently to prepare comments on Deacero S.A.P.I. de C.V. and Deacero
USA, Inc.'s (collectively "Deacero") 517-page Supplemental Section D and E
Questionnaire Responses.[4]   However, in production of the finalized document,
Nucor's counsel experienced several unexpected events which led to this
extension request.  Specifically, at approximately 4:45 pm, the primary printer
that was being used for preparation of the filing jammed while printing letterhead
pages. The staff attorney responsible for preparing the filing then attempted to
send the document to be printed on other networked printers. The second printer
did not accept the print job, and a third networked printer was being used to
prepare a filing for another case.

---

*Supplemental Section E Questionnaire* (August 14, 2017) ("Deacero's Supplemental Section E
Response").

[2]    *See* 19 C.F.R. § 351.301(c)(1)(v) (providing 10 days from the filing of a supplemental
questionnaire response to submit rebuttal factual information).

[3]    *See* 19 C.F.R. § 351.302©.

[4]    *See* Deacero's Supplemental Section D Response; Deacero's Supplemental Section E
Response.




Given the unexpected events regarding the production of the finalized document, counsel for Nucor attempted to contact the Department analyst to explain these circumstances and request an extension. At approximately 4:56 pm, Derick Holt called Keith Haynes, but was unable to reach him. As a result, a message was left explaining the unexpected events. Shortly thereafter, Derick Holt called Brendan Quinn, but he too was unavailable. Ultimately, a fourth networked printer was used to finalize and produce the filing but the deadline for submission of the document had expired.

Nucor believes that an extension of the deadline until 3:00 pm on August 25, 2017 would not prejudice any party to this proceeding. In addition, the Department has already granted Deacero several extensions for its questionnaire responses in this review.[5] In this case, the extension will still leave the Department with sufficient time to analyze the issues relating to Deacero's Supplemental Section D and E questionnaire response before the preliminary

---

[5]    *See e.g.,* Letter from Brendan Quinn, Program Manager, Office III to Greenberg Traurig, LLP, re: *2015-2016 Administrative Review of the Antidumping Duty Order on Carbon and Certain Alloy Steel Wire Rod from Mexico: Response to Extension Request* (Aug. 3, 2017); Letter from Brendan Quinn, Program Manager, Office III to Greenberg Traurig, LLP, re: *2015-2016 Administrative Review of the Antidumping Duty Order on Carbon and Certain Alloy Steel Wire Rod from Mexico: Request for Extension of Deadline to Submit a Response to the Department's Section C Supplemental Questionnaire* (June 22, 2017); Letter from Brendan Quinn, Program Manager, Office III to Greenberg Traurig, LLP, re: *2015-2016 Administrative Review of the Antidumping Duty Order on Carbon and Certain Alloy Steel Wire Rod from Mexico: Request for Extension of Deadline to Submit a Response to the Department's Section B Supplemental Questionnaire* (June 13, 2017); Letter from Brendan Quinn, Program Manager, Office III to Greenberg Traurig, LLP, re: *2015-2016 Administrative Review of the Antidumping Duty Order on Carbon and Certain Alloy Steel Wire Rod from Mexico: Request for Extension of Deadline to Submit a Response to the Department's Section B Supplemental Questionnaire* (June 2, 2017); Letter from Brendan Quinn, Program Manager, Office III to Greenberg Traurig, LLP, re: *2015-2016 Administrative Review of the Antidumping Duty Order on Carbon and Certain Alloy Steel Wire Rod from Mexico: Request for Extension of Deadline to Submit a Response to the Department's Section A Supplemental Questionnaire* (May 19, 2017).



results.[6] For these reasons, Nucor respectfully requests that the Department grant its request for an extension until 3:00 pm on August 25, 2017, to file new factual information and deficiency comments in the above-captioned proceeding.

If you have any questions with regard to this request, please do not hesitate to contact the undersigned.

Respectfully submitted,

Alan H. Price, Esq.
Daniel B. Pickard, Esq.
Derick G. Holt, Esq.

**WILEY REIN LLP**
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

*Counsel to Nucor Corporation*

---

[6]    *See* Memorandum from Keith Haynes, Int'l Trade Compliance Analyst, Office III, through Erin Begnal, Director, Office III, to James Maeder, Senior Director, re: *Carbon and Certain Alloy Steel Wire Rod from Mexico: Extension of Deadline for Preliminary Results of the 2015-2016 Antidumping Duty Administrative Review* (Aug. 9, 2017) (extending the preliminary results until October 31, 2017).

## CERTIFICATE OF SERVICE

PUBLIC SERVICE

*Carbon and Certain Alloy Steel Wire Rod from Mexico*
**A-201-830**
**Administrative Review 10/1/15 - 9/30/16**

I certify that a copy of this document was served on the following parties, via hand delivery, on August 25, 2017.

**On behalf of Deacero S.A.P.I. de C.V. and Deacero USA, Inc.:**

Rosa S. Jeong, Esq.
**Greenberg Traurig LLP**
2101 L Street, NW
Suite 1000
Washington, DC 20037

# Document L

**UNITED STATES DEPARTMENT OF COMMERCE**
International Trade Administration
Washington, D.C. 20230

A-201-830
AR: 10/1/2015 – 9/30/2016
**Public Document**
E&C AD/CVD OIII: KAH

August 25, 2017

Nucor Corporation
c/o Alan H. Price
Wiley Rein, LLP
1776 K Street, N.W.
Washington, D.C. 20006

Re:     2015-2016 Administrative Review of the Antidumping Duty Order on Carbon and Certain
        Alloy Steel Wire Rod from Mexico:  Request for Extension of Deadline to Submit
        Comments for Deacero's Sections D and E Supplemental Questionnaire Responses

Dear Mr. Price:

This is in response to Nucor Corporation's (Nucor), August 25, 2017, letter to the Department of
Commerce (Department), requesting a one-day extension of the deadline to submit factual
information to rebut, clarify, or correct information in Deacero's sections D and E supplemental
questionnaire responses, which was due August 24, 2017.

In consideration of the circumstances as described by Nucor in its letter, as well as, the phone
messages left with the Department, and its email correspondence to the Department,[1] we are
granting Nucor's extension request, in full.  Accordingly, Nucor's factual information to rebut,
clarify, or correct information in Deacero's sections D and E supplemental questionnaires is due
**Friday, August 25, 2017**, no later than 3 p.m. Eastern Time.

Pursuant to 19 CFR 351.302(d)(1)(i) of the Department's regulations, any information a party
submits after the applicable deadline will be untimely filed and may be rejected.  In such a case, we
may have to resort to the use of facts available, as required by section 776(a)(2)(B) of the Tariff Act
of 1930, as amended.

If you have any questions, please contact Keith Haynes at (202) 482-5139.

Sincerely,

*Frances Voth*

for Brendan Quinn
Program Manager
AD/CVD Operations, Office III

---

[1] *See* Memorandum to the File, "Antidumping Duty Order on Carbon and Certain Alloy Steel Wire Rod from Mexico:
Transmittal of Source Documents Referenced to the File," dated August 25, 2017.