## UNITED STATES COURT OF INTERNATIONAL TRADE
### Before: Mark A. Barnett, Chief Judge

| | |
|---|---|
| CAMBRIA COMPANY LLC,<br><br>      Plaintiff,<br><br>ANTIQUE MARBONITE PRIVATE LIMITED; SHIVAM ENTERPRISES; PRISM JOHNSON LIMITED; ARIZONA TILE, LLC; M S INTERNATIONAL, INC.; and PNS CLEARANCE LLC,<br><br>      Consolidated-Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>      Defendant,<br><br>APB TRADING, LLC; ARIZONA TILE LLC; COSMOS GRANITE (SOUTH EAST) LLC; COSMOS GRANITE (SOUTH WEST) LLC; COSMOS GRANITE (WEST) LLC; CURAVA CORPORATION; DIVYASHAKTI GRANITES LIMITED; DIVYASHAKTI LIMITED; FEDERATION OF INDIAN QUARTZ SURFACE INDUSTRY; M S INTERNATIONAL, INC.; MARUDHAR ROCKS INTERNATIONAL PVT LTD.; OVERSEAS MANUFACTURING AND SUPPLY INC.; PNS CLEARANCE LLC; QUARTZKRAFT LLP; and STRATUS SURFACES LLC,<br><br>      Defendant-Intervenors. | Court No. 23-00007 |

### CAMBRIA COMPANY'S RESPONSE TO CONSOLIDATED-PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

Roger B. Schagrin, Esq.
Luke A. Meisner, Esq.
Nicholas J. Birch, Esq.
SCHAGRIN ASSOCIATES
900 Seventh Street, NW,
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel for Cambria Company
LLC*

Dated: December 11, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... ii

STATEMENT PURSUANT TO RULE 56.2(c)(1) ..................................................... 2

I.  Administrative Determination Under Review ...................................................... 2

II. Issues Presented for Review ................................................................................ 2

STANDARD OF REVIEW ........................................................................................... 2

STATEMENT OF FACTS ............................................................................................ 2

    A.  Antique's Failure to Cooperate ....................................................................... 3

    B.  Commerce's Selection of an AFA Rate ........................................................... 7

    C.  Importers' Arguments Regarding the All Others' Rate .................................... 8

SUMMARY OF ARGUMENT ..................................................................................... 9

ARGUMENT ............................................................................................................... 11

I.  Commerce's Rejection of Antique's Untimely Response Was Not an Abuse of
   Discretion ............................................................................................................ 11

    A.  The Legal Standard as Set Out in *Dongtai Peak Honey* .................................. 11

    B.  Antique Was Not a *Pro Se* Respondent ............................................................ 13

    C.  This Court Has Applied the Guidance of *Dongtai Peak Honey* to Affirm
       Commerce's Use of Its Discretion in Many Analogous Situations ................. 14

    D.  The Court Should Affirm Commerce's Proper Use of Its Discretion Here ...... 17

    E.  Commerce's Regulations Are Not Contrary to Law ......................................... 19

II. Commerce Properly Applied AFA to Antique ..................................................... 20

    A.  Antique Did Not Meet the Statutory Requirement of Full Cooperation ......... 20

    B.  Commerce Properly Selected an AFA Rate in Accordance with the Statute .. 22

III. This Court Should Also Reject Importers' Export Subsidy Offset Arguments due
    to Judicial Estoppel ............................................................................................ 24

CONCLUSION ........................................................................................................... 27

CERTIFICATE OF COMPLIANCE .......................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*ArcelorMittal USA LLC v. United States*, 399 F. Supp. 3d 1271 (Ct. Int'l Trade 2019) ......................................................................................... 12

*Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) ......................................................................................... 11

*Bebitz Flanges Works Priv. Ltd. v. United States*, 433 F. Supp. 3d 1297 (Ct. Int'l Trade 2020) ............................................................... 16

*Dongtai Peak Honey Indus. Co. v. United States*, 971 F. Supp. 2d 1234 (Ct. Int'l Trade 2014) ............................................................... 21

*Grobest & I-Mei Industrial et al. v. United States*, 36 C.I.T. 98 (2012).......... 11, 16

*Leco Supply, Inc. v. United States*, 619 F. Supp. 3d 1287 (Ct. Int'l Trade 2023) ......................................................................................... 17

*Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333 (Fed. Cir. 2016) ............ 23

*New Hampshire v. Maine*, 532 U.S. 742 (2001)................................................ 24, 25

*Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 494 F.3d 1371 (Fed. Cir. 2007) ......................................................................................... 18, 21

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) ................. 21

*Pegram v. Herdrich*, 530 U.S. 211 (2000) ............................................................ 24

*Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330 (Fed. Cir. 2002) ................................................................................... 23

*Tau-Ken Temir LLP v. United States*, 587 F. Supp. 3d 1346 (Ct. Int'l Trade 2022) ......................................................................................... 16, 17

*Trinity Mfg., Inc. v. United States,* 549 F. Supp. 3d 1370 (Ct. Int'l Trade 2021) ......................................................................................... 14, 15, 18

*Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346 (Fed. Cir. 2010)................................................................. 25

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519 (1978) ............................................................................... 12

