# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| CAMBRIA COMPANY LLC, | |
|     Plaintiff, | |
| ANTIQUE MARBONITE PRIVATE LIMITED; PRISM JOHNSON LIMITED; and SHIVAM ENTERPRISES, | |
|     Consolidated-Plaintiffs, | |
| v. | |
| UNITED STATES, | Consolidated Court No. 23-00007 |
|     Defendant, | |
| APB TRADING, LLC; ARIZONA TILE LLC; COSMOS GRANITE (SOUTH EAST) LLC; COSMOS GRANITE (SOUTH WEST) LLC; COSMOS GRANITE (WEST) LLC; CURAVA CORPORATION; DIVYASHAKTI GRANITES LIMITED; DIVYASHAKTI LIMITED; M S INTERNATIONAL, INC.; MARUDHAR ROCKS INTERNATIONAL PVT LTD.; OVERSEAS MANUFACTURING AND SUPPLY INC.; PNS CLEARANCE LLC; QUARTZKRAFT LLP; and STRATUS SURFACES LLC, | |
|     Defendant-Intervenors. | |

## CERTIFICATE OF COMPLIANCE

The undersigned counsel at Trade Pacific PLLC hereby certifies that Reply Brief of Consolidated Plaintiffs, dated January 31, 2024, complies with the word-count limitation described in the Standard Chambers Procedures.  The memorandum of law contains 5,645 words according to the word-count function of the word-processing software used to prepare the memorandum.

**Consol. Court No. 23-00007, Certificate of Compliance**

Respectfully submitted,

/s/ Aqmar Rahman
Robert G. Gosselink
Aqmar Rahman

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760
Counsel to Consolidated Plaintiffs Antique
Marbonite Private Limited; Prism Johnson
Limited; and Shivam Enterprise

Dated:  January 31, 2024

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| CAMBRIA COMPANY LLC,<br><br>    Plaintiff,<br><br>ANTIQUE MARBONITE PRIVATE LIMITED; PRISM JOHNSON LIMITED; and SHIVAM ENTERPRISES,<br><br>    Consolidated-Plaintiffs,<br><br>    v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>APB TRADING, LLC; ARIZONA TILE LLC; COSMOS GRANITE (SOUTH EAST) LLC; COSMOS GRANITE (SOUTH WEST) LLC; COSMOS GRANITE (WEST) LLC;  CURAVA CORPORATION; DIVYASHAKTI GRANITES LIMITED;  DIVYASHAKTI LIMITED; M S INTERNATIONAL, INC.;  MARUDHAR ROCKS INTERNATIONAL PVT LTD.;  OVERSEAS MANUFACTURING AND SUPPLY INC.;  PNS CLEARANCE LLC;  QUARTZKRAFT LLP;  and STRATUS SURFACES LLC,<br><br>    Defendant-Intervenors. | Consolidated<br>Court No. 23-00007 |

**REPLY BRIEF OF ANTIQUE MARBONITE PRIVATE LIMITED; PRISM JOHNSON LIMITED; AND SHIVAM ENTERPRISE**

Aqmar Rahman
Robert G. Gosselink
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Consolidated Plaintiffs Antique Marbonite Private Limited; Prism Johnson Limited; and Shivam Enterprise

Dated:  January 31, 2024

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**TABLE OF CONTENTS** ............................................................................................................ i

**TABLE OF AUTHORITIES** ................................................................................................... ii

**INTRODUCTION**.................................................................................................................... 1

**ARGUMENT** ............................................................................................................................ 2

    **I.**    **Defendant Fails to Justify Commerce's Rejection of the Antique Group's Supplemental Questionnaire Response** .................................................................... 2

    **II.**    **Defendant Fails to Explain Why the Antique Group Did Not Qualify for Commerce's Well-Established Second Chance Policy** ...................................... 9

    **III.**    **Defendant Fails to Demonstrate that Commerce's Application of 19 C.F.R. § 351.302(c) Was Not Arbitrary and Unsupported by Substantial Evidence** 11

    **IV.**    **Defendant Fails to Show that Commerce's Application of AFA To the Antique Group Was Lawful and Supported By Substantial Evidence**.......... 14

    **V.**    **Defendant Does Not Sufficiently Explain Why Commerce's Selected AFA Rate Was Lawful** ................................................................................................ 16

    **VI.**    **CONCLUSION**…............................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Appleton Papers Inc. v. United States*, 37 CIT 1034, 1037, 929 F.Supp.2d 1329, 1334 (2013).... 9

*Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014).............. 3, 4, 18

*Bebitz Flanges Works Private Ltd. v. United States*, 433 F. Supp. 3d 1309, 1316 (Ct. Int'l Trade 2020) ................................................................................................................................................. 18

*BMW of North America LLC v. United States*, 926 F.3d 1291, 1300-01 (Fed. Cir. 2019).......... 17

*Celik Halat ve Tel Sanayi A.S. v. United States*, 485 F. Supp. 3d 1404, 1412 (Ct. Int'l Trade 2020) ................................................................................................................................................... 4

