# UNITED STATES COURT OF INTERNATIONAL TRADE
## NEW YORK

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| CAMBRIA COMPANY LLC,<br><br>    Plaintiff,<br><br>    and<br><br>ANTIQUE MARBONITE PRIVATE LIMITED, SHIVAM ENTERPRISES, PRISM JOHNSON LIMITED; ARIZONA TILE, LLC; M S INTERNATIONAL, INC.; AND PNS CLEARANCE LLC,<br><br>    Consolidated Plaintiffs,<br><br>    v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>    and<br><br>APB TRADING, LLC; COSMOS GRANITE (WEST) LLC;COSMOS GRANITE (SOUTH EAST) LLC; COSMOS GRANITE (SOUTH WEST) LLC; CURAVA CORPORATION; DIVYASHAKTI GRANITES LIMITED; DIVYASHAKTI LIMITED; MARUDHAR ROCKS INTERNATIONAL PVT LTD; OVERSEASMANUFACTURING AND SUPPLY INC. D/B/A MERRIMACK STONE INDUSTRIES; QUARTZKRAFT LLP; STRATUS SURFACES LLC;  FEDERATION OF INDIAN QUARTZ  SURFACE INDUSTRY; ARIZONA TILE, LLC; M S INTERNATIONAL, INC.; AND PNS CLEARANCE LLC,<br><br>    Defendant-Intervenors. | Consol. Court No. 23-00007<br>**NON-CONFIDENTIAL VERSION** |

## <u>REPLY OF CONSOLIDATED PLAINTIFFS ARIZONA TILE, LLC, M S INTERNATIONAL, INC., AND PNS CLEARANCE LLC</u>

Jonathan T. Stoel
Jared R. Wessel
Nicholas R. Sparks
Cayla D. Ebert

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
(202) 637-6634
jonathan.stoel@hoganlovells.com

*Counsel to Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC*

January 31, 2024

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      SUMMARY ...................................................................................................1

II.     DEFENDANT'S POST-HOC DEFENSE OF COMMERCE'S DEPARTURE FROM AGENCY PRACTICE DOES NOT CURE COMMERCE'S COMPLETE LACK OF EXPLANATION ...........................................................................................3

III.    THE TOTALITY OF THE FACTS SHOW THAT ANTIQUE FACED EXTRAORDINARY CIRCUMSTANCES.........................................................8

        A.      Commerce Failed to Substantiate the Alleged Burden Caused by the Late Filing..9

        B.      Commerce Ignored the Totality of the Circumstances ...........................................10

IV.     DEFENDANTS FAILED TO DEMONSTRATE ANTIQUE'S AFA RATE HAS PROBATIVE VALUE.......................................................................................14

V.      COMMERCE CANNOT IGNORE ITS STATUTORY REQUIREMENT TO APPLY THE SUBSIDY OFFSET TO THE ALL-OTHERS RATE .............................................18

VI.     CONCLUSION.............................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bebitz Flanges Works Private Ltd. v. United States*,
  433 F.Supp.3d 1309 (Ct. Int'l Trade 2020) ........................................................ 5, 7

*BMW of North America LLC v. United States*,
  926 F.3d 1291 (Fed. Cir. 2019) ......................................................................... 15

*Burlington Truck Lines, Inc. v. United States*,
  371 U.S. 156 (1962) ............................................................................................. 2

*Changzhou Trina Solar Energy Co. v. United States*,
  975 F.3d 1318 (Fed. Cir. 2020) ......................................................................... 18

*Daewoo Elecs. Co. v. Int'l Union of Elec., Tech., Salaried & Mach. Workers*, *AFL-CIO*,
  6 F.3d 1511 (Fed. Cir. 1993) ............................................................................... 1

*DAK Americas LLC v. United States*,
  456 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) ..................................................... 11

*Davila–Bardales v. INS*,
  27 F.3d 1 (1st Cir. 1994) ...................................................................................... 4

*Deacero S.A.P.I. de C.V. v. United States*,
  996 F.3d 1283 (Fed. Cir. 2021) ......................................................................... 15

*Dongtai Peak Honey Industry Co., Ltd. vs. United States*,
  777 F.3d 1343 (Fed. Cir. 2015) ........................................................................... 6

*Essar Steel Ltd. v. United States*,
  678 F.3d 1268 (Fed. Cir. 2012) ......................................................................... 17

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*,
  216 F.3d 1027 (Fed. Cir. 2000) ......................................................................... 15

*Foshan Shunde Yongjian Housewares & Hardward Co., Ltd. v. United States*,
  163 F.Supp.3d 1313 (Ct. Int'l Trade 2016) ....................................................... 17

*Grobest & I-Mei Industrial (Vietnam) Co. Ltd. v. United States*,
  815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) ................................................. 5, 17

*Leco Supply, Inc. v. United States*,
  619 F.Supp.3d 1287 (Ct. Int'l Trade 2023) ......................................................... 7

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ........................................................................................ 4

*Murata Mfg. Co., Ltd. v. United States*,
    908 F.Supp.978 (Ct. Int'l Trade 1995) ...................................................... 21

*Nan Ya Plastics Corp., Ltd. v. United States*,
    810 F.3d 1333 (Fed. Cir. 2016)................................................................ 15

*Oman Fasteners, LLC v. United States*,
    No. 22-00348, 2023 WL 2233642 (Ct. Int'l Trade 2023) ........................ 8

*Ta Chen Stainless Steel Pipe v. United States*,
    25 C.I.T 989 (2001) .................................................................................. 4

*Ta Chen Stainless Steel Pipe, Inc. v. United States*,
    298 F.3d.1330 (Fed. Cir. 2002)................................................................ 17

*Tau-Ken Temir LLP v. United States*,
    587 F.Supp.3d 1346 (Ct. Int'l Trade 2022) .......................................... 6, 7

*Trinity Mfg. Inc. v. United States*,
    549 F.Supp.3d 1370 (Ct. Int'l Trade 2021) ........................................ 12, 13

*Viraj Forgings, Ltd. v. United States*,
    283 F. Supp. 2d 1335 (Ct. Int'l Trade 2003) .......................................... 4

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) .......................................................................... 1

19 U.S.C. § 1673d(c)(5)(B) .............................................................................. 19

19 U.S.C. § 1677a(c).................................................................................... 18, 19

19 U.S.C. § 1677a(c)(1)(C)............................................................................... 19

19 U.S.C. § 1677e(b)(2)(A) .............................................................................. 14

19 U.S.C. § 1677e(c).................................................................................... 2, 14

5 U.S.C. § 706(2)(A).......................................................................................... 8

**Regulations**

19 C.F.R.§ 351.302 ............................................................................................ 5

19 C.F.R.§ 351.302(c).................................................................................. 2, 5, 9

**Administrative Materials**

*Fine Denier Polyester Staple Fiber from India*, 86 Fed. Reg. 62,786 (Dep't Commerce Nov. 12, 2021) ............................................................................................................................... 19

Memorandum from James Maeder to Abdelali Elouradia, *Decision Memorandum for the Final Results of the Administrative Review of the Countervailing Duty Order on Certain Softwood Lumber Products from Canada; 2021*, Case No. C-122-858 (2021 Review) (July 26, 2023) 10

Memorandum from James Maeder to Abdelali Elouradia, *Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Polyethlene Terephthalate Film, Sheet, and Strip; 2021*, Case No. C-533-825 (2021 Review) (Jan. 23, 2024) ....................... 15

Memorandum from James Maeder to Abdelali Elouradia, *Issues and Decision Memorandum for the Final Affirmative Determination in the Countervailing Duty Investigation of Tin Mill Products from the People's Republic of China*, Inv. No C-570-151 (Jan. 4, 2024) .............. 15

Memorandum from James Maeder to Christian Marsh, *Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Common Alloy Aluminum Sheet from Romania*, Inv. No. A-485-809 (Mar. 1, 2021) ................................... 16

Memorandum from James Maeder to Gary Taverman, *Issues and Decision Memorandum for the Final Results of the 2015-2016 Administrative Review of the Antidumping Duty Order on Certain Oil Country Tubular Goods from the Republic of Korea*, Case No. A-580-870 (2015–16 Review) (Apr. 11, 2018) ................................................................................................ 16

Memorandum from James Maeder to Jeffrey Kessler, *Issues and Decision Memorandum for the Final Affirmative Determination in the Antidumping Duty Investigation of Acetone from the Republic of South Africa*, Inv. No. A-791-824 (Feb. 6, 2020) ................................................ 15

*Organic Soybean Meal From India*, 87 Fed. Reg. 29,737 (Dep't Commerce May 16, 2022) ..... 19

*Prestressed Concrete Steel Wire Strand From the Republic of Turkey*, 87 Fed. Reg. 68,679 (Dep't Commerce Nov. 16, 2022) ......................................................................................... 19

*Stainless Steel Flanges From India*, 86 Fed. Reg. 47,619 (Dep't Commerce Aug. 26, 2021) ..... 19

**REPLY OF CONSOLIDATED PLAINTIFFS ARIZONA TILE, LLC,
M S INTERNATIONAL, INC., AND PNS CLEARANCE LLC**

Consolidated Plaintiffs Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC (collectively, "Importers") respectfully submit this reply brief to the November 20, 2023 Defendant's Response to Plaintiff's Motions for Judgment Upon the Agency Record (ECF Nos. 67, 68) ("Gov't Br.") and December 11, 2023 Defendant-Intervenor's Response to Consolidated-Plaintiff's Motion for Judgment on the Agency Record (ECF No. 73) ("Cambria Response Br."). As set forth below, and in its Memorandum in Support of Rule 56.2 Motion for Judgment on the Agency Record ("Importers' Br.") (ECF Nos. 53, 54), Importers respectfully request that this Court hold that the Final Results on Certain Quartz Surface Products from India issued by the U.S. Department of Commerce ("Commerce") is unsupported by substantial evidence and otherwise not in accordance with law. *Certain Quartz Surface Products From India*, 88 Fed. Reg. 1,188 (Dep't Commerce Jan. 9, 2023) (final results of antidumping duty administrative review; 2019–2021) ("*Final Results*") (P.R. 355). 1/ Importers further request that this Court remand the matter for reconsideration and disposition consistent with the order and opinion of this Court.

## I.    SUMMARY

Commerce's *Final Results* must be remanded if they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i). The CIT determines "whether the evidence and reasonable inferences from the record support {Commerce's} finding."  *Daewoo Elecs. Co. v. Int'l Union of Elec., Tech., Salaried & Mach. Workers*, *AFL-CIO*, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (internal quotation marks and citation omitted).  This Court must remand the *Final Results* if the agency fails to provide a "rational

---

1/      References to public and confidential documents in the administrative record for this appeal are identified as "P.R." and "C.R.," respectively.

connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). As forth below, the Government and Defendant-Intervenor Cambria (together, "Defendants"), offer inapposite arguments trying to remedy the deficiencies and abuse of discretion committed by Commerce.

In its response, the Government concedes that Commerce has established a practice of providing parties a "second chance" when missing a filing deadline. Commerce departed from this practice when it failed to provide Antique Marbonite Pvt. Ltd. and its affiliates Shivam Enterprises, RMC Readymix Porselano (India) Limited, and Prism Johnson Limited (collectively, "Antique"), a second chance after it missed an unusual deadline by a few hours. Commerce further failed to explain the reasoning for its departure, making it unlawful. The Government's post-hoc explanation cannot cure Commerce's error.

The Government's argument that the burden caused by the late filing justifies rejection of the submission fairs no better. The Government's argument that a one-half day delay fundamentally altered the trajectory of this proceeding is unpersuasive on its face.

Rather, the totality of the challenges faced by Antique met the extraordinary circumstances standard under 19 C.F.R.§ 351.302(c)(2): (1) a *pro se* respondent, (2) an unusual deadline, (3) a key executive unavailable due to COVID-19, and (4) teams travelling during the pandemic to complete the response. Commerce arbitrarily imposed an unreasonable standard in determining Antique did not meet the criteria. Its determination is not supported by substantial evidence and its application of its regulation amounts to an abuse of discretion.

Additionally, after unlawfully rejecting Antique's response, Commerce punitively assigned Antique a duty rate of 323.12%. This rate is unlawful given it was not corroborated as required by 19 U.S.C. § 1677e(c). Commerce must demonstrate the data on which the rate is

2

**NONCONFIDENTIAL VERSION**
**CONFIDENTIAL INFORMATION DELETED FROM BRACKETS**

premised have probative value and is non-aberrational.  Commerce has not met this burden here because it relied on transactions involving [

].

Lastly, Commerce unlawfully failed to apply the statutory subsidy offset to the all-others rate it pulled-forward from the original investigation in the *Final Results*.  The Government's attempts to characterize this failure as a lawful methodological decision is meritless and irrelevant. The statute demands the offset be applied.

For these reasons, Commerce's *Final Results* must be remanded.

## II.   DEFENDANT'S POST-HOC DEFENSE OF COMMERCE'S DEPARTURE FROM AGENCY PRACTICE DOES NOT CURE COMMERCE'S COMPLETE LACK OF EXPLANATION

The Government concedes the existence of the "second-chance doctrine" by acknowledging that Commerce has repeatedly accepted late filings resulting from mistakes.  Gov't Br. at 17–18, 29.  Yet, the Government erroneously argues this is not an established practice and that Commerce's decision not to provide a second chance to Antique was lawful.  Defendant claims that Commerce's prior decisions are not binding, but also claims that the second-chance doctrine is "inconsistent with Commerce's current practice."  Gov't Br. at 17.  The existence of numerous precedents (undeniable even by the Government) demonstrating an established practice renders these arguments meritless.  The bottom line is that Commerce unlawfully departed from this practice by not providing Antique a second chance and failed to explain its departure.  The Government's post-hoc attempt to do so cannot cure Commerce's errors.

As demonstrated in Importers' Brief, Commerce's practice is to provide parties with a second chance to refile inadvertently late-submitted filings unless previous deadlines have been missed.  Importers' Br. at 16–17.  Although Antique had fully cooperated, met all deadlines up

until this point in the proceeding, and worked in good faith to deliver the voluminous information requested, Commerce departed from its practice and denied Antique a second chance.

The Government's claim that Commerce's precedent is not binding lacks support.  Courts have consistently held the opposite.  *See, e.g., Viraj Forgings, Ltd. v. United States*, 283 F. Supp. 2d 1335, 1342 (Ct. Int'l Trade 2003) ("Commerce considers the legal interpretations of prior antidumping {} determinations precedential." (citations omitted)).  Once an agency establishes a practice, any departure without "a reasoned analysis for the change" is unlawful.  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983).  The CIT has explained that while Commerce "need not 'forever hew' to its precedents, {} should the agency reverse itself, {} it must confront the issue squarely and explain why its departure was reasonable." *Viraj Forgings*, 283 F. Supp. 2d at 1342 (quoting *Davila–Bardales v. INS*, 27 F.3d 1, 5 (1st Cir. 1994)).  In upholding this rule, the CIT has rejected explanations "where such rationale, rather than acknowledging the policy change, attempts to argue that it is consistent with past practice." *Ta Chen Stainless Steel Pipe v. United States*, 25 C.I.T 989 (2001).  Here, Commerce failed to acknowledge its policy change in denying Antique a second chance, let alone provide "reasoned analysis".

The Government ignores the cases establishing a practice of providing a second chance by arguing that Commerce's previous determinations are not binding, or do not guide future determinations.  Gov't Br. at 16 (citing Antique Br. at 24–27 and Importers' Br. at 26–28).  But then it argues that the cases cited by Antique and Importers (i.e. *Narrow Woven Ribbons with Woven Selvedge from Taiwan* and *Carbon and Certain Alloy Steel Wire Rod from the United Kingdom*) are distinguishable ***because*** they involve Commerce extending a second chance.  The Government then argues that the "second chance rationale" is "inconsistent with Commerce's

4

current practice." Gov't Br. at 17.  The Government's response is contradictory and only confirms that Commerce has established a practice of providing second chances under similar circumstances.

The Government also asserts these cases do not involve the application of 19 C.F.R.§ 351.302(c), and therefore cannot guide the Court here.  That argument ignores the fact that Commerce ***has been repeatedly granting respondents a second chance*** concurrently with the existence of 19 C.F.R.§ 351.302. The Government's claim also ignores the broader statutory command for Commerce to calculate dumping margins as accurately as possible.  *Grobest & I-Mei Industrial (Vietnam) Co. Ltd. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012); *Bebitz Flanges Works Private Ltd. v. United States*, 433 F.Supp.3d 1309, 1316 (Ct. Int'l Trade 2020) ("In the context of AD proceedings, while Commerce clearly has the discretion to regulate administrative filings, that discretion is bounded at the outer limits by the obligation to carry out its statutory duty of determining dumping margins as accurately as possible.") (citations and internal quotation marks omitted).

The Government also attempts to distinguish the case at hand from other cases where the CIT has overturned Commerce's refusal to accept late filings.  In particular, the Government argues that *Pro-Team* is irrelevant here because of a meaningless distinction between "corrective information" and a supplemental questionnaire.  Gov't Br. at 19.  As discussed in Importers' Brief, in *Pro-Team*, the Court found that Commerce had abused its discretion by rejecting corrective information submitted seven days after the deadline.  Importers' Br. at 28.  The Government claims that such corrective information is distinct from Antique's supplemental questionnaire response – itself a request for corrective/additional information.  Such a distinction does not exist, nor does it distinguish *Pro-Team*.  The guiding principle from *Pro-Team* is that Commerce's refusal to accept

late filings is an abuse of discretion when (1) acceptance would not interfere with the proceeding; and (2) rejection would produce punitive results.  Both factors exist here.

The impact of rejecting Antique's filing is the same in this case.  As discussed below, Commerce cannot assert that the loss of a few hours impedes the proceeding. The punitive results of Commerce's AFA application are obvious.  Defendants argue that *Dongtai Peak* is on-point, but this argument also fails.  *See* Cambria Response Br. at 12 (citing *Dongtai Peak Honey Industry Co., Ltd. vs. United States*, 777 F.3d 1343 (Fed. Cir. 2015)).  Contrary to Cambria's assertions, the facts in *Dongtai Peak* are inapposite.  *Dongtai Peak* instead illustrates Commerce's practice of allowing a second chance for inadvertently missed deadlines.

In that case, the respondent had already missed a deadline and had been issued a warning days before – *i.e.*, Dongtai Peak had already received its "second chance." *Dongtai Peak*, 777 F.3d at 1346–47.  After receiving its second chance, Dongtai Peak then missed another deadline to submit an additional response.  Commerce rejected the filing, and this Court and the Federal Circuit upheld the rejection.  *Id*. at 1347.

In *Dongtai Peak*, the respondent's submission was more than ten days late and the respondent had missed multiple deadlines.  These facts are not present here.  Antique's supplemental questionnaire was filed a few hours late and still within business hours of the deadline day.  Antique did not have a history of providing tardy submissions.  Accordingly, *Dongtai Peak* only affirms Commerce's practice of issuing a second chance for inadvertently late filings and does not support the Government's position.

Cambria also relies on cases that demonstrate Commerce's practice for providing second chances, or one-time automatic extensions.  For instance, regarding *Tau-Ken Temir LLP v. United States*, Cambria observes that the Court upheld Commerce's rejection of a filing that was roughly

two hours late.  *See* Cambria Response Br. at 16 (citing 587 F.Supp.3d 1346 (Ct. Int'l Trade 2022)). What Cambria failed to acknowledge is that the late filing was ***after*** the automatic next business day extension received by the respondent per Commerce's rules applicable to when Commerce does not respond to an extension request.  *Tau-Ken Temir LLP*, 587 F.Supp.3d at 1350–51. Respondent had missed their second-chance 8:30 AM next business day deadline – not merely the original deadline.

The same facts were present in *Bebitz Flanges Works Private Ltd*.  There, respondent filed an emergency extension right before the 5:00 PM deadline, thereby providing them with the "next-business day" extension.  Yet respondent subsequently missed that 8:30 AM deadline as well. *Bebitz Flanges Works Private Ltd. v. United States*, 433 F. Supp.3d 1297, 1301–02 (Ct. Int'l Trade 2020).  On the other hand, Antique was not eligible for this automatic second chance because its response was filed during Commerce's business hours.

Lastly, Cambria claims this Court should follow *Leco Supply, Inc. v. United States*, 619 F.Supp.3d 1287 (Ct. Int'l Trade 2023).  Cambria is again mistaken.  In *Leco Supply* U.S. Customs and Border Protection ("CBP") rejected the company's untimely comments during a remand proceeding, which did not result in AFA.  619 F.Supp. 3d at 1307–08.  As an initial matter, CBP does not have a second-chance doctrine.  Also, the rejected filing in *Leco Supply* did not include additional factual information like Antique's supplemental questionnaire response, which would drive the ultimate result of the proceeding.  The missed deadline pertained to briefing.

Here, there is no question that Antique's submission would have increased the accuracy of the determination.  Simply put, *Leco Supply* involves a different agency's determination under different regulations and precedent, with undeniably different consequences for the rejected filing.

Defendants have, for these reasons, failed to demonstrate why these cases should guide the Court when it reviews Commerce's failure to apply the second-chance doctrine.

## III.   THE TOTALITY OF THE FACTS SHOW THAT ANTIQUE FACED EXTRAORDINARY CIRCUMSTANCES

Defendants argue that Commerce properly determined that extraordinary circumstances did not exist and an extension of time was unwarranted.  Defendants also contend that Commerce did not abuse its discretion in rejecting Antique's supplemental questionnaire.  This is wrong.

Under the APA, a reviewing court must "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642, at *4 (Ct. Int'l Trade 2023) (citing 5 U.S.C. § 706(2)(A)).  This standard covers rules related to deadlines.  *Id.* Commerce may not impose unreasonable and arbitrary standards in its application and enforcement of its regulations.  5 U.S.C. § 706(2)(A).  Based on the circumstances faced by Antique, Defendants fail to refute adequately that the extraordinary circumstances standard applied by Commerce was not inherently unreasonable and therefore arbitrary and capricious.

As discussed before, Antique is a *pro se* respondent who worked tirelessly to cooperate in good faith with Commerce's review including submitting thousands of pages of requested information.  Antique was hampered by a key executive responsible for preparing the Second Supplemental Questionnaire response out with COVID-19 and the rest of the team needing to travel to Mumbai during a global pandemic.  Facing this adversity, Antique inadvertently missed Commerce's unusual 10:00 AM ET deadline while it was working to meet Commerce's standard 5:00 PM deadline, which Antique mistakenly thought applied to the extensive 68 multi-part questionnaire.  Letter from SBA Strategy Consulting to Commerce, *Request for acceptance of 2nd*

*Supplemental Questionnaire Response (Sec-ACD) post deadline* (May 24, 2022) (P.R. 208; C.R. 218).

After Commerce rejected the filing, Antique moved quickly to explain itself and filed its first extension request the next day.  Letter from SBA Strategy Consulting to Commerce, *Request for Opportunity to Refile Response to Second Supplemental Questionnaire (Section A, C and D)* (May 19, 2022) (P.R. 205).  Despite Commerce's second-chance doctrine and other extraordinary circumstances being present under 19 C.F.R. § 351.302(c)(2), Commerce declined these requests.  Commerce justified its "strict enforcement of time limits" by stating the late filing impeded its ability to thoroughly review the information.  Commerce has not since been able to articulate ***how or why*** this minor delay impeded its ability to review Antique's response within the additional 45 days Commerce had before the preliminary results were due, or the 228 days Commerce had until the final results were due.  *Certain Quartz Surface Products from India: Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review; 2019-2021* (Dec. 30, 2022) ("Final IDM") at 19 (P.R. 346).  Subsequently, Commerce found that Antique did not cooperate to the best of its ability and applied AFA and a punitive, uncorroborated rate of 323.12% to Antique.  *Certain Quartz Surface Products From India*, 87 Fed. Reg. 40,786 (Dep't Commerce July 8, 2022) (preliminary results and partial rescission of AD review; 2019-2021) ("*Preliminary Results*") (P.R. 248).

### A.     Commerce Failed to Substantiate the Alleged Burden Caused by the Late Filing

The Government continues to claim that a few missed hours would have prejudiced its conduct of the administrative review.  Cambria even asserts that Antique's late filing "made Commerce's entire review of Antique{'s supplemental questionnaire response} untenable."

Cambria Response Br. at 20.  Defendants also reiterate Commerce's claim that the "burden" of a late-filing "is not minimal when aggregated across all proceedings."  Final IDM at 20 (P.R. 346).

Yet, Commerce has failed to demonstrate the actual burden of a loss of one-half of a business day out of a two month period to review Antique's supplemental questionnaire before the preliminary results. For example, the record fails to address the fact that Commerce could have even accepted the filing but reviewed the information before the final results were due – 228 days later.  Of note, Commerce has regularly requested post-preliminary supplemental questionnaires in other proceedings.  *See, e.g.*, Memorandum from James Maeder to Abdelali Elouradia, *Decision Memorandum for the Final Results of the Administrative Review of the Countervailing Duty Order on Certain Softwood Lumber Products from Canada; 2021*, Case No. C-122-858 (2021 Review) (July 26, 2023) at 5.

To avoid these practicalities, the Government argues that Commerce does not have to show the extent of the burden, only claim one under the standard.  Gov't Br. at 24.  Commerce cannot, however, disregard hundreds of pages of a filing simply because the agency lost a few hours to review it without any explanation of the actual impact on the proceeding.  The Government's arguments essentially ask the Court to take the agency's word for the fact that it was burdened.

## B.    Commerce Ignored the Totality of the Circumstances

Commerce determined that extraordinary circumstances did not exist based on the complicating factors faced by Antique.  Letter from Commerce to SBA Strategy Consulting, *Denial of Second Request to Resubmit Supplemental Questionnaire Response* (June 3, 2022) (P.R. 216); Final IDM at Cmts. 2–3 (P.R. 346).  Commerce failed to consider the factors cumulatively

and applied the "extraordinary circumstances" standard in an inherently unreasonable and arbitrary manner to a submission that was a few hours late. 2/

The dictionary defines "extraordinary" as "going beyond what is usual, regular, or customary." *Extraordinary*, MERRIAM-WEBSTER DICTIONARY (Online, last accessed Jan. 24, 2024); *see also Extraordinary*, BLACK'S LAW DICTIONARY (Online, last accessed Jan. 24, 2024) (similarly defining "extraordinary" as "out of the ordinary, exceeding the usual, average or normal measure or degree."). When the definition of extraordinary is considered with these common, everyday understandings of the term, there is no doubt that the 10:00 AM deadline, along with the other factors confronting Antique, meets this definition. The inadvertently missed deadline is particularly understandable when a key individual to the response was unavailable due to COVID-19, and the team had to navigate the challenges of traveling and working amidst the pandemic. Yet, Commerce's application of the extraordinary circumstances standard set forth in its regulations is inconsistent with the everyday understanding of the term. Commerce cannot implement its regulatory standard with no bearing on reality in a review or common understanding of widely used terms.

Of note, the Government ignores Commerce's concessions that (1) Commerce's regulations establish a 5:00 PM deadline, (2) "Commerce generally establishes" 5:00 PM deadlines, and (3) only "occasionally rel{ies} on deadlines other than 5:00 p.m. ET." Final IDM

---

2/      The Government argues that Importers cannot use certain cases to support its arguments as they "are not part of the administrative record in this proceeding." Gov't Br. at 17. Importers reject this baseless claim as the issues discussed in those cases were properly raised in briefing before the administrative proceeding and the Court may consider any relevant precedent in its examination of that issue. *See e.g. DAK Americas LLC v. United States*, 456 F. Supp. 3d 1340, 1355 (Ct. Int'l Trade 2020) ("though past agency decision-making may not be precedential in the same way as case law through stare decisis, it remains of great importance").

at Cmt. 2 (P.R. 346).  Commerce's acknowledgment confirms the general applicability of and reliance on the standard 5:00 PM deadline.

Cambria also argues that Commerce has previously found that medical issues do not constitute extraordinary circumstances, but that example again misses the point.  *See* Cambria Response Br. at 14 citing *to Trinity Mfg. Inc. v. United States*, 549 F.Supp.3d 1370 (Ct. Int'l Trade 2021).  In *Trinity*, the September 3, 2020 deadline at issue was set by the *Federal Register* in the notice of initiation of a five-year review in which parties must file their substantive responses. *Trinity*, 549 F.Supp.3d at 1372–73.  After Trinity did not submit anything by the regulatory deadline, Commerce notified the U.S. International Trade Commission of its intent to revoke the Antidumping Order.  *Id.* at 1373.  Not until ***15 days after the missed deadline*** did Trinity file its substantive response, accompanied by the first in a series of requests for a retroactive extension, which Commerce denied.  Notably, in *Trinity*, the medical conditions were the ***only*** reason articulated for the missed deadline.  This is not the same set of complex circumstances impacting Antique. Rather, there were a multitude of factors, one of which was medical, that Commerce should have considered in totality to determine whether extraordinary circumstances had been met.

Markedly, the timeline in *Trinity* is distinguishable from the facts of this case as well. Antique completed its filing five hours after Commerce's abnormal 10:00 AM deadline. Commerce rejected the filing two days later, and Antique immediately filed its first extension request the next day.  The Court has distinguished extension requests filed "within a day or two" from longer delays, like the one at issue in *Trinity*.  *Id.* at 1379, n.3 (citing a laundry list of cases in which Commerce granted an extension after a short delay, including cases in which counsel mistook a earlier deadline for a 5:00 PM deadline (*e.g.,* Letter from Harris Bricken McVay, LLP to the Department, *Citric Acid and Certain Citrate Salts from Thailand: Section A-C Second*

*Supplemental Questionnaire Response Extension Request*, Inv. No. A-549-833 (Nov. 17, 2017);

Letter from Steptoe & Johnson LLP to the Department, *Carbon and Certain Alloy Steel Wire Rod*

*from the United Kingdom: British Steel Request for Extension*, Inv. No. A-412-826 (July 7, 2017);

Letter from Arnold & Porter LLP to the Department, *Certain Cold-Rolled Steel Flat Products from*

*Korea: Extension Request for Supplemental Section D Questionnaire Response*, Inv. No. A-580-

881 (Jan. 5, 2016)).   In those cases, Commerce determined extraordinary circumstances existed

and/or provided a second chance.   Memorandum from the Department to Niran (Thailand) Co.,

Ltd, *Citric Acid and Certain Citrate Salts from Thailand: Rejection of Untimely Supplemental*

*Questionnaire Response*, Inv. No. A-549-833 (Nov. 17, 2017); Memorandum to The File, *Ex Parte*

*Meeting with Tomas J. Trendl, Esq., Steptoe & Johnson LLP, Counsel to Respondent British Steel*

*Limited*,  Inv.  No.  A-412-826  (July 10,  2017);  Memorandum to The File*, Antidumping Duty*

*Investigation of Certain Cold-Rolled Steel Flat Products from Korea: Ex Parte Meeting with*

*Arnold & Porter, LLP, Counsel to Hyundai Steel Company*, Inv. No. A-580-881 (Jan. 11, 2016).

These examples not only further confirm Commerce's practice of providing a second chance, but

they also clearly distinguish the facts of this case from those at issue in *Trinity*.   Moreover, these

examples explicitly contradict Commerce's assertion that Commerce applies its extraordinary

circumstances standard "uniformly and even-handedly to all parties."   Final IDM at Cmt. 2

(P.R. 346).   On the contrary, Commerce has provided a second chance or found extraordinary

circumstances in several other cases with similar facts. 3/

---

3/      We also observe that Commerce's rejection of Antique's response is inconsistent with the
treatment the agency has sought in this Court.   That is, the Government has missed several
deadlines and requested – ***and received*** – leniency for its mistakes. For example, Commerce
recently missed its October 30 deadline to file remand results in *YC Rubber Co. (North America)
v. United States* because agency counsel "mistakenly calendared the incorrect filing date."   The
Government's motion for an extension of time to file results out of time claimed "excusable
neglect" because (1) no parties were prejudiced as a result of the delay, (2)  it was a short delay,

## IV.    DEFENDANTS FAILED TO DEMONSTRATE ANTIQUE'S AFA RATE HAS PROBATIVE VALUE

All parties seem to agree that Commerce must corroborate its AFA rate and demonstrate that it has probative value (*see* Final IDM at 41), but Defendants misunderstand what that exercise requires.  *See* Gov't Br. at 31–32, 35; Cambria Response Br. at 22–23. Defendants are mistaken that Commerce's statement that the 323.12% rate was "within the range of PESL's calculated individual dumping margins," amounts to sufficient corroboration.  Gov't Br. at 35.  The Government fails to demonstrate that the data on which Commerce based its decision has probative value.

As an initial matter, the Government argues that Importers cannot now challenge the petition rate.  Gov't Br. at 36.  Defendant misinterprets Importers' claims.  We are not challenging the petition rate per se – just that the rate has no probative value in this proceeding and therefore cannot be the basis on which is AFA rate is selected under 19 U.S.C. § 1677e(c).

Commerce's regulation provides that the petition may be a "{p}otential source{} of information for adverse inferences" (19 U.S.C. § 1677e(b)(2)(A)), but that does not mean it is automatically corroborated.  Commerce has explained that "{b}ecause the Petition rate constitutes secondary information, Commerce must corroborate the rate to the extent practicable."  Memorandum from James Maeder to Jeffrey Kessler, *Issues and Decision Memorandum for the*

---

not affecting the parties' ability to respond, (3) "it was an honest mistake," and (4) Commerce pledged to take steps to ensure the mistake would not happen again.  Def. Partial Consent Mot. for Ext. to File out of Time Remand Results at 3–4, *YC Rubber. United States*, No. 19-69 (Ct. Int'l Trade Nov. 1, 2023), ECF. No. 75.  This Court granted Commerce's request.  Order, *YC Rubber*, No. 19-69, (Ct. Int'l Trade Nov. 3, 2023), ECF No. 77.  Commerce then proceeded to miss its next deadline – to provide the administrative record.  Paperless Order, *YC Rubber*, No. 19-69 (Ct. Int'l Trade Nov. 14, 2023), ECF No. 79.  The Government again claimed "mistaken calendaring" of the filing date.  Def. Mot. For Leave to File Out of Time a Remand Record, *YC Rubber*, No. 19-69 (Ct. Int'l Trade Nov. 15, 2023), ECF No. 80.  And, this Court yet again showed leniency to Commerce, granting another "second chance."

*Final Affirmative Determination in the Antidumping Duty Investigation of Acetone from the Republic of South Africa*, Inv. No. A-791-824 (Feb. 6, 2020) at 6.   The Federal Circuit has held that an AFA rate "will depend upon the facts of a particular case" and "cannot be punitive, aberrational, or uncorroborated."   *BMW of North America LLC v. United States*, 926 F.3d 1291, 1300–01 (Fed. Cir. 2019) (quoting *Nan Ya Plastics Corp., Ltd. v. United States*, 810 F.3d 1333, 1347 (Fed. Cir. 2016); *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (internal quotation marks omitted)).   Commerce has explained that "{i}n analyzing whether information has probative value, it is Commerce's practice to examine the reliability and relevance of the information to be used."   Memorandum from James Maeder to Abdelali Elouradia, *Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Polyethlene Terephthalate Film, Sheet, and Strip; 2021*, Case No. C-533-825 (2021 Review) (Jan. 23, 2024) at 4.   *See also Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283, 1300 (Fed. Cir. 2021) (holding that when Commerce relies on the highest petition rate for AFA it must demonstrate the underlying information has probative value by showing it was "both reliable and relevant" to respondent) (citation omitted).   But, Commerce "will not use information where circumstances indicate that the information is not appropriate as AFA."   Memorandum from James Maeder to Abdelali Elouradia, *Issues and Decision Memorandum for the Final Affirmative Determination in the Countervailing Duty Investigation of Tin Mill Products from the People's Republic of China*, Inv. No C-570-151 (Jan. 4, 2024) at 14.   Despite changes in Commerce's corroboration regulation made in 2015 the Federal Circuit in *Deacero* in 2021 still makes clear that Commerce must select an AFA margin within the range of "actual sales data."   *Deacero*, 996 F.3d at 1300 (*citing Tai Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1340 (Fed. Cir. 2002)).   Commerce failed to meet this requirement here.

**NONCONFIDENTIAL VERSION**
**CONFIDENTIAL INFORMATION DELETED FROM BRACKETS**

Commerce's general practice in corroborating a petition rate is to determine whether it falls within the range of the highest non-aberrational transaction-specific dumping margin of the cooperating respondent.  Memorandum from Andrew Huston to The File, *CJ Indonesia Adverse Facts Available Corroboration*, Case No. A-560-826 (2021–22 Review) (July 25, 2023).  In *OCTG from Korea*, when applying AFA, Commerce noted that the highest-transaction specific margin calculated for a sale must be made "pursuant to usual terms and conditions."  Memorandum from James Maeder to Gary Taverman, *Issues and Decision Memorandum for the Final Results of the 2015-2016 Administrative Review of the Antidumping Duty Order on Certain Oil Country Tubular Goods from the Republic of Korea*, Case No. A-580-870 (2015–16 Review) (Apr. 11, 2018) (overturned on other grounds).  When determining if a sale is not made pursuant to usual terms and conditions (i.e., is aberrational), and therefore cannot serve as the basis for AFA, Commerce looks at the product characteristics of the sale.  Memorandum from James Maeder to Christian Marsh, *Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Common Alloy Aluminum Sheet from Romania*, Inv. No. A-485-809 (Mar. 1, 2021) at Cmt. 1.  Here, the highest sales by Antique used to corroborate the AFA rate were not based on sales made pursuant to usual terms and conditions, but rather [

].

As explained in the Importers' Brief, Commerce relied on the high-level margins in Pokarna's data to corroborate the Petition.  These specific transactions were [

].  These transactions have no bearing on sales of QSP by Antique.  The Government argues these are sufficiently probative because these "sales" were used as part of Pokarna's weighted-average margin.  Gov't Br. at 35.  This argument fails, however,

because [

].  Response from SBA Strategy

Consulting to Commerce, *Certain Quartz surface products from India (A-533-889 AR1*

*Submission of response to First Supplemental Questionnaire (Section A and B)* (Apr. 15, 2022)

(P.R. 190, C.R. 206).

Cambria claims *Ta Chen Stainless Steel Pipe, Inc. v. United States* supports its assertion

that Commerce sufficiently corroborated its rate.  Cambria Response Br. at 22–23 (citing 298 F.3d

1330, 1339 (Fed. Cir. 2002)).  But in the portion of that case cited by Cambria the Federal Circuit

states that the AFA rate must be "corroborated by actual sales data."  *Id.*  Because [

] do not meet this definition, particularly because Antique did not have any [

], Cambria's argument is wrong.  Such data simply does not provide probative value for

the assigned astronomical rate.

This Court has enforced the limit to Commerce's application of AFA.  For example, in

*Foshan Shunde Yongjian Housewares & Hardward Co., Ltd. v. United States*, the CIT held an

AFA rate to be unlawful when Commerce insufficiently corroborated the secondary information

it used to assign the duty rate.  163 F.Supp.3d 1313, 1318 (Ct. Int'l Trade 2016).

The CIT has explained: "when considering whether Commerce's {determination} amounts

to an abuse of discretion, the court is guided first by the remedial, and not punitive, purpose of the

antidumping statute and the statute's goal of determining margins 'as accurately as possible."

*Grobest & I-Mei Industrial (Vietnam) Co. Ltd. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct.

Int'l Trade 2012).  Moreover, the Federal Circuit has made clear that Commerce's AFA authority

is "to provide respondents with an incentive to cooperate with Commerce's investigation, not to

impose punitive damages."  *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012)

(internal quotation marks omitted).  By assigning Antique an AFA rate that is not properly corroborated, it is clear that Commerce's intent was punitive, not remedial, and that Commerce did not calculate a rate as accurately as possible.  Commerce's determination therefore amounts to an abuse of discretion.

## V.   COMMERCE CANNOT IGNORE ITS STATUTORY REQUIREMENT TO APPLY THE SUBSIDY OFFSET TO THE ALL-OTHERS RATE

Commerce correctly pulled-forward the 3.19% all-others rate from the original investigation.  Notwithstanding, Commerce failed to apply the statutorily required export subsidy offset under 19 U.S.C. § 1677a(c).  The Government cannot mask Commerce's error by claiming it was a "methodological decision" nor can it claim Importers failed to exhaust their remedy when it had no other meaningful opportunity to raise the issue.

As explained in the Importers' brief, Congress was clear in its instruction to Commerce to take export subsidies into account when assessing export price.  The statute directs that "{t}he price used to establish export price and constructed export price ***shall*** be increased by . . . the amount of any countervailing duty imposed on the subject merchandise . . . to offset an export subsidy."  19 U.S.C. § 1677a(c) (emphasis added).  Moreover, the Federal Circuit has clarified that when merchandise is subject to both antidumping and countervailing duties, "Commerce 'shall,' when calculating a respondent's antidumping duty rate, 'increase{ }' the respondent's 'export price' or 'constructed export price' by 'the amount of any countervailing duty imposed . . . to offset an export subsidy{.}' " *Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1326 (Fed. Cir. 2020).  This is an "obligation" (*id.* at 1328), not a "methodological decision." *See* Gov't Br. at 49.  Importers detailed in their brief numerous examples demonstrating that it is not only statutorily required, but that it is Commerce's practice, to apply the subsidy offset when calculating the final rate.  Importers' Br. at 41–42 (citing *Organic Soybean Meal From India*, 87

Fed. Reg. 29,737 (Dep't Commerce May 16, 2022) (antidumping order); *Stainless Steel Flanges From India*, 86 Fed. Reg. 47,619 (Dep't Commerce Aug. 26, 2021) (final results of antidumping duty administrative review; 2018-2019); *Fine Denier Polyester Staple Fiber from India*, 86 Fed. Reg. 62,786, 62,787 (Dep't Commerce Nov. 12, 2021) (final results of antidumping duty administrative review; 2019-2020), *Prestressed Concrete Steel Wire Strand From the Republic of Turkey*, 87 Fed. Reg. 68,679, 68,680 (Dep't Commerce Nov. 16, 2022) (final results of antidumping duty administrative review; 2020-2022)).  Defendants have provided no reasoning for why these case are inapplicable here.

The Government attempts to thwart its obligation by stating that the issue is not a ministerial error, but rather a "methodological decision" made by Commerce.  Gov't Br. at 50.  In particular, the Government tries to refute Importers' claim by arguing that there is "legal interplay" between the two statutory provisions at issue – 19 U.S.C. § 1677a(c)(1)(C) (the export subsidy offset provision) and 19 U.S.C. § 1673d(c)(5)(B) (the non-selected companies' rate calculation provision).  Gov't Br. at 50.

The Government is wrong.  There is no "interplay."  Or rather, no conflict between the provisions that requires Commerce to mathematically subtract the CVD subsidy offset and calculate the non-selected companies' rates.  The statutory provisions work seamlessly together when properly – and lawfully – applied.  19 U.S.C. § 1673d(c)(5)(B) provides that Commerce may use "any reasonable method to establish the estimated all-others rates," while 19 U.S.C. § 1677a(c)(1)(C) requires Commerce to offset the export subsidy.  The Government has failed to explain why applying the offset would make its method "unreasonable" under 19 U.S.C. § 1673d(c)(5)(B), or why the two provisions are at odds. Moreover, even if the

Government could plausibly claim such an issue was "methodological," there is no decision to be made – the offset *must* be applied as required by the statute.

The Government also claims that Importers should have anticipated Commerce's failure to do its job and follow its statutory mandate—alleging Importers failed to exhaust their administrative remedies because it had not raised the issue until after the CBP instructions had been issued.  *See* Gov't Br. at 51.  Cambria takes their claim even a step further, alleging Importers' request that Commerce properly implement its guiding statute is barred by judicial estoppel. Cambria Response Br. at 24–26.  Neither claim is credible.

As a preliminary matter, Importers requested in its ***case and rebuttal briefs***  that Commerce use the same method in its investigation, which resulted in a 1.02% rate after proper application of the subsidy offset.  Brief from Hogan Lovells to Commerce, *Case Brief of Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC* (Aug. 17, 2022) at 23 (P.R. 306; C.R. 248). ("{T}he Department should pull forward the all-others rate from the investigation and use it as the rate for the non-selected respondents in this review."); Brief from Hogan Lovells to Commerce, *Rebuttal Brief of Arizona Tile, LLC, M S International, Inc., and PNS Clearance* LLC (Aug. 25, 2022) at 4 (P.R. 319) ("Because Cambria acknowledges that the market conditions for QSP were consistent across the original investigation and this review, and the Importers have previously established that the dumping margins have not changed from the original investigation to this review, the Department should exercise its discretion to pull-forward the all-others rate from the investigation and use it as the rate for the non-selected respondents in this review.").  Yet, Commerce failed to take the same approach as the investigation.  Importers only learned that Commerce had assigned the non-selected companies a rate of 3.19%, yet failed to apply the subsidy offset, when Commerce issued its *Final Results* and CBP instructions.  Importers then

timely requested Commerce correct its error through the only means available to it at the time. Letter from Hogan Lovells to Commerce, *Ministerial Error Comments on Final Results and Comments on Draft Customs Instructions of Arizona Tile, LLC; M S International, Inc.; and PNS Clearance LLC* (Jan. 9, 2023) (P.R. 354).  Accordingly, the Importers properly and timely raised this issue and should not be barred from this claim.

Moreover, Cambria's claim of judicial estoppel fails.  The doctrine of judicial estoppel generally provides "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Murata Mfg. Co., Ltd. v. United States*, 908 F.Supp.978, n.8 (Ct. Int'l Trade 1995) (internal quotations omitted).  Cambria also contends that "Importers would derive an unfair advantage if allowed to assume a contrary position now." Cambria Response Br. at 26. These predicated for judicial estoppel are not present here.  Contrary to Cambria's assertions, Importers' position and interests have not changed, nor do they obtain an unfair advantage from being allowed to assert this claim.  Importers maintained throughout the underlying administrative review that Commerce should use the same approach it did in the original investigation when assigning the all-others rate, and have done so again during this appeal.

Here, as discussed above, there has been no change in position by Importers.  Requesting that Commerce apply its same approach from the original investigation and reasonably assuming it properly implement its statutory obligation to apply the subsidy offset ***as it did in the original investigation***, is not a change in position.

Lastly, Importers and other interested parties do not obtain an "unfair advantage" by having Commerce properly implement the statutory offset mandated by Congress.  Rather, the public is harmed when Commerce fails to follow the law.

Defendants have failed to demonstrate why Commerce should not be required to apply its statutorily mandated subsidy offset to the all-others rate.  Accordingly, this Court must remand this proceeding to Commerce to follow the law.

## VI.     CONCLUSION

For the forgoing reasons, Importers respectfully request that this Court grant its Motion for Judgment on the Agency Record and remand the *Final Results* to Commerce, with instructions to (1) recalculate Antique's AD margin, and (2) correct its error with respect to the Non-Selected companies in its instructions to Customs consistent with the arguments set forth above.

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel
Jared R. Wessel
Nicholas R. Sparks
Cayla D. Ebert

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
Phone:  +1.202.637.5600
Fax:  +1.202.637.5910
E-mail: jonathan.stoel@hoganlovells.com

*Counsel to Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC*

Dated: January 31, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to the January 11, 2024 Scheduling Order, ECF No. 80, the undersigned counsel at Hogan Lovells US LLP hereby certify that this Reply Brief complies with the word-count limitation requirement.  This brief contains 6,653 words as computed by Hogan Lovells US LLP's word processing system (Microsoft Word 2010).

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel
Jared R. Wessel
Cayla D. Ebert

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
(202) 637-6634
E-mail: jonathan.stoel@hoganlovells.com

*Counsel to Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC*

Dated: January 31, 2024