

CHAMBERS OF
MARK A. BARNETT
CHIEF JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE
One Federal Plaza
New York, New York 10278-0001

March 11, 2024

Via CM/ECF

Re: *Cambria Company LLC v. United States*
Consol. Court No. 23-00007

Dear Counsel:

The court appreciates the efforts the parties have made to identify and address the relevant issues in their briefs.  In preparation for the oral argument in this matter, scheduled for March 19, 2024, at 11 AM ET, the court would like parties to be prepared to address the following questions.

1. Section 351.303(b) of Commerce's regulations establishes a default deadline of 5:00 p.m. Eastern Time ("ET"), noting that a "… document must be received successfully in its entirety … by 5 p.m. Eastern Time on the due date."  19 C.F.R. § 351.303(b).

    a. To what extent must Commerce justify a departure from a 5 p.m. deadline?

    b. Did Commerce provide a sufficient justification in this case?

    c. Parties acknowledge that Commerce has set a deadline other than 5 p.m. in other cases.  *See* Consol. Pls.' Mem. in Supp of Consol. Pls.' Mot. for J. on the Agency R. ("Antique Group's Mem.") at 14–15, ECF No. 52; Consol. Pls.' Confid. Mem. of Points and Authorities in Supp. of R. 56.2 Mot. for J. on the Agency R. ("Arizona Tile's Mem.") at 9, ECF No. 53; Confid. Def.'s Resp. in Opp'n to Pls.' Mot. for J. on the Agency R. ("Def.'s Resp.") at 15, ECF No. 67.  Did Commerce identify case-specific facts to justify its departure from its regulatory deadline in any of those cases?

    d. To the extent that a submission deadline set at a time other than 5 p.m. is out of the ordinary, to what extent did Commerce address the role of the 10 a.m. deadline in its analysis of whether extraordinary circumstances

were involved in Consolidated Plaintiffs Antique Marbonite Private Limited, Prism Johnson Limited, and Shivam Enterprise (collectively the "Antique Group") missing the deadline?

e. If the court finds that Commerce failed to justify a departure from the regulation providing for a 5 p.m. deadline, in light of Antique Group otherwise meeting the 5 p.m. deadline, is the appropriate remedy for the court to require Commerce to accept the otherwise timely filing rather than permitting Commerce to attempt to justify the departure post hoc?

2. Consolidated Plaintiffs Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC (collectively, "Arizona Tile") and Antique Group both reference *Oman Fasteners*, Arizona Tile's Mem. at 20; Antique Group's Mem. at 19–20, in which the court found "Commerce's practice is to allow a law firm that misses a filing deadline one opportunity to submit the untimely information where the law firm failed to … file a complete submission before the specified hour on the date of the deadline," so long as "that law firm has: 1) not previously been afforded such an opportunity in a past segment of any proceeding; and 2) identified the steps it has taken to avoid untimely filings in the future."  *Oman Fasteners, LLC v. United States*, Slip Op. 23-17, 2023 WL 2233642 (CIT Feb. 15, 2023).

   a. While parties dispute whether this statement represents Commerce's practice subsequent to the adoption of the extraordinary circumstances standard, parties have identified administrative proceedings in which Commerce nevertheless appears to have adhered to the practice. Arizona Tile's Mem. at 21–23; Antique Group's Mem. at 22.  If that is the case, must the court remand for Commerce to address this seemingly different treatment?

   b. If the court finds that Commerce failed to justify a departure from the practice discussed in *Oman Fasteners,* does the record otherwise indicate whether Commerce found that Antique Group would be entitled to the benefit of that practice?

3. The Government and Plaintiff Cambria Company LLC ("Cambria") rely upon the Federal Circuit's decision in *Dongtai Peak Honey* to support the notion that agencies should be free to fashion their own rules of procedure.  *See* Def.'s Resp. at 23; Cambria Co.'s Resp. to Consol. Pls.' Mot. for J. on the Agency R. ("Cambria's Resp.") at 12–13, ECF No. 73; *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343, 1347 (Fed. Cir. 2015).  The Government and Cambria analogize *Dongtai Peak Honey* to the present matter, with the Government noting that the "Federal Circuit rejected similar arguments that the delay resulting from an untimely questionnaire response and extension request

did not prejudice the proceeding because there were four months until the deadline for Commerce's preliminary results." Def.'s Resp. at 23; *see also* Cambria's Resp. at 12. Be prepared to discuss the facts of *Dongtai Peak Honey* and whether they are in fact analogous (or distinct) from this case.

4. Commerce claims that the review of supplemental questionnaires "requires significant time and effort on the part of Commerce." I&D Mem. at 20–21. To what extent did Commerce connect that statement to the fact that the supplemental questionnaire was filed only approximately five hours after Commerce otherwise expected to receive it?

5. Arizona Tile argues that the corroboration of the adverse facts available ("AFA") rate was based on transactions that had a particular characteristic that distinguished them from most sales. Arizona Tile's Mem. at 34–39. Setting aside whether such a characteristic would call into question the appropriateness of using the sales as a basis for corroboration, does the Government dispute the factual assertion by Arizona Tile?

6. To the extent that *Albemarle Corp. & Subsidiaries v. United States* provides that departure from the so-called "expected method" requires, among other things, "contemporaneous data" to establish that the market and margins relevant to the subject merchandise had not changed such that the prior rates could be considered reflective of current rates, 821 F.3d 1345, 1353–57 (Fed. Cir. 2016), does the existence of the AFA rate being applied to Antique Group in the present matter constitute a change that would call into question the use of the prior rate?

7. Arizona Tile challenges Commerce's decision not to apply an export subsidy offset to the all-others rate it pulled forward from the investigation, arguing that Commerce's decision constitutes a ministerial error. *See* Arizona Tile's Mem. at 40–44. The Government responds that Commerce's decision was not ministerial, but methodological, in nature. *See* Def.'s Resp. at 49–51. If the court agrees with the Government that this was not a ministerial error, parties should be prepared to discuss whether Arizona Tile was required to and failed to exhaust its administrative remedies.

As a reminder, parties should be prepared to identify documents in the record that support their position and present the court with any documents used to support their assertions that have not been submitted as part of the joint appendices filed in this case. Parties should also be prepared to present the documents supporting their factual assertions on the courtroom's document projector. Any inquiries about utilizing the courtroom's projector should be directed to the case manager, Giselle Almonte, on (212) 264-0157 before the scheduled oral argument date.

The court notes that the Federal Bar Council has encouraged judges to consider revising or adding provisions to their practice rules to allow junior lawyers to take a more active role in oral arguments.  While their efforts are primarily focused on the federal district courts, the sentiment is no less relevant to the U.S. Court of International Trade. It is in that light that I invite you to consider positively the role that junior lawyers might play in this oral argument.  I hope that you will consider providing those lawyers who are familiar with the issues and record under consideration, but who are not as experienced in arguing before a court, with the opportunity to participate in this argument.

Despite the informal nature of this letter, it shall constitute an Order of the Court and the Clerk is directed to docket it accordingly.

Very truly yours,

/s/ Mark A. Barnett
Mark A. Barnett
Chief Judge

Dated: March 11, 2024
        New York, New York