**Statutes**

19 U.S.C. § 1677e ............................................................................................ 5, 22

19 U.S.C. § 1677e(b)(2).................................................................................... 7, 22

19 U.S.C. § 1677e(c)......................................................................................... 7, 22

19 U.S.C. § 1677e(d)(3).............................................................................. 8, 23

**Regulations**

19 C.F.R. § 351.302(c)................................................................................. 13

**Administrative Determinations**

*Certain Quartz Surface Products from India: Final Results of*
  *Antidumping Duty Administrative Review; 2019-2021*, 88 Fed. Reg.
  1,188 (Dep't Commerce Jan. 9, 2023)................................................... 2

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**Before: Mark A. Barnett, Chief Judge**

| |
|---|
| CAMBRIA COMPANY LLC, |
| Plaintiff, |
| ANTIQUE MARBONITE PRIVATE LIMITED, *et al.*, |
| Consolidated-Plaintiffs, |
| v. |
| UNITED STATES, |
| Defendant, |
| APB TRADING, LLC, *et al.*, |
| Defendant-Intervenors. |

Court No. 23-00007

**CAMBRIA COMPANY'S RESPONSE TO CONSOLIDATED-**
**PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuit to Rule 56.2 of this Court, defendant-intervenor Cambria Company LLC ("Cambria") hereby submits its response to the motions for judgement on the agency record filed by consolidated Plaintiffs' Antique Marbonite Private Limited ("Antique"), and Arizona Tile, LLC, M S International, Inc. and PNS Clearance LLC (collectively, the "Importers") (ECF Nos. 52 - 54).

1

## STATEMENT PURSUANT TO RULE 56.2(c)(1)

## I.   Administrative Determination Under Review

The determination challenged here is the final results issued by the

Department of Commerce ("Commerce") for the first administrative review of the

antidumping duty ("AD") order on quartz surface products ("QSP") from India.

*Certain Quartz Surface Products from India: Final Results of Antidumping Duty*

*Administrative Review; 2019-2021*, 88 Fed. Reg. 1,188 (Dep't Commerce Jan. 9,

2023) and accompanying Issues and Decision Memorandum ("IDM") for the Final

Results (Dec. 30, 2022) ("Final IDM") (P.R. 346).

## II.   Issues Presented for Review

(1)  Was Commerce's decision to reject Antique's untimely filing supported by substantial evidence or otherwise in accordance with law?

(2)  Was Commerce's decision to apply adverse facts available ("AFA") to Antique as a noncooperative respondent and Commerce's selection of the total AFA rate supported by substantial evidence or otherwise in accordance with law?

(3)  Can the Importers now change their position from the position they persuaded Commerce to adopt to set the all others rate in the review?

## STANDARD OF REVIEW

Cambria's statement of the standard of review can be found in Cambria's

Rule 56.2 opening brief (ECF No. 56) at 2-3.

## STATEMENT OF FACTS

Cambria's broader statement of the facts can be found in Cambria's opening

brief (ECF No. 56) at 3-10. Facts relevant to the issues addressed in this response

brief are set out below.

2

### A. Antique's Failure to Cooperate

During the challenged annual review, Antique and its affiliates were first represented by SBA Strategy Consulting LLP ("SBA"). SBA, though having entered an appearance only on behalf of other parties (*see* SBA's Entry of Appearance (June 30, 2023) (P.R. 9)), filed Antique's responses and other submissions from the outset. *See, e.g.*, Antique's Request to Modify the Reporting Period (Oct. 21, 2021) (P.R. 59) at 1 (Antique's first submission, filed by SBA "{o}n behalf of the {sic} Antique…."); Antique's Section A Response (Nov. 3, 2021) (P.R. 79) at 1 (likewise filed by SBA).

With on-going and widespread deficiencies and unanswered questions in Antique's responses to Commerce's questionnaires, Commerce issued Antique first one and then a second supplemental questionnaire. Commerce's second supplemental questionnaire[1] contained 68 questions (many with multiple subparts, totaling over 200 total questions that Commerce determined still needed to be answered in the review). *See* Commerce's Second Supplemental Questionnaire (April 20, 2023) (P.R. 197). Commerce still required additional information from Antique on critical issues ranging from U.S. sales that Antique had refused to report, to Antique's failure to reconcile the reporting of both its sales and its costs to its books and records, to questions regarding Antique's reported sales expense adjustments. *See id.* at questions 2, 3, 21-28, and 56.

---

[1] Commerce issued the supplemental questionnaires to Antique "c/o" SBA. *See* P.R. 197 at 1.

Antique (through SBA) requested extensions to respond to the questionnaire, and was granted by Commerce first a one-week (*see* Commerce's First Extension (May 2, 2022) (P.R. 199)) and then an additional five-day extension (*see* Commerce's Second Extension (May 9, 2022) (P.R. 201)). In granting the second extension, Commerce was explicit that the response was due at "**10:00 a.m. Eastern Time, May 16, 2022**." Commerce's Second Extension (emphasis in original) (P.R. 201). Commerce again warned Antique that "any information submitted after the applicable deadline will be considered untimely filed and may be rejected." *Id.* And yet Antique did not begin to file its response until after that deadline had already passed, leading Commerce to reject Antique's response as untimely and to remove it from the record of the review. *See* Commerce's Rejection of Second Supplemental Questionnaire Response (May 18, 2023) (P.R. 203); *see also* Preliminary Decision Memorandum (June 30, 2022) ("PDM") at 7 (P.R. 243).

Antique first requested that Commerce allow it to refile the rejected response. Antique admitted that it had missed the deadline due to its counsel's oversight of the actual deadline, but also averred its counsel's belief that Commerce's standard practice was to set all deadlines to 5:00 pm Eastern Time. Antique's Request for Opportunity to Refile Response to Second Supplemental Questionnaire (May 19, 2023) at 1-2 (P.R. 205). When Commerce rejected that request as contrary to Commerce's regulations, which allow post-deadline filing extensions only where extraordinary circumstances are shown to exist, Antique then claimed extraordinary circumstances existed, citing to what Antique claimed

4

were COVID-19 related issues and its counsel's unfamiliarity with the possibility that Commerce could set a non-5:00 p.m. deadline. *See* Antique's Request for Acceptance of Second Supplemental Questionnaire Response (May 24, 2022) at 1-7 (P.R. 208).

Commerce again rejected Antique's request and its claims, pointing out that none of these purported matters would have prevented Antique's counsel from meeting the deadline if even reasonable care had been taken before the deadline had passed. Commerce also rejected the claim that it could not set a deadline other than 5:00 p.m., placing on the record multiple examples from other proceedings where it had set 10:00 a.m. deadlines. *See* Commerce's Denial of Second Request to Resubmit (June 3, 2022) at 1-3 and attachment (P.R. 216). Cambria likewise provided additional examples of Commerce's use of deadlines other than 5:00 p.m., including an example of where SBA itself had faced, and met, a 12:00 p.m. deadline when it represented another Indian respondent in a review of a different antidumping order. *See* Petitioner's Comments on Antique's Requested Reconsideration of Rejection (June 17, 2022), attachments (P.R. 232).

In its preliminary results, Commerce found that Antique had failed to cooperate to the best of its ability, failed to provide information by the relevant deadline, and had significantly impeded the proceeding. PDM at 8 (P.R. 243). Commerce therefore determined to apply AFA to set the dumping margin for Antique, per 19 U.S.C. § 1677e. *Id.*

In its final results, after considering arguments raised by parties in their briefing before the agency, Commerce further explained its decision. For example, Commerce noted that the COVID-19 situation which Antique argued amounted to extraordinary circumstances arose a week before the deadline, so Antique could have taken steps to mitigate any issues with meeting whatever deadline had been set (including seeking another extension) before the deadline. Final IDM at 19 (P.R. 346). Commerce also detailed why Antique's actions met the statutory standard for the application of AFA, as Antique had failed to meet the standard of full cooperation. Because Antique did not provide a timely response to Commerce, substantial information was absent from the record. That information included, among other issues detailed by Commerce, information that would show whether Antique's reporting could be reconciled with Antique's books or if the data Antique had reported was falsified. *See id.* at 28. Commerce also noted that the record lacked information that would allow the agency to determine if it could rely on Antique's reporting of the characteristics of its products so that the agency could accurately compare products as required by the statute. *See id.* at 28-29. Without the information it sought in the second supplemental questionnaire, Commerce explained, it could not conclude that the information Antique had reported was accurate or that it could be relied upon for the review. *Id.* at 31. Because of the numerous, substantial gaps in the record that were caused by Antique's failure to cooperate fully in meeting the deadlines set by Commerce, and because Commerce had granted multiple opportunities for Antique to address the deficiencies in its

6

reporting, Commerce determined it was appropriate for it to fill those gaps by applying total AFA in determining Antique's dumping margin. *Id.* at 31-32.

### B. Commerce's Selection of an AFA Rate

As the source of the adverse facts to be applied, Commerce turned to the petition underlying the antidumping duty order, one of the sources explicitly allowed under 19 U.S.C. § 1677e(b)(2). *See* PDM at 10 (P.R. 243). Commerce held that the highest dumping rate shown in the petition best met its goals in applying an AFA rate, as that rate would be sufficiently adverse to assure that the noncooperative party did not obtain a more favorable outcome through its noncooperation. Final IDM at 41-42 (P.R. 346).

As is required by 19 U.S.C. § 1677e(c) when secondary information is used as AFA, Commerce corroborated the petition rate to determine if it had probative value. Commerce compared the petition rate to individual dumping rates calculated for sales made by the cooperative respondent in the review. PDM at 10 (P.R. 243). As Commerce explained in its final results, because other information from within the proceeding showed that dumping did occur at or above the petition rate, the petition rate had been corroborated as required. Final IDM at 42 (P.R. 346). Commerce also rejected arguments presented by certain parties that it had to compare some aspects of the petition rate or the corroborating rates to Antique's business or sales. Commerce explained that the statute specifically sets out that Commerce does not need to determine if an AFA rate corresponds to any alleged

7

"commercial reality" of the noncooperative party *Id.* at 40-42; *see also* 19 U.S.C. § 1677e(d)(3).

### C. Importers' Arguments Regarding the All Others' Rate

In the preliminary results, Commerce set the rate to be applied to those respondents in the review not selected for individual examination, the "all others" rate, by averaging the zero-percent rate calculated for the other mandatory respondent with the total AFA rate set for Antique, in what Commerce properly recognized was the expected method under the statute. PDM at 11-12 (P.R. 243). In their brief before Commerce, the Importers argued that this averaged all others rate was an unreasonable increase "from the original investigation's all-others rate of 3.19%." Case Brief of Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC (Aug. 17, 2022) at 19 ("Importers' Agency Brief") (P.R. 306). Importers argued that Commerce should instead "pull forward" that "all-others rate from the original investigation" to set the all others rate in this review. *Id.* at 19; *see also id.* at 23 ("the Department should pull forward the all-others rate from the investigation"), 25 ("pulling forward the original investigation all-others rate"), 27 ("pull forward the all-others rate from the original investigation."). In their rebuttal brief before the agency, Importers again referenced "the original investigation's all-others rate of 3.19%" and continued to argue that Commerce should "pull-forward the all-others rate from the investigation." Rebuttal Brief of Arizona Tile, LLC; M S International, Inc.; and PNS Clearance LLC (Aug. 25, 2022) at 2-5 (P. R. 319).

8

In its final results, Commerce reversed its decision to apply the expected method to set the all others rate and instead determined to pull forward the 3.19 percent rate – precisely as the Importers had argued. *See* Final IDM at 55 (P.R. 346). Commerce specifically referenced the arguments made by Importers and other parties as the cause for the change in its determination on this point. *See id.* at 54 ("we examined the parties' claims that the margin assigned to the non-selected companies at the Preliminary Results was not reasonably reflective…."); *see also id.* at 45-46 and 53 (setting out the Importers' arguments).

Only after Commerce issued its final results did the Importers, in what they styled as ministerial error comments, claim for the first time that the rate Commerce should have pulled forward was actually 1.02 percent, the cash deposit rate from the investigation after the all others rate had been adjusted for export subsidies. *See* Importers' Ministerial Error Comments (Jan. 9, 2023) at 2-3 (P.R. 354). This was the first time this figure of "1.02" had ever been mentioned. Commerce disagreed with the Importers, explaining that whether the all others rate should be 3.19 percent or 1.02 percent was a substantial issue that parties were required to have raised in their case briefs. *See* Commerce's Allegation of Ministerial Error (Jan. 24, 2023) at 4 (P.R. 362).

## SUMMARY OF ARGUMENT

Commerce's broad discretion to reject untimely filings has been widely recognized. Applying guidance from the Federal Circuit, this Court has repeatedly affirmed Commerce's rejection of untimely submissions, even in cases where the

9

submission was made more quickly after the deadline than occurred here. Contrary to its meritless claims now, Antique was not a *pro se* respondent that did not understand how Commerce set or enforced deadlines. As Antique's untimely filing did not meet the requirements set out in Commerce's regulations for the acceptance of untimely filings, Commerce properly used its discretion to reject that filing. Contrary to the Importers' arguments, Commerce's regulation is not an abuse of Commerce's discretion.

Commerce also properly determined that Antique was noncooperative in the review and that AFA should therefore be applied. Antique's claims that the standards of cooperation set out by the Federal Circuit do not apply to it conflict with how those standards have been applied by the courts to respondents such as Antique. Commerce likewise properly selected the rate to apply as AFA and corroborated it as required. Arguments that the Court should force Commerce to consider whether that rate or the corroborating information related to Antique's situation are contrary to the statute must be rejected.

Finally, this Court should reject the Importers' attempt to change their position on the all others rate under the doctrine of judicial estoppel as well as for the reasons set out in Defendant's Response Brief. That doctrine disallows parties from unfairly benefiting from changing a position they successfully persuaded the agency to adopt in the first instance.

10

## ARGUMENT

### I.   Commerce's Rejection of Antique's Untimely Response Was Not an Abuse of Discretion

Rather than repeat arguments that have been presented in Defendant's Response Brief (ECF No. 68), Cambria seeks to present additional arguments and issues this Court should consider in rejecting the claims made by Antique and the Importers in their briefs in chief.

As established by Defendant, Commerce has considerable discretion to govern its proceedings, including setting deadlines, so the agency can perform its role to apply the U.S. trade remedy laws. *See id.* at 24-25. Commerce properly used that discretion here by applying its regulations, which set out in a transparent and objective manner when Commerce will exercise its discretion to allow post-deadline filings. As this Court has recognized, Commerce's regulation is a proper use of Commerce's authority and properly balances the interests involved. Antique and the Importers seek to have the Court instead impose a subjective and entirely undefined standard on the agency. The Court should decline to do so.

### A.  The Legal Standard as Set Out in *Dongtai Peak Honey*

Antique and the Importers rely on cases such as *Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) and *Grobest & I-Mei Industrial et al. v. United States*, 36 C.I.T. 98 (2012) to claim that this Court has established that Commerce cannot enforce its deadlines where doing so would adversely affect the party that missed the deadline. *See, e.g.*, Antique Brief at 14, 16 (ECF. No. 52); Importers' Brief at 15, 33 (ECF No. 54). But the Court has rejected reliance on those

cases and similar older cases in that regard, explaining that "both *Artisan* and

*Grobest* were issued prior to the Federal Circuit's precedential decision in *Dongtai*

*Peak Honey*." *ArcelorMittal USA LLC v. United States*, 399 F. Supp. 3d 1271, 1281

(Ct. Int'l Trade 2019).

In *Dongtai Peak Honey*, the Federal Circuit upheld Commerce's rejection of a

supplemental response when Commerce, like here, denied a post-deadline extension

to allow the untimely filing. *Dongtai Peak Honey Indus. Co. v. United States*, 777

F.3d 1343, 1347 (Fed. Cir. 2015). The court recognized that Commerce "properly

exercised its discretion in rejecting" the submission, as the respondent had known of

"all of the causes of delay" before the deadline but had not dealt with them. *Id.* at

1351. The court rejected arguments that "fairness and accuracy" required

Commerce to allow the untimely filling. *Id.* at 1353. Instead, the court recognized

Commerce's broad authority to set and enforce deadlines, noting that only in

"'extremely compelling circumstances'" should that discretion be abrogated. *Id.* at

1351 (*quoting Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,

435 U.S. 519 (1978)). The court also rejected claims that because Commerce had

allowed untimely filings in some other cases, it was required to do so again, as that

argument "ignores the fact that Commerce also routinely rejects untimely-filed

submissions." *Id.* at 1352. The Federal Circuit therefore held that because the

respondent had failed to meet Commerce's requirements for a post-deadline

extension, "Commerce reasonably exercised its discretion in rejecting the requests

and in enforcing the applicable deadline." *Id.* at 1353.

12

Thus, as explained by the Federal Circuit, Commerce has broad authority to set its own deadlines and its own rules governing when it will excuse a missed deadline. As set out in detail in Defendant's Response Brief, Commerce has set out those rules in its regulations at 19 C.F.R. § 351.302(c), limiting the use of its discretion to cases where "extraordinary circumstances" are shown to exist. Defendant's Response Brief at 11-13 (ECF. No. 68). By formalizing the use of its discretion in this way, Commerce provides parties with a predictable standard that helps avoid inconsistent and nebulous *ad hoc* application of its discretion. This set standard also supports Commerce's ability to conduct its proceedings fairly, impartially, and efficiently, as the agency is not forced to consider when to excuse missing a deadline anew in each instance. Because Commerce properly applied its discretion based on its reasonable regulations in the case of Antique, the Court should affirm Commerce's rejection of Antique's untimely second supplemental response.

### B. Antique Was Not a *Pro Se* Respondent

As a preliminary matter, the Court should not be misled by the disingenuous claims now being made by Antique that it was an unrepresented, *pro se* respondent during the review. *See* Antique Brief at 3, 4, 12, 15, 20-21 (ECF No. 52). Referring to Antique as *pro se* is entirely without basis; Antique was represented by counsel in India throughout the review. *Id.* at 4. Antique presents no facts suggesting that this counsel was inexperienced before Commerce or was unfamiliar with Commerce's procedures.

As detailed above, from its first submission Antique was represented by SBA, who referred to itself as "counsel" to Antique and other respondent parties. *See, e.g.*, Antique's May 19 Request to Refile at 1-2 (P.R. 205). Far from being only unsophisticated "local counsel" as Antique now implies, the record shows SBA was experienced before Commerce and had previously delt with Commerce's practice in setting deadlines other than at 5:00 p.m. *See* Petitioner's Comments on Antique's Requested Reconsideration of Rejection (June 17, 2022), attachment 2 (P.R. 232) (SBA's involvement in a non-5:00 p.m. deadline in another review it acted as counsel in). SBA knew Commerce set such deadlines; SBA and Antique simply failed to exercise even minimum care to determine if Commerce had done so here.

### C. This Court Has Applied the Guidance of *Dongtai Peak Honey* to Affirm Commerce's Use of Its Discretion in Many Analogous Situations

This Court has also rejected claims similar to the other excuses offered by Antique, such as medical issues being sufficient to meet Commerce's "extraordinary circumstances" standard. In *Trinity Manufacturing*, the Court agreed medical issues do not rise to extraordinary circumstances if it is not shown how the issue actually prevented the timely filing and that reasonable measures could not have been taken to avoid that outcome. *Trinity Mfg., Inc. v. United States,* 549 F. Supp. 3d 1370, 1378 (Ct. Int'l Trade 2021), *aff'd*, No. 2022-1329, 2023 WL 234228 (Fed. Cir. Jan. 18, 2023).

In *Trinity Manufacturing*, the Court also rejected the claim that Commerce's regulation on post-deadline extensions was an abuse of Commerce's discretion. It

14

held that Commerce's regulation "defines how Commerce will exercise its discretion when it receives an untimely extension request" and recognized that Commerce can "reasonably appl{y} the criteria the amended regulation sets forth." *Id.* The Court explained that Commerce's "interest in the orderly administration of the antidumping duty law and, specifically, its interest in deterring late filings for which extension requests are not made prior to the expiration of the filing period" "are served by a rule confining the granting of such requests to extraordinary circumstances." *Id.* at 1378-79.

While *Trinity Manufacturing* addressed a submission untimely by some 15 days (*see id.* at 1373-74), the arguments dealt with in that case are parallel to those before the Court here. There, the plaintiffs first claimed the filing was missed due to simple oversight, then later changed the claims to the medical issue. *See id.* at 1375-77. Plaintiffs there likewise claimed that accepting the untimely filing "would be entirely inconsequential to Commerce." *Id.*, 549 F. Supp. 3d at 1378. They also argued that the Court should take into account "the extreme and disproportionate consequences" of the rejection, which, in that case, resulted in the termination of the entire antidumping order. *Id.* at 1373. But, as quoted above, the Court rejected those claims, and agreed that Commerce's application of its "extraordinary circumstances" regulation was an allowable exercise of the agency's discretion that properly balanced its interests in orderly administration.

Further, this Court has upheld Commerce's application of that standard repeatedly in situations where the submitting party missed the deadline by only

15

hours. For example, in *Bebitz Flanges Works*, the Court affirmed Commerce's rejection of a response made less than two hours after the deadline. *Bebitz Flanges Works Priv. Ltd. v. United States*, 433 F. Supp. 3d 1297, 1302 (Ct. Int'l Trade 2020). The Court applied the guidance from *Dongtai Peak Honey* and rejected arguments that Commerce abused its discretion in rejecting a submission in that situation or that Commerce would suffer no harm in accepting the untimely submission. *See id.*

In *Tau-Ken Temir*, this Court upheld Commerce's discretion to reject a filing late by "one hour and 41 minutes." *Tau-Ken Temir LLP v. United States*, 587 F. Supp. 3d 1346, 1351 (Ct. Int'l Trade 2022), *appeal pending*, Fed. Cir. No. 22-2204. The Court again recognized that "'Commerce has discretion both to set deadlines and to enforce those deadlines by rejecting untimely filings.'" *Id.* at 1352 (*quoting Grobest*, 36 C.I.T. at 122). The Court also rejected claims to excuse the untimely filing similar to those made here, including inexperience and COVID-19, and arguments that Commerce had granted extensions in other cases. The Court explained instead that "the only conclusion that can be drawn from Commerce's prior determinations is that Commerce has an administrative 'practice' to treat extensions on a case-by-case basis." *Id.* at 1360-61.

Nor has this Court limited its affirmation of an agency's discretion to reject filings untimely by only hours to Commerce. In *Leco Supply*, the Court affirmed U.S. Customs and Border Protection's authority to reject a submission in an Enforce and Protect Act ("EAPA") investigation before that agency when the submission was made six and a half hours after the relevant deadline. *See Leco Supply, Inc. v.*

16

*United States*, 619 F. Supp. 3d 1287, 1306-08 (Ct. Int'l Trade 2023). There, the respondent missed the deadline due to its own calendaring error and argued that the hours-late submission did not represent a burden on the agency. *Id.* at 1307-08. The Court disagreed, holding that it was not an abuse of that agency's discretion to apply its own extraordinary circumstances standard. *Id.* It is not only Commerce that finds it necessary to strictly enforce deadlines for submissions except in extraordinary circumstances; and it is not just for Commerce that the courts have upheld that enforcement.

### D. The Court Should Affirm Commerce's Proper Use of Its Discretion Here

As recognized by the CIT in cases such as *Tau-Ken Temir* and set out in detail in Defendant's Rebuttal Brief (at 16-17, 27-30 (ECF No. 68)), Commerce's practice is to examine the merits of each claim of extraordinary circumstances on a case-by-case basis. As shown by Defendant, Commerce has specifically disavowed the "second chance" practice relied on by Antique and the Importers to argue Commerce must accept the untimely filing here regardless of whether the standard under Commerce's regulations was met. *Id.* at 28-29. Antique's and the Importers' reliance on older decisions disavowed by Commerce cannot control Commerce's current practice. Indeed, even if Commerce's application of its discretion in some instances were sufficient to rise to the level of an established practice at some time in the past, Commerce can change that practice if it explains why it is doing so. *See, e.g.*, *Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 494 F.3d 1371, 1377 n.5 (Fed.

Cir. 2007) (an agency may change its practice if it explains why it finds it proper to do so). As set out in Defendant's Rebuttal Brief, Commerce has explained why—to the extent it ever did in the past—it does not apply a "second chance" practice. *See* Defendant's Rebuttal Brief at 29 (ECF No. 68) (setting out where Commerce has explained that a second chance policy could not be uniformly applied and would be inconsistent with Commerce's regulations and practice).

Instead, Commerce's regulations setting out the extraordinary circumstances requirement provides a laudably uniform standard that applies to *all* cases. As has been recognized by this Court, Commerce's formation of that set standard properly reflects the agency's interests in creating a workable structure to conduct its proceedings while still allowing exceptions to its deadlines where there is real need. *See Trinity Mfg.*, 549 F. Supp. 3d at 1378-79. Determining that it will exercise its discretion only where extraordinary circumstances are shown reduces the multiplication of unmeritorious claims to excuse missed deadlines that Commerce would have to otherwise respond to anew each time.

In contrast, Antique and the Importers here ask the Court to substitute some other standard which they cannot even articulate. They focus on the fact that Antique filed its response "a few hours" after the deadline. *See, e.g.*, Antique Brief at 1 (ECF No. 52). But they do not explain at what point rejecting a late submission moves from an abuse of discretion, as they claim, to within the agency's discretion, as recognized by the courts. If a five-hour delay must be excusable, must a ten-hour delay? If a ten, then a twenty-four hour delay? If one day, why not two? Why not

18

ten? Antique and the Importers provide no answer as to when late becomes too late, or why. Without an underlying principle to guide in what circumstances the agency will apply its discretion, applying that discretion impulsively to allow one missed deadline opens the doors for multiplying problems for the agency. Rather than actual deadlines, Commerce's deadlines would become suggested guidance that responding parties could choose to ignore until they were ready to file. The Court must reject the requests that it eviscerate Commerce's ability to set its own rules and deadlines by disallowing Commerce's use of a set standard that clearly and predictably defines when Commerce will apply its discretion to allow a late filing. As Antique in no way met Commerce's standard here, Commerce properly applied that rule to not exercise its discretion and excuse Antique's inattention to a clear deadline. The Court should thus affirm Commerce's rejection of Antique's late submission and the foreseeable consequences Antique was aware it would face.

### E.  Commerce's Regulations Are Not Contrary to Law

The Importers also argue that even if Commerce's rejection of Antique's late filing was in harmony with Commerce's regulation, that regulation itself must be rejected as an abuse of discretion. The Importers contend that as Commerce's rejection here was, in their view, a *per se* abuse of discretion, adopting a regulation that allows such a rejection must in turn be an abuse of discretion. *See* Importers' Brief at 31-34 (ECF No. 54). However, for the reasons discussed above and in Defendant's Response Brief, Importers' reasoning falters at the start. *See* Defendant's Response Brief at 24-27 (ECF No. 68). Commerce has the discretion to

reject an untimely filing, even if untimely by only a few hours, as established in the multiple cases where this Court has upheld such rejections by Commerce and others. If Commerce has the discretion to reject some hours-late filings as those cases firmly establish, a regulation that applies that discretion cannot *per se* be an abuse of discretion as Importers' claim. Instead, it is simply an allowable codification of how Commerce will apply that discretion, as had been recognized by this Court.

## II.     Commerce Properly Applied AFA to Antique

### A. Antique Did Not Meet the Statutory Requirement of Full Cooperation

Given the critical nature and the breadth of information sought by Commerce in its second supplemental questionnaire (as discussed in the facts section above), Antique's failure to timely provide that information created a situation where Commerce lacked any grounds to calculate an accurate dumping margin for Antique based on reliable and verifiable information. Antique's argument that Commerce's finding that Antique was non-cooperative was "based solely" on Antique's inattentiveness to one deadline ignores that, by not timely filing that supplemental response, Antique made Commerce's entire review of Antique untenable. Antique Brief at 28 (ECF No. 52). While Antique claims that Commerce is demanding perfection of Antique, Commerce only demanded Antique meet a reasonable deadline. *See id.* It was Antique who unreasonably did not even take the trouble to observe where Commerce had highlighted the deadline for Antique. Antique argues

20

that Commerce must accept that mistakes will occur; but does not explain why the agency must accept when unreasonable and easily avoidable blunders occur.

Antique recognizes that in setting the now axiomatic standard of "best of its ability" in *Nippon Steel*, the Federal Circuit stated that this standard "does not condone inattentiveness, carelessness, or inadequate record keeping." But Antique argues that that statement applies only to record keeping, not to meeting deadlines. *Id.* (quoting *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). That is emphatically not how the *Nippon Steel* standard has been applied by the courts.

Indeed, in its decision in *Dongtai Peak Honey*, this Court quoted the relevant passage from *Nippon Steel* ("it does not condone inattentiveness, carelessness, or inadequate record keeping") as supporting Commerce's rejection of an untimely filing. *Dongtai Peak Honey Indus. Co. v. United States*, 971 F. Supp. 2d 1234, 1243 (Ct. Int'l Trade 2014), *aff'd*, 777 F.3d 1343 (Fed. Cir. 2015). The Court explained that the failure to meet a clear deadline "indicated an inattentiveness or carelessness with regards to its obligations that warranted the use of AFA." *Id.* at 1244. The "*or* inadequate record keeping" referenced in *Nippon Steel* is only one of many ways a respondent can fail to be fully cooperative; failing to meet a reasonable deadline based on simple inattentiveness as Antique did is another.

For these reasons above and for the reasons set out in Commerce's IDM and detailed in Defendant's Response Brief at 31-34 (ECF No. 68), this Court should also affirm Commerce's determination that Antique failed to fully cooperate.

### B. Commerce Properly Selected an AFA Rate in Accordance with the Statute

Where there is a gap in the record such that necessary information is not available to Commerce and that gap is the result of an interested party having withheld information or not providing the information by the deadline set by Commerce, 19 U.S.C. § 1677e allows Commerce to apply AFA from a number of sources, including the information on the current record or from the original petition. 19 U.S.C. § 1677e(b)(2). As discussed above, having found Antique to be uncooperative and facing major gaps in the record, Commerce properly selected information from the petition to apply as AFA. As also discussed above, Commerce corroborated that secondary information as required by 19 U.S.C. § 1677e(c) by comparing the petition rate with primary information in this review. *See* PDM at 10 (P.R. 243); Final IDM at 42 (P.R. 346).

As explained by Defendant, Commerce's selection of AFA was neither punitive nor inaccurate but was instead in accordance with Commerce's established practice and governing law. *See* Defendant's Response Brief at 35-37 (ECF No. 68). While Antique and the Importers raise various challenges to Commerce's rate selection and corroboration, the courts have on numerous occasions rejected such challenges and have instead upheld Commerce's corroboration.

For example, in *Ta Chen Stainless Steel Pipe*, the Federal Circuit affirmed Commerce's use of a sale that "represented only 0.04%" of the period sales to corroborate an AFA margin, explaining that when

> …the {AFA} dumping margin is corroborated by actual sales data, and
> Ta Chen admits that it is reflective of some, albeit a small portion, of
> Ta Chen's actual sales{; s}o long as the data is corroborated, Commerce
> acts within its discretion when choosing which sources and facts it will
> rely on to support an adverse inference.

*Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1339 (Fed. Cir.

2002). Likewise, in *Nan Ya Plastics*, the Federal Circuit explained that, in selecting

an AFA rate,

> {t}he statute simply does not require Commerce to select facts that
> reflect a certain amount of sales, yield a particular margin, fall within
> a continuum according to the application of particular statistical
> methods, or align with standards articulated in other statutes and
> regulations. Congress decided what requirements Commerce must
> fulfill in reaching its determinations, § 1677e(b), and we do not impose
> conditions not present in or suggested by the statute's text.

*Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1347 (Fed. Cir. 2016).

Not only do the Importers seek here to impose conditions on Commerce's

choices that do not exist in the statute, they seek to impose conditions that are

explicitly rejected in the statute. Their arguments that Commerce improperly

selected an AFA rate or corroborating information that did not have some specific

relationship to "actual products sold by Antique" are only another way of arguing

that Commerce had to base its application of AFA on Antique's commercial reality.

But the statute specifically states that Commerce *is not* required to demonstrate

that its selected AFA reflects the commercial reality of the party it is applied to, or

to estimate what the margin would have been if the party had cooperated. 19 U.S.C.

§ 1677e(d)(3). The Court should reject the Importers' improper attempts to override

the clear instructions of the statute and should instead recognize that Commerce has properly corroborated the AFA rate it applied to Antique.

### III.  This Court Should Also Reject Importers' Export Subsidy Offset Arguments due to Judicial Estoppel

The Importers also seek to have the Court override what they appear to now feel is their own error before Commerce. As described in the facts section above, the Importers first specifically argued for Commerce to apply a 3.19 percent rate as the all others rate; then, apparently emboldened by Commerce's acceptance of that argument, decided to try for an even lower rate. Commerce properly rejected that untimely attempt to change their position; and Defendant has explained why Commerce was correct to do so and why this Court should reject the Importers' arguments now due to their failure to properly exhaust their administrative remedies. *See* Defendant's Response Brief at 48-54 (ECF No. 68). In addition, this Court should reject Importers' new claim under the doctrine of judicial estoppel.

Judicial estoppel is "an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quotation marks omitted). It "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8 (2000). The three factors for the application of judicial estoppel have been set out as: 1) the party's later position is clearly inconsistent with its earlier one; 2) the party had succeeded in persuading a court to accept that earlier position; and 3) the party would obtain an unfair

24

advantage by its change in position. *See New Hampshire*, 532 U.S. at 743, 750–51; *see also Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010) (applying the same three factors). And judicial estoppel "applies just as much when one of the tribunals is an administrative agency as it does when both tribunals are courts." *Trustees in Bankr.*, 593 F.3d at 1353–54.

The *New Hampshire* factors are met by the Importers' change in position here. First, their former position is clearly inconsistent with their current position. The Importers were specific in their briefing before Commerce, arguing that the all others rate from the investigation was 3.19 percent and Commerce should pull forward *that* rate from the investigation. *See* Importers' Agency Brief at 19 *etc*. (P.R. 306). Now, the Importers argue that the rate Commerce must apply is the cash deposit rate of 1.02 percent. Importers' Brief at 40 (ECF No. 54). Rates of 3.19 and 1.02 percent cannot both be applied; applying one is necessarily inconsistent with applying the other.

Second, the Importers were clearly successful in persuading Commerce to accept their earlier position. Commerce applied the 3.19 percent rate in its final determination. Final IDM at 55 (P.R. 346). The Importers' purpose in arguing as they did at that time is of no moment: "the important portion of the second *New Hampshire* factor seems to be whether the party was successful in getting a court to adopt its earlier position, not whether the party misled the courts." *Trustees in Bankr.*, 593 F.3d at 1355.

25

Finally, the Importers would derive an unfair advantage if allowed to assume a contrary position now. Commerce was not given an opportunity to address arguments on this point or set out what its reasoning on the subject would be as the issue was not raised before the agency by the Importers. Other parties likewise were unable to present their arguments to the agency on the matter. Despite having succeeded on the argument they timely presented before the agency, the Importers now seek a second bite at the apple before the Court to swap to a new position they find more favorable, asking the Court to find against the agency that was persuaded on the argument Importers presented to it. The Court should reject such capriciousness, and should reject the Importers change in position under judicial estoppel as well as for the reasons set out by Defendant.

*     *     *     *

26

## <u>CONCLUSION</u>

For the foregoing reasons, Cambria respectfully requests that the Court

reject the arguments made by Antique and the Importers and affirm the portions of

Commerce's final results that they have challenged.

Respectfully submitted,

/s/

Roger Schagrin
Luke A. Meisner, Esq.
Nicholas J. Birch, Esq.
SCHAGRIN ASSOCIATES
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel for Cambria Company LLC*

Dated: December 11, 2023

27

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing response brief complies with the Court's order of April 20, 2023 (ECF No. 46), limiting defendant-intervenor's response briefs to 7,000 words. This response brief contains 6,444 words (including text, quotations, footnotes, headings, and attachments) according to the word count function of the word processing software used to prepare the brief

Respectfully submitted,

/s/

Nicholas J. Birch, Esq.
Schagrin Associates

Dated: December 11, 2023