*Celik Halat ve Tel Sanayi A.S.*, 557 F. Supp. 3d 1375 (Ct. Int'l Trade 2022)............................... 14

*Dongtai Peak Honey Indus. Co. v. United States*, 971 F. Supp. 2d 1234, 1239 (Ct. Int'l Trade 2014) ................................................................................................................................................... 6

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A.*, 216 F.3d at 1032........................................... 11

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 36 CIT 98, 815 F. Supp. 2d 1342 (2012) ........................................................................................................................................... 3, 4, 5

*Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1385 (2022) ...................................... 14

*Kirk v. Comm'r of Soc. Sec. Admin.*, 987 F.3d 314, 321 (4th Cir. 2021) ...................................... 10

Leco Supply, Inc. v. United States, 619 F. Supp. 3d 1287, 1306-08 (Ct. Int'l Trade 2023)........... 7

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42, 56-57 (1983) ............................................................................................................................................... 10

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).............................. 14

*NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995)........................... 4, 18

*Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642, at *6 (Ct. Int'l Trade Feb. 15, 2023). ................................................................................................................................. 9

*Papierfabrik August Koehler AG v. United States*, 180 F. Supp. 3d 1211, 1231-32 (Ct. Int'l Trade 2016) ........................................................................................................................................ 17

*POSCO v. United States*, 296 F. Supp. 3d 1320, 1349 (Ct. Int'l Trade 2018) ............................. 17

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) and *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006) ............................................... 4, 18

*Shelter Forest Int'l Acquisition, Inc. v. United States*, No. 19-00212, 2021 Ct. Intl. Trade LEXIS 19, at *27 (Ct. Int'l Trade Feb. 18, 2021). .................................................................................. 18

*SKF USA Inc. v. United States*, 630 F.3d 1365, 1368 (Fed. Cir. 2011)......................................... 10

*Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005).................................. 9

*Trinity Manufacturing, Inc. v. United States,* 549 F. Supp. 3d 1370 (Ct. Int'l Trade 2021) .......... 8

**Statutes**

19 U.S.C. § 1677e(b)(1).................................................................................................................. 14

19 U.S.C. § 1677e(d)(2).................................................................................................................. 17

**Regulations**

19 C.F.R. § 351.302 ........................................................................................................... 3, 4, 12, 14

19 C.F.R. § 351.308(a)..................................................................................................................... 14

**REPLY BRIEF OF ANTIQUE MARBONITE PRIVATE LIMITED;
PRISM JOHNSON LIMITED; AND SHIVAM ENTERPRISE**

**INTRODUCTION**

Consolidated Plaintiffs, Antique Marbonite Private Limited; Prism Johnson Limited; and Shivam Enterprise (collectively the "Antique Group"), foreign producers and exporters of certain quartz surface products from India, submit this reply brief to the November 20, 2023 response brief filed by the Defendant and the December 11, 2023 response brief filed by the Defendant-Intervenor (i.e., Cambria Company LLC). *See* Def.'s Resp Pls.' Rule 56.2 Mots. J. Upon Agency R., ECF No. 67, Nov. 11, 2023 ("Def.'s Resp. Br."), Def.-Intervenor Cambria Company LLC's Resp. Br., ECF No. 70, Dec. 1, 2023 ("D-I Resp. Br.").

For the reasons discussed below, Defendant's and Defendant-Intervenor's reply briefs do not justify the United States Department of Commerce's ("Commerce's") decision to reject the Antique Group's 2nd supplemental questionnaire response and apply adverse facts available to the Antique Group. Specifically, Defendant and Defendant-Intervenor fail to show how Commerce was burdened by the insignificant delay in the Antique Group's filing of its second supplemental questionnaire response and fail to explain how the few hours delay in filing the response threatened Commerce's ability to complete the administrative review in a timely manner.

Moreover, Defendant did not address why the Antique Group did not qualify for Commerce's second chance policy or post deadline extension when Commerce has routinely allowed other parties to file out-of-time responses at Commerce. In its response brief, Defendant fails to explain why the Antique Group's short unintentional delay in filing did not qualify for Commerce's stated policy of leniency.

1

Finally, the Antique Group demonstrated in its 56.2 Brief that the record evidence does not support Commerce's determination to apply an adverse-inference-based rate of 323.12 percent to the Antique Group in light of the untimely filing. The Defendant and Defendant-Intervenor do not substantiate Commerce's claim that the Antique Group failed to perform to the best of its ability. With the exception of a minor delay in submitting its supplementary questionnaire response, the Antique Group promptly and adequately addressed all requests from Commerce. Because Commerce ignored applicable legal principles, failed to consider important aspects of the problem, and did not support its decision with substantial record evidence, this Court should remand the case to Commerce with instructions to reconsider aspects of the final results determination in accordance with the Court's decision.

## **ARGUMENT**

### I.   **Defendant Fails to Justify Commerce's Rejection of the Antique Group's Supplemental Questionnaire Response**

In its response, Defendant fails to explain how Commerce did not abuse its discretion when it rejected the Antique Group's 2nd supplemental questionnaire response, which was filed in the mid-afternoon of the deadline date.  Defendant does not explain how the five-hour delay from the anomalous morning deadline placed a burden on Commerce or threatened Commerce's ability to complete the administrative review in a timely manner. In addition, Defendant does not demonstrate how Commerce's rejection of the Antique Group's response was supported by substantial evidence and points to nothing in the administrative record demonstrating that Commerce actually was burdened by the five-hour filing delay. *See* Antique Group's 56.2 Brief at 13-17.

This Court has found that Commerce abuses its discretion when it rejects documents based on a purported interest in timeliness and finality when the actual burden placed on

Commerce is low and the timeliness of a proceeding is not threatened. *See Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 36 CIT 98, 815 F. Supp. 2d 1342 (2012) (Grobest); *see also Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) ("*Artisan*"). In this case the Antique Group filed its 2nd supplemental questionnaire response on May 16, 2022, approximately five hours after the 10:00 a.m. deadline established by Commerce.[1] There is no evidence on the record of the claim that the Antique Group intentionally delayed its filing or attempted to gain an advantage by filing its response after the 10:00 a.m. deadline. In fact, the Antique Group believed its submission to have been timely filed based on its previous experience in the review and Commerce's practice in other proceedings, in which Commerce consistently established 5:00 p.m. filing deadlines. Here, Commerce rejected the response despite having 228 days to calculate an antidumping margin for the Antique Group.  But nowhere on the record did Commerce demonstrate that the five-hour delay imposed a burden on Commerce or prevented Commerce from calculating an accurate antidumping duty margin for the Antique Group.

In its response brief, Defendant sidesteps Commerce's failure to accept the Antique Group's late filing by arguing that *Grobest* and *Artisan* are superseded because 19 C.F.R. § 351.302(c) was revised after *Artisan* and *Grobest* were decided and the revised 19 C.F.R. § 351.302(c) now contains a requirement that an extraordinary circumstance must exist for an untimely filed extension request to be accepted. *See* Def. Resp. Br. at 20-21. However, while the regulation now directs Commerce to consider whether an extraordinary circumstance prevented the Antique Group from filing a timely request, judicial and administrative practice nonetheless

---

[1] *See* Antique Group's Response to Commerce's second supplemental questionnaire (May 16, 2022) (CD 217) (PD 202 to 203).

require Commerce to consider whether the "interests of accuracy and fairness outweigh the burden placed on {Commerce} and the interest in finality." *See Grobest & I-Mei Indus. (Vietnam) Co., Ltd. v. United States*, 36 CIT 98, 122, 815 F.Supp.3d 1342, 1365 (2012) (*citing Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) and *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006)). Indeed, in 2020, after the addition of "extraordinary circumstance" to 19 C.F.R. § 351.302, this Court nonetheless relied on the *Grobest* standard with respect to an untimely questionnaire response, stating that "Commerce abuses its discretion when it rejects information that would not be burdensome to incorporate and which would increase the accuracy of the calculated dumping margins." *Celik Halat ve Tel Sanayi A.S. v. United States*, 485 F. Supp. 3d 1404, 1412 (Ct. Int'l Trade 2020) (*citing Grobest*, 36 C.I.T. at 122-23, 815 F. Supp. 2d at 1365-66; *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995). Furthermore, the holding in *Artisan* remains authoritative precedent because the court did not base its decision on whether 19 C.F.R. § 351.302 involved a "good cause" standard or a "extraordinary circumstances standard." Instead, the court weighed whether an inconsequential delay should have resulted in a harsh penalty for the respondent. In *Artisan*, the respondent submitted a questionnaire response the morning following the due date at the beginning of business hours, and the result of Commerce's rejection of the questionnaire response was to impose an adverse rate on the company that was likely twice what it would have paid otherwise. Considering the inconsequential effects of the delay, and the particularly severe effect on Artisan, the court found that Commerce had abused its discretion.  Thus, Defendant's suggestion that Commerce was not required to weigh the actual burden of accepting the Antique Group's 2nd supplemental questionnaire response or the need for finality against the accuracy of calculating an accurate antidumping duty margin is inaccurate because *Grobest* and *Artisan*

remain authoritative precedent.

Moreover, Commerce's amended regulation to include the "extraordinary circumstance" standard cannot supersede or contradict Commerce's obligation to administer the AD law in a manner that is remedial and non-punitive.  Indeed, in *Grobest*, the Court did not hold that Commerce abused its discretion in rejecting the respondent's late-filed submission by misapplying the "good cause" standard that previously applied to extension requests.  Rather, the Court found that Commerce's discretion in rejecting untimely filings is limited by the remedial, non-punitive purpose of the AD statute, which requires Commerce to consider the burden of accepting a late submission and the need for finality in the final results stage.  *See Grobest*, 36 CIT at 122, 815 F.Supp.3d at 1365 (stating that the remedial purpose of the AD statute requires Commerce to balance the interests of accuracy and fairness against the burden placed on it in accepting the late-filed submissions where it exercises its discretion to set and enforce its deadlines). Defendant claims that Commerce reasonably considered the aggregate impact of accepting late filings and Commerce's conduct of efficient proceedings was threatened by the Antique Group's minor delay in filing its response. *See* Def. Resp. Br. at 23-24.  But there is no information on the record that the Antique Group's delayed response, which was filed within business hours on the correct due date created a burden that impeded Commerce's ability to complete the administrative review efficiently or in a timely manner.  Because record evidence does not support the agency's claims, Commerce abused its discretion by rejecting the Antique Group's 2nd supplemental questionnaire response.

Defendant and Defendant-Intervenor argue next that judicial precedent supports Commerce's refusal to accept the Antique Group's 2nd supplemental questionnaire response. Specifically, they argue that in Dongtai Peak, the Court of Appeals for the Federal Circuit

rejected arguments that the delay resulting from an untimely questionnaire response and

extension request did not prejudice the proceeding because there were four months until the

deadline for Commerce's preliminary results. Def.'s Resp. Br. 23-25 and DI's Resp. Br. 11-13,

citing *Dongtai Peak Honey Indus. Co. v. United States*, 971 F. Supp. 2d 1234, 1239 (Ct. Int'l

Trade 2014), aff'd, 777 F.3d 1343 (Fed. Cir. 2015)  But the Court's decision in *Dongtai Peak*

was not grounded in a general deference to Commerce or a reluctance to evaluate Commerce's

enforcement of deadlines for an abuse of discretion despite accuracy and fairness concerns.  To

the contrary, in *Dongtai Peak*, the Court evaluated the factual context of Commerce's actions,

and concluded that Commerce had expressed legitimate concerns as to finality that outweighed

the concerns of accuracy of the AD rate assigned to the respondent in question.  *See* 777 F.3d at

1353. In that case, respondent Dongtai Peak failed to timely answer a supplemental

questionnaire, and instead filed two untimely requests to extend the deadline by ten days and one

day, respectively. *Id*. at 1347. Thereafter, without Commerce having granted either extension

request, Dongtai Peak submitted its supplemental response. *Id.* Commerce subsequently denied

Dongtai Peak's extension requests because it found no good cause to do so, noting that Dongtai

Peak previously had been cautioned regarding late extension requests. *Id*.  In contrast, the

Antique Group's late response in this case stemmed from an innocent oversight in interpreting a

10 a.m. deadline as a 5 p.m. deadline, and resulted in a mere five-hour submission delay. The

parallels drawn by Defendant and Defendant-Intervenor to *Dongtai Peak* are both inaccurate and

inapposite.  Moreover, when the Antique Group filed its hours-late response, Commerce still had

45 days prior to the preliminary results of the review to calculate an accurate antidumping

margin for the company. And even if that time frame was insufficient, nothing on the

administrative record indicates that the five-hour delay prevented Commerce from calculating an

antidumping duty margin for the Antique Group during the remaining 228 days before Commerce issued its final results of review on December 30, 2022.

Moreover, Defendant-Intervenor asserts the Court's decision is *Leco Supply* supports the Commerce's decision to reject the Antique Group's 2nd supplemental questionnaire response. *See* DI Resp. Br. 16-17.  However, Defendant Intervenor's reliance on *Leco Supply* is misplaced because *Leco Supply* involved the Court's determination for a different agency and contains distinguishable facts. In *Leco Supply*, the Court deemed lawful the U.S. Customs and Border Protection's ("CBP's") rejection of remand comments in an Enforce and Protect Act ("EAPA") investigation before that agency when a party filed its submission six and a half hours after the relevant deadline. *See Leco Supply, Inc. v. United States*, 619 F. Supp. 3d 1287, 1306-08 (Ct. Int'l Trade 2023). However, the Court's decision in *Leco Supply* is inapplicable here because that decision was related to a CBP determination and not a Commerce determination. Moreover, the facts in *Leco Supply* are distinguishable from the facts in this case. In *Leco Supply*, during remand, CBP requested that parties review previously submitted business confidential documents and justify why any bracketed information consisted of statutorily protected trade secrets and confidential or commercial information.  However, Leco failed to timely submit its written arguments and CBP rejected the submission. In this case, Commerce rejected a substantive supplemental questionnaire response from the Antique Group and refused to calculate an antidumping margin for the Antique Group, which hampered the accuracy of the antidumping margin for the Antique Group. The burden placed on the agency in this case to accept the late submission was minimal in comparison to the effect of the refusal to accept the questionnaire response. Therefore, Commerce's interest in finality and the burden of accepting the late-submitted arguments weigh heavily in favor accepting of the Antique Group's

submission because the inconsequential delay should not have resulted in a severe penalty.

Defendant and Defendant Intervenor additionally assert the Court's decision in *Trinity Manufacturing, Inc. v. United States,* 549 F. Supp. 3d 1370 (Ct. Int'l Trade 2021) ("*Trinity*") justifies Commerce's refusal to calculate an antidumping duty margin for the Antique Group. *See* Def. Resp. Br. 21 and DI Resp. Br. 13-16. However, the facts underlying *Trinity* are both different from, and not relevant to, the facts of this case. In *Trinity*, domestic interested parties in *Chloropicrin from China* failed to provide a substantive response in a sunset review and Commerce issued a notice to the International Trade Commission explaining its intention to revoke the Order.  Fifteen days after the missed deadline and only after Commerce already had expressed its intention to revoke the antidumping duty order, the domestic interested parties filed an extension request for their substantive response. In this case, the Antique Group's supplemental questionnaire response was delayed a mere five-hours, and Commerce took no action (substantive or otherwise) during that intervening time. Therefore, unlike in *Trinity*, the burden on Commerce to accept the Antique Group's supplemental questionnaire was minimal because it did not take any action between the 10 am deadline and the five-hour delayed filing.

Nor has Defendant or Defendant-Intervenor explained how the Antique Group's submission delay actually hindered Commerce's ability either to investigate the Antique Group's responses or to conduct the proceeding in a timely manner. Defendant argues that Commerce considered the "aggregate" impact of accepting untimely filings. *See* Def. Resp. Br. 23. But substantial evidence does not support Defendant's assertion that the burden was not minimal *when aggregated across all proceedings*. In fact, Defendant does not identify any actual burden that Commerce faced across its proceedings when it rejected the Antique Group's 2nd supplemental questionnaire response and denied its extension requests. By failing to cite any

other cases or to offer any actual examples of how accepting the Antique Group's delayed

submission caused an undue burden, Commerce did not substantiate its claims with actual

evidence. *See Appleton Papers Inc. v. United States*, 37 CIT 1034, 1037, 929 F.Supp.2d 1329,

1334 (2013) (*citing Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005))

(An abuse of discretion occurs where the decision is "based on an erroneous interpretation of the

law, on factual findings that are not supported by substantial evidence, or an unreasonable

judgment in weighing relevant factors.") Without such evidence, Commerce's claim of burden

was not real, but only hypothetical. But Commerce's decisions cannot be based on speculation or

conjecture. Given the ample timeframe prior to the preliminary results and Commerce's failure

to articulate how the five-hour delay adversely impacted its preliminary analysis, Commerce's

claims of undue burden are not supported by substantial evidence, and none of the cases cited by

Defendant or Defendant-Intervenor bolster Commerce's action.

## II.     Defendant Fails to Explain Why the Antique Group Did Not Qualify for Commerce's Well-Established Second Chance Policy

Commerce previously has established that it has a "leniency policy" and that its "practice

is to allow a law firm that misses a filing deadline one opportunity to submit the untimely

information where "the law firm failed to … file a complete submission before the specified hour

on the date of the deadline" if "that law firm has: 1) not previously been afforded such an

opportunity in any proceeding; and 2) identified the steps it has taken to avoid untimely filings in

the future." *Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642, at *6 (Ct.

Int'l Trade Feb. 15, 2023), *citing Certain Corrosion-Resistant Steel Products from the Republic

of Korea*, Dep't No. A-580-878, Commerce Letter to Respondent's Counsel at 2-3 (August 3,

2018). In its response brief,  Defendant fails to explain why the Antique Group's short

unintentional delay in filing did not qualify for Commerce's stated policy of leniency.

Despite the evidence illustrating Commerce's consistent application of a second chance practice, both Defendant and Defendant-Intervenor choose to overlook Commerce's established practice. Defendant-Intervenor argues that Commerce must adhere to its uniform standard (*i.e.*, the extraordinary circumstance standard) for accepting untimely extension requests, *see* DI Resp. Br. at 18, but fails to acknowledge that Commerce regularly applies exceptions to its extraordinary circumstance standard, as demonstrated in the Antique Group's 56.2 Brief. For its part, Defendant claims that Commerce does not maintain a second chance practice for first time offenders of late submissions. *See* Def. Resp. Br. at 28. This assertion is belied by the Court's findings and holding in *Oman Fasteners*.  But even if Defendant's claim was true, Commerce nonetheless routinely has allowed parties to correct a first-time filing deadline error even when parties are represented by experienced trade counsel, which was not the situation in this case. *See* Antique Group's Rule 56.2 Brief at 19-23.  While a single exception might be deemed an isolated occurrence, the numerous instances of Commerce allowing law firms an opportunity to submit an untimely submission establish a clear practice.  Given the circumstances, it was not reasonable for Commerce not to have afforded the Antique Group the same opportunity to submit its untimely response that Commerce previously has extended to many other parties.  In not doing so, Commerce departed from its consistent practice without "supply{ing} a reasoned analysis for the change." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42, 56-57 (1983); *see also SKF USA Inc. v. United States*, 630 F.3d 1365, 1368 (Fed. Cir. 2011); *see also id.* at 1373 ("When an agency changes its practice, it is obligated to provide an adequate explanation for the change."). It is well-recognized that an "agency 'can be said to be at its most arbitrary' when it 'treat{s} similar situations dissimilarly.'" *Kirk v. Comm'r of Soc. Sec. Admin.*, 987 F.3d 314, 321 (4th Cir. 2021) (citation omitted).  By failing to

provide the Antique Group with a second opportunity to file its response as it provided to other respondents numerous times, Commerce departed from its practice and acted arbitrarily without a reasoned explanation.

Finally, Defendant claims that even if Commerce previously had a second chance practice for respondents that made untimely filings, Commerce discontinued such practice prior to the determination in this case. *See* Def. Resp. Br. at 29. But Commerce did not stop this practice. In fact, by Defendant's own admission, Commerce accepted a late filing in 2023 that was filed after the applicable deadline. *See* Def. Resp. Br. at 29. Defendant attempts to distinguish this decision by stating that Commerce did not refer to a "second chance practice" in that case. However, Commerce's acceptance of the late submission not only is consistent with its leniency practice, but also shows that Commerce has maintained this practice and continues to permit parties, when reasonable, to file out-of-time submissions. In this case, Commerce unreasonably and arbitrary rejected the Antique Group's submission. By departing from its established practice and failing to provide the Antique Group with a second opportunity to file its response, Commerce acted arbitrarily without a reasoned explanation, and its decision not to accept the Antique Group's 2nd supplemental response must be reversed.

**III.    Defendant Fails to Demonstrate that Commerce's Application of 19 C.F.R. § 351.302(c) Was Not Arbitrary and Unsupported by Substantial Evidence**

While Commerce has the authority to establish and enforce its own regulations, Commerce is not free to apply its "extraordinary circumstance" rule in a harsh way to produce an unjust and punitive result. *See F.lli De Cecco Di Filippo Fara S. Martino S.p.A.*, 216 F.3d at 1032 (cautioning against a punitive, as opposed to remedial, use of 19 U.S.C. § 1677e(b)). In this case, Commerce imposed a disproportionate penalty for what was essentially a minor calendaring mistake. The Antique Group submitted its 2nd supplemental questionnaire response

on the correct due date, but slightly beyond an uncommon 10:00 am deadline, which occurs less than 0.5 percent of the time in AD/CVD investigations and reviews.[2]  Prior to the 2nd supplemental questionnaire deadline Commerce had never previously established a deadline for the Antique Group other than the normal 5:00 p.m. deadline, and the Antique Group had no reason to expect that the deadline for its 2nd supplemental questionnaire response would be any different. Acting in accordance with the established norm, the Antique Group submitted its responses by 5:00 p.m., genuinely believing that its filing was completed in a timely manner. In its response, Defendant agrees that the 10:00 am deadline was rare, and states that the 10:00 am deadline "may not be routine." *See* Def. Resp. Br. 14. Considering Defendant's acknowledgment of the irregular morning deadline, Commerce's rejection of the Antique Group's response was disproportionately severe.

Nonetheless, Defendant claims that Commerce's rejection of the Antique Group's 2nd supplemental questionnaire response was lawful because the Antique Group did not meet the regulatory requirements for Commerce to accept the filing under 19 C.F.R. § 351.302(c). *See* Def. Resp. Br. at 13. However, Defendant's insistence on a strict application of 19 C.F.R. § 351.302(c) is arbitrary and inconsistent with Commerce's practice of granting extension requests based on minor mistakes. In fact, contrary to Defendant's claim, Commerce often allows respondents to file submissions out-of-time without a timely extension request for reasons including routine mistakes and clerical errors by counsel. *See* Antique Group's Rule 56.2 Brief at

---

[2] *See* Divyashakti Granites Ltd's "Request for Limited Acceptance of Submission" (June 8, 2022) at 2-3 (estimating that Commerce sets a 10:00 am deadline with respect to less than 0.5% of its required submissions) (PD 220).

Consol. Ct. No. 23-00007

23-25.  Moreover, since the Final Results of the administrative proceeding, Commerce has accepted numerous untimely submissions.  For example:

- On December 12, 2023, Commerce accepted an untimely supplemental questionnaire response filed by the Government of India, in which the public versions were filed between 8:58 am and 9:03 am, after an 8:30 am deadline for filing the entire response. Commerce accepted the untimely response in full.[3]

- On October 23, 2023, in a proceeding under the Suspension Agreement for Tomatoes, Commerce accepted the Texas International Produce Association's rebuttal comments because "{their} comments were filed close to the 5:00pm deadline (*i.e.*, only 13 minutes late)…"[4]

- On August 15, 2023, Commerce accepted untimely comments filed by an interested party because they were facing technical difficulties in submitting their response.[5]

Given Commerce's past and ongoing practice, Commerce did not treat the Antique Group even-handedly in this case.  Commerce's denial of the Antique group's extension request was inconsistent with Commerce's prior practice of granting similar requests from other parties,

---

[3] *See* Memorandum for Commerce entitled, "Countervailing Duty Investigation of Certain Non-Refillable Steel Cylinder from India: Government of India's December 11, 2023, Supplemental Questionnaire Response," dated December 12, 2023 (Case Number: C-533-913, Investigation, (Access Barcode: 4477770-01)

[4] *See* Memorandum for Commerce entitled, "Acceptance of Late Filing," dated October 25, 2023 (Case Number: A-201-820, Proceeding: 2019 Suspension Agreement (Tomatoes), (Access Barcode: 4453601-01)

[5] *See* Memorandum for Commerce entitled, "Hydrofluorocarbon Blends from the People's Republic from China: Acceptance of Late Submission," dated August 15 (Case Number: A-570-028, Proceeding: CIRC – 410B from Turkey, Access Barcode: 4418282)

even when the delays were more substantial than those faced by the Antique Group.[6] By refusing to grant the Antique Group additional time to file its 2ⁿᵈ supplemental questionnaire response, Commerce failed to provide the Antique Group with the same treatment afforded to parties in similar cases. Commerce's inconsistent application of 19 C.F.R. § 351.302(c) and inconsistent treatment of the Antique group in this case was a deviation from Commerce's established practice and thus was arbitrary and unlawful.

### IV.   Defendant Fails to Show that Commerce's Application of AFA To the Antique Group Was Lawful and Supported By Substantial Evidence

The Tariff Act allows Commerce to apply an adverse inference only if a party "has failed to cooperate by not acting to the best of its ability to comply with {Commerce's} request for information." 19 U.S.C. § 1677e(b)(1); *see also* 19 C.F.R. § 351.308(a). The Federal Circuit has interpreted that provision to require that, "'{b}efore making an adverse inference, Commerce must examine a respondent's actions and assess the extent of the respondent's abilities, efforts, and cooperation in responding to Commerce{'s} requests for information.'" *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1385 (2022) (*quoting Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003)). The statutory "best of its ability" standard asks whether the company "t{ook} reasonable steps" and "put forth its maximum effort," but that standard "does not require perfection and recognizes that mistakes sometimes occur." *Nippon Steel*, 337 F.3d at 1382. Thus, "{n}ot every failure to comply with a filing deadline will result in authority to use an adverse inference." *See Celik Halat ve Tel Sanayi A.S.*, 557 F. Supp. 3d 1375 (Ct. Int'l Trade 2022).

---

[6] *See* The Antique Group's Request for Reconsideration and Request for Extension (June 10, 2022) (PD 225)

Defendant argues that the Antique Group failed to cooperate to the best of its ability because in filing its response after the 10 a.m. deadline the Antique Group was careless, inattentive and/or had inadequate record keeping. *See* Def. Resp. Br. at 24, 32.  However, with the exception of the five-hour delay in submitting its 2nd supplemental response, the Antique Group consistently exemplified the conduct expected of an attentive and cooperative respondent throughout the entirety of the administrative review.  For that one response, Commerce set a rare 10 a.m. deadline, and the Antique Group inadvertently assumed that the deadline was at 5 p.m. because, based on its limited experience, Commerce always set 5 p.m. deadlines. Apart from this isolated incident, the Antique Group's overall conduct and cooperation were in line with that expected of a respondent before Commerce. Before denying the Antique Group's request to refile, Commerce should have considered the context of the late filing withing the broader framework of the Antique Group's otherwise commendable participation in the review. Throughout the proceeding, the Antique Group put forth a maximum effort to provide complete responses to all of Commerce's requests. Antique Group's 56.2 Brief at 28-30. Specifically, the Antique Group provided complete and timely responses to Commerce's initial questionnaire and first supplemental questionnaire.[7] And the Antique Group also timely requested extensions to submit its initial questionnaire response and first supplemental questionnaire response. For the 2nd supplemental questionnaire response, the Antique Group worked around the clock to ensure

---

[7] *See* Antique Group's Section A Response (Nov. 3, 2021) (CD 21 to CD 35); Antique Group's Sections B-D Response (Dec. 9, 2021) (CD 36 to CD 62); Antique Group's re-filed Section C response (December 23, 2021) (CD 180 to 192); Antique Group's Responses to Commerce's first supplemental questionnaire (Apr. 15, 2022) (CD 206 to 215).

that it provided Commerce with full and complete answers to all of Commerce's inquiries.[8] An overall assessment of the Antique Group's participation throughout the administrative review shows that the company did not fail to cooperate to the best of its ability.

Defendant states that Commerce does not require perfection during its proceedings, but Commerce's decision to reject the Antique Group's response because of the minor inadvertent delay contradicts this claim. *See* Def. Resp. Br. 28. To put it simply, the mere act of filing a late response does not imply that the respondent did not do its best to cooperate. This is because mistakes sometimes occur, as happened with the Antique Group's filing of its 2nd supplemental questionnaire response. As such, it was not reasonable for the Antique Group's one deadline timing error to have resulted in Commerce treating it as an uncooperative respondent and resorting to total adverse facts available. Because the Antique Group participated to the best of its abilities throughout this administrative review, including the submission of its 2nd supplemental questionnaire response, Commerce's determination to apply adverse facts available to the Antique Group was unsupported by the record of this case.

## V.     Defendant Does Not Sufficiently Explain Why Commerce's Selected AFA Rate Was Lawful

Defendant asserts that Commerce's selected AFA rate was lawful because the selected AFA rate was in accordance with the statute. *See* Def. Resp. Br. 37. But while the Act permits Commerce to select the petition rate—the maximum statutory penalty—for particularly egregious misconduct, every adverse-inference rate must be "based on {an} evaluation … of the situation that resulted in {Commerce} using an adverse inference in selecting among the facts

---

[8] *See* Antique Group's second extension request for its 2nd supplemental questionnaire response (May 7, 2022) (PD 200).

otherwise available." 19 U.S.C. § 1677e(d)(2). Because that evaluation requirement "was added to the pre-existing statutory requirements for using adverse facts available, clearly some additional evaluation is required beyond that which justified the adverse inference." *POSCO v. United States*, 296 F. Supp. 3d 1320, 1349 (Ct. Int'l Trade 2018) (emphases added). In *BMW of North America LLC v. United States*, the Federal Circuit similarly interpreted the Act to impose clear limits on adverse-inference rates: Commerce must "consider the overall facts and circumstances of each case, including the level of culpability of the non-cooperating party"; the AFA rate must "be a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to noncompliance"; and the rate must not be "punitive, aberrational, or uncorroborated." *BMW of North America LLC v. United States*, 926 F.3d 1291, 1300-01 (Fed. Cir. 2019). The Federal Circuit further explained that "Commerce must not overreach reality in seeking to maximize deterrence," and "an unusually high rate" should be reserved for "serious misconduct," such as "deliberate falsity and intentional concealment." *Id.* ; *see, e.g.*, *Papierfabrik August Koehler AG v. United States*, 180 F. Supp. 3d 1211, 1231-32 (Ct. Int'l Trade 2016) (affirming the AFA rate based on "an elaborate scheme to conceal," including "intentional, and fraudulent, misreporting"). In this case, Commerce failed to explain why the Antique Group's behavior was particularly egregious, and Defendant has failed to identify where and how Commerce performed the evaluation necessary to justify the adverse inference Commerce made.

Defendant also fails to establish that the AFA rate selected by Commerce was not punitive. *See* Def. Resp. Br. at 37. However, Commerce's imposition of the 323.12 percent duty on the Antique Group was unreasonable because the assigned rate was not remedial and was wildly disproportionate to the minor delay error. Commerce's discretion to impose and enforce

time limits "is bounded at the outer limits by the obligation to carry out its statutory duty of determining accurate duty margins." *Bebitz Flanges Works Private Ltd. v. United States*, 433 F. Supp. 3d 1309, 1316 (Ct. Int'l Trade 2020) citing *NTN Bearing Corp. v. United States*, 74 F.3d at 1208 (quoting Rhone Poulenc, 899 F.2d at 1191). Moreover, decisions made by Commerce that give rise to inaccurate and punitive results point to an abuse of discretion. *See Shelter Forest Int'l Acquisition, Inc. v. United States*, No. 19-00212, 2021 Ct. Intl. Trade LEXIS 19, at *27 (Ct. Int'l Trade Feb. 18, 2021). In this case, the imposition of a 323.12 percent duty rate to the Antique Group was disproportionate to the error in question, making it both inaccurate and punitive. As such, Defendant failed to argue reasonably that the Antique Group's "level of culpability" for a first-time, inadvertent, minor filing mistake warranted the ultimate punishment. Nor could it argue that that 323.12 percent was anywhere near a reasonably accurate estimate of the Antique Group's actual rate. The statute and precedential case law compelled Commerce to make an individualized evaluation of the whole situation, including the Antique Group's record of compliance and the seriousness of its conduct throughout the administrative review. But Commerce overreached by selecting the highest possible rate for the Antique Group, and Defendant has failed to justify this decision.

This Court consistently has rejected the application of consequences that are grossly disproportionate to the mistake made by the parties involved. In *Artisan Mfg.*, Commerce rejected a filing and extension request filed less than 24 hours past the deadline, and imposed an adverse rate on the respondent company that likely was twice what it would have otherwise imposed. *Artisan Mfg.*, 978 F. Supp. 2d at 1347. In that case, the Court rejected Commerce's approach because the consequence of an untimely response was disproportionately severe. Similarly, in this case, Commerce assigned a grossly disproportionate 323.12 percent

antidumping duty margin to the Antique Group for an inadvertent timing error. Thus, Commerce abused its discretion by applying the most severe punishment possible to the Antique Group for a minor and inconsequential mistake.

The five-hour delay in filing the 2nd supplemental questionnaire response was a minor, isolated, and inadvertent mistake, and not one based on any pattern of non-responsiveness. Because the Antique Group consistently displayed a high level of responsiveness, timeliness, and cooperation throughout the entirety of the administrative review, Commerce's decision to apply the highest possible rate to the Antique Group was punitive and unnecessary and should be reversed.

## VI. CONCLUSION

For the foregoing reasons the Antique Group respectfully requests that the Court grant its motion for judgment on the agency record.

Respectfully submitted,

/s/ Aqmar Rahman
Robert G. Gosselink
Aqmar Rahman

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Consolidated Plaintiffs Antique
Marbonite Private Limited; Prism Johnson
Limited; and Shivam Enterprise

Dated:  January 31, 